EXHIBIT A

# THB

**THB Intermediaries, LLC**
5910 N. Central Expressway, Suite 500
Dallas, TX  75206
Phone: 972.866.6943

## CERTIFICATE OF PROPERTY FACULTATIVE REINSURANCE

In consideration of these DECLARATIONS and payment of the reinsurance premium and subject to the GENERAL CONDITIONS (Form P300) attached to this Certificate, each of the Reinsurer(s) agree(s) to assume the PARTICIPATION entered opposite its name.

**CERTIFICATE NO.: P40028528**
**POLICY NO.: 73PRX19A104**
**RENEWAL OF: N/A**

**CEDING COMPANY:** HALLMARK SPECIALTY INSURANCE COMPANY
**ADDRESS:** TOWER PLACE 100
3340 PEACHTREE ROAD NE, SUITE 2000
ATLANTA, GA  30326

**ATTENTION:** TONY SMITH

**INSURED:** **BAYSHORE RECYCLING CORPORATION, AND AS PER POLICY**

**LOCATION:** VARIOUS NJ

**POLICY PERIOD:** JUNE 1, 2019  TO  JUNE 1, 2020

**REINSURANCE PERIOD:** JUNE 1, 2019  TO  JUNE 1, 2020

**CANCELLATION CLAUSE:** ORIGINAL POLICY PLUS 30 DAYS NOT TO EXCEED 120 DAYS IN ALL

**PERILS REINSURED:** ALL RISKS OF DIRECT PHYSICAL LOSS OR DAMAGE EXCLUDING FLOOD, EARTHQUAKE, EQUIPMENT BREAKDOWN AS PER POLICY

**COVERAGE REINSURED:** REAL, PERSONAL, TIME ELEMENT AS PER POLICY

**POLICY/LAYER LIMITS:** $15,000,000 PER OCCURRENCE EXCESS $10,000,000 PER OCCURRENCE

**COMPANY RETENTION NET AND/OR TREATY:** $5,000,000 P/O $15,000,000 PER OCCURRENCE EXCESS $10,000,000 PER OCCURRENCE

**REINSURANCE HEREUNDER:** $10,000,000 P/O $15,000,000 PER OCCURRENCE EXCESS $10,000,000 PER OCCURRENCE

**REINSURANCE PREMIUM:** $22,500 P/O $33,750 NET ANNUAL LAYER
$30,000 P/O $45,000 GROSS ANNUAL LAYER

**CEDING COMMISSION:** PREMIUMS SHOWN HEREIN ARE NET OF 25% COMMISSION

**SIGNATURE:** _Gary Kotrla_

Gary Kotrla, Senior Vice President

**DATE:** June 7, 2019

Page 1 of 2

# THB

**THB Intermediaries, LLC**
5910 N. Central Expressway, Suite 500
Dallas, TX 75206
Phone: 972.866.6943

**ATTACHING TO AND FORMING
PART OF CERTIFICATE NO.: P40028528**
**CEDING COMPANY:** HALLMARK SPECIALTY INSURANCE COMPANY
**INSURED:**           **BAYSHORE RECYCLING CORPORATION**
**POLICY NO.:**        73PRX19A104

**INFORMATION AS PROVIDED BY THE CEDING COMPANY:**

**OCCUPANCY:**          FIRE RESISTIVE

**TIV:**                $35,500,000

**DEDUCTIBLE:**         $25,000

**REINSURANCE
CONDITIONS:**          REINSURANCE EXCLUDES MOLD, POLLUTION & CONTAMINATION, COMPUTER VIRUS, ELECTRONIC DATE RECOGNITION, AS PER POLICY AND TERRORISM IS EXCLUDED FOR REINSURERS PARTICIPATING HEREIN AS PER ENDORSEMENT NMA2921

**REINSURANCE SCHEDULE**

**$10,000,000 P/O $15,000,000 PER OCCURRENCE EXCESS $10,000,000 PER OCCURRENCE**

| REINSURERS | PARTICIPATION | PREMIUM DUE NET ANNUAL | CERT. NO. |
|---|---|---|---|
| SWISS REINSURANCE AMERICA CORPORATION | $10,000,000 | $22,500 | SWR1408482-1411346 |

The Intermediary certifies that each reinsurer has assumed the participation listed opposite its name, following the declarations and conditions herein. The Intermediary is not a Reinsurer hereunder. Signed certificates from each Reinsurer will be kept on file.

**BY:** _____    **DATE:** _____

**COMPANY:** Hallmark Specialty Insurance Company

**UPON REVIEWING THIS CERTIFICATE, PLEASE SIGN AND RETURN ONE COPY.**

## COMMERCIAL PROPERTY
## POLICY DECLARATIONS

**POLICY NUMBER:** 73PRX19A104

**Renewal Of:** 73PRX18F3E6

**Hallmark Specialty Insurance Company**
**777 Main Street, Suite 1000**
**Fort Worth, TX  76102**
**(800) 866-0047**

| Named Insured and Mailing Address: | Producer: | | Producer Code:  691 |
|---|---|---|---|
| Bayshore Recycling Corporation<br>P.O. Box 290<br>75 Crows Mill Road<br>Keasbey, NJ  08832 | CRC Services, Inc. aka CRC New York Midtown<br>1336 Avenue of the Americas<br>12th Floor<br>New York, NY  10036 | | |

**Policy Period:** From June 01, 2019 To June 01, 2020
12:01 A.M. Standard Time at your Mailing Address above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT**

| COVERAGE PARTS | PREMIUM | COMM |
|---|---|---|
| **Commercial Property Coverage Part** | **$45,000.00** | **DO NOT WRITE IN THIS AREA** |
| **Terrorism Purchased** | **$0.00** | |
| **State Assessment  Fees** | **$0.00** | |
| **Inspection Fee** | **$0.00** | |
| **Fee** | **$0.00** | |
| **TOTAL** | **$45,000.00** | |
| **Minimum Earned** | **25.00%** | |

**FORMS APPLICABLE TO ALL COVERAGE PARTS:**

SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS - HP TC 01 01 15

**BUSINESS DESCRIPTION**  Recycling centre

**THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE FORMS(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE CONTRACT OF INSURANCE.**

| DATE OF ISSUE | SIGNATURE OF AUTHORIZED REPRESENTATIVE |
|---|---|
| July 18, 2019 | *[signature]* |

**This Policy shall not be valid unless signed by our authorized representative.**

POLICY NUMBER: 73PRX19A104                                    Commercial Property Insurance

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

(Other than applicable forms and endorsements shown elsewhere in the policy)

| Form Name | Form Number |
|---|---|
| Property Policy Declarations Page | HP DS 01 01 15 (01-15) |
| Schedule Of Policy Attachments and Forms | HP TC 01 01 15 (01-15) |
| Notice to Policyholder | HP PN 01 01 15 (01-15) |
| U.S. Treasury Dept. ("OFAC") | IL P 001 01 04 (01-04) |
| Excess of Loss Follow Form Coverage Form | HP EF X2 01 15 (01-15) |
| Hurricane Minimum Earned Premium Endorsement | HP HM 01 01 15 (01-15) |
| Commercial Property Exclusion Endorsement (Asbestos, Pollutants, NBCR) | HP CP 01 03 17 (03-17) |
| Exclusion of Prior Loss or Damage | HP LD 01 03 17 (03-17) |
| State Fraud Statements | HP SF 01 01 15 (01-15) |
| Service Of Suit Endorsement | HP SS 01 01 15 (01-15) |
| Claim Reporting Procedures | HP CC 00 01 15 (01-15) |
| Privacy Policy Disclosure Notice | HP 00 01 01 15 (01-15) |
| Surplus Lines Notification | SL18898 (10-17) |
| Policyholder Disclosure Notice of Terrorism – Exclusion of Terrorism | HP ET 01 01 15 (01-15) |
| Fungus, Wet Rot, Dry Rot and Bacteria Exclusion | HP FU 01 01 15 (01-15) |
| Occurrence Limit of Liability | HP OL LN 01 15 (01-15) |
| Pollution Exclusion and Pollutant Cleanup and Removal Coverage Extension Endorsement | HP PO 01 01 15 (01-15) |
| Total Exclusion - Electronic Property and Virus | HP EV 01 01 15 (01-15) |
| Signature Page | HS 00 01 01 16 (01-16) |

**HP TC 01 01 15**                                                    **Page 1 of 1**

# NOTICE TO POLICYHOLDER

This policy is composed of various forms explaining the insurance coverage provided. It may also include one or more endorsements. Endorsements are documents that change the policy. Endorsements may provide additional coverage to the policy. Endorsements can also restrict or remove coverage provided in the policy. THE POLICY SHOULD BE READ CAREFULLY TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.As the context may require, the words "you", "your", "Insured", and "the Insured" refer to the Named Insured shown on the Declarations Page. The words "we", "us", "our", "Company", "the Company", and "this Company" refer to the Company providing this insurance.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

# HALLMARK EXCESS FOLLOW FORM

Attached to and forming part of Policy Number: 73PRX19A104

**SCHEDULE**

1. Total Limit of Liability: $15,000,000 part of $15,000,000 excess of $10,000,000 any one Occurrence

2. Limit of Liability Provision

   A. For the purposes of determining the attachment of coverage under this Policy and the amount payable under this Policy, this Policy shall not recognize:

      1. Covered loss for each type of covered property at a location in an amount greater than the value on the latest Statement of Values on file with the Company for that type of covered property at that location

      2. Covered loss, damage, cost, claim or expense for each type of time element coverage caused by or resulting from insured direct physical loss or damage to covered property at a location in an amount greater than the value for that type of time element coverage reported on the latest Statement of Values on file with the Company for that location.

   B. Claims payable under this Policy shall be adjusted as if any Underlying Insurance also contained this provision and were settled accordingly.

   C. Notwithstanding anything in Sub-paragraph **E.** Priority of Payments and Sub-paragraph **F.** Earthquake and Flood Drop Down of Paragraph **6**. UNDERLYING INSURANCE CLAUSE to the contrary, for the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy any amounts paid by any Underlying Insurance, over and above what would have been paid if such insurance contained this provision, shall not be recognized by this Policy as reducing, eroding or exhausting the limits of any Underlying Insurance.

   D. For the purpose of the application of this provision, location shall mean:

      1. as specified in latest Statement of Values on file with the Company ; or

      2. if not so specified, a building, yard, dock, wharf, pier or bulkhead bounded on all sides by public streets, clear land space or open waterways.

   E. For the purpose of the application of this provision, time element shall mean indirect loss, including, but not limited to, business interruption, business income, extra expense and rents.

3. Total Limit of Liability of the Underlying Insurance: $ 10,000,000

4. Lead Insurance Policy:

   A. Name of Insurer:           Lexington Insurance Company

   B. Policy Number:             011144836

   C. Limit of Liability:        $2,500,000 part of $5,000,000 per Occurrence and in the Primary

   D. Policy Term:               6/1/2019 to 6/1/2020

5. Minimum Earned Premium Percentage:   25.00%

**COMMERCIAL PROPERTY EXCESS POLICY**

1.  INSURING AGREEMENT

    Subject to the limitations, terms, and conditions contained in this Policy or any endorsement attached hereto, the Company agrees to indemnify the Insured for direct physical loss or damage to covered property at covered locations, occurring during the Policy Period, and caused by covered perils, all as defined or described in the Lead Insurance Policy

    Except as regards the premium, the amount and Limit of Liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any, AND EXCEPT AS OTHERWISE PROVIDED HEREIN, this Policy is subject to the same limitations, terms, and conditions contained in the Lead Insurance Policy and, to the extent that coverage is further limited or restricted thereby, to those contained in any other Underlying Insurance.

2.  SOLE AGENT

    If this Policy insures more than one entity, the first named Insured in this Policy will act as the sole agent on behalf of the others for all of the Insured's obligations and duties in this Policy.

3.  LOSS PAYABLE

    Loss, if any, shall be payable to the Insured, whose receipt shall constitute a release in full of all liability under this Policy with respect to such loss.

4.  TERM OF INSURANCE

    This Policy will begin and end at 12:01 A.M. standard time on the dates shown in the Policy Period.

5.  CONDITIONS OF COVERAGE

    A.  By acceptance of this Policy, the Insured agrees to pay the premium shown in the Policy Declarations and to comply with all the provisions of the Policy.

    B.  The Company may, in its sole discretion, condition its agreement to follow any changes in the Underlying Insurance on the Insured paying any additional premium required by the Company for such change.

    This policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

    Notice to any agent or knowledge possessed by any agent or by any other person other than the Company will not:

    1.  create a waiver, or change any part of this Policy; or

    2.  prevent the Company from asserting any rights under the provisions of this Policy.

6. UNDERLYING INSURANCE CLAUSE

    A. Application of Underlying Insurance

Liability of the Company attaches only after direct, physical loss or damage occurs to property covered under this Policy resulting directly from a peril insured under this Policy and:

    1. The loss sustained by the Insured arising out of any one Occurrence exceeds the Limit of Liability of the Underlying Insurance as shown in the Schedule of this Policy plus the applicable amount of the deductible(s) or self-insurance retention(s); and

    2. The Company(ies) providing Underlying Insurance has paid the full amount of their respective liability.

    B. Maintenance of Underlying Insurance

It is a condition precedent to a recovery under this Policy that the Underlying Insurance and the Limit of the Underlying Insurance shall be maintained in full force and effect during the term of this Policy, except for any reduction or exhaustion of any underlying aggregate limit of liability for flood and earthquake, solely by the amount of loss(es) paid during the Policy Period. Failure to comply with this condition will not invalidate this Policy; however, the Insurer will not be liable under this Policy to any greater extent than it would have been if there had been full compliance with this condition. If any Underlying Insurance is not maintained, the Insured will be deemed to be self-insured for the limit(s) of liability of such Underlying Insurance. Notwithstanding anything to the contrary in this Policy, all coverage under this Policy will be void from its inception in the event that any Underlying Insurance is rescinded by agreement or legal process for fraud or other material misrepresentation by the Insured.

    C. Relationship to Sub-limited Coverage

Underlying Insurance may impose a dollar or percentage limit on some aspects of coverage (commonly called a sub-limit) at less than the total limit over which this Policy is excess. This Company shall not drop down over any such sub-limits and shall always be excess over the maximum limits of the Underlying Insurance.

    D. Uncollectibility of Other Insurance

Notwithstanding any of the terms of this Policy, which might be construed otherwise, the insurance provided by this Policy shall always be excess over the maximum monetary limit(s) of the Underlying Insurance. For purposes of determining attachment of coverage under this Policy, such Underlying Insurance shall not be considered reduced due to the uncollectibility, in whole or part, of any underlying insured amount(s), for any reason, including the financial impairment or insolvency of an Underlying Insurer(s).

The risk of uncollectibility, for any reason, is expressly retained by the Insured and is not in any way or under any circumstances insured or assumed by this Company.

    E. Priority of Payments

Except as otherwise provided in this Policy or endorsements attached hereto, for the purpose of determining the attachment of coverage under this Policy and the amount payable under this Policy, any loss, damage, cost, claim or expense excluded by this Policy, but provided by the Underlying Insurance, shall be recognized by this Policy as eroding or exhausting the Limits of Insurance of the Underlying Insurance. Nothing herein; however, shall be deemed to extend coverage in this Policy to include such loss, damage, cost, claim or expense.

F.  Earthquake and Flood Drop Down

1.  If flood coverage is endorsed to this Policy, in the event of reduction or exhaustion of the flood aggregate limits of Underlying Insurance due solely from insured direct physical loss or damage to covered property, the flood coverage in this Policy will apply in excess of the reduced flood underlying limit, or if such limit is exhausted, will apply as underlying insurance. In no event, however, shall the Company be liable for flood coverage not specifically provided by the flood endorsement attached to this Policy. Nor shall this Policy be liable for more than the applicable amount of insurance stated in the flood endorsement to this Policy.

Should this Company's limit(s) for flood drop down over an exhausted underlying amount, the coverage provided under this Policy for direct physical loss or damage caused by flood shall always be subject to the Lead Insurance Policy deductible(s) or $ per Occurrence, whichever is greater.

If earthquake coverage is endorsed to this Policy, in the event of reduction or exhaustion of the earthquake aggregate limits of Underlying Insurance due solely from insured direct physical loss or damage to covered property, the earthquake coverage in this Policy will apply in excess of the reduced underlying limit, or if such limit is exhausted, will apply as underlying insurance. In no event, however, shall the Company be liable for earthquake coverage not specifically provided by the earthquake endorsement to this Policy. Nor shall this Policy be liable for more than the applicable amount of insurance stated in the Sub limits of Liability section of this Policy.

Should this Company's limit(s) for earthquake drop down over an exhausted underlying amount, the coverage provided under this Policy for direct physical loss or damage caused by earthquake shall always be subject to the Lead Insurance Policy deductible(s) or $ per Occurrence, whichever is greater.

7.  EXCLUSIONS

A.  Earth Movement

This Policy does not insure against loss or damage caused by any of the following, regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage:

1.  all earth movement (whether occurring naturally or not) including, but not limited to, earthquake, landslide, subsidence and volcanic eruption.

2.  collapse, cracking, shrinking, bulging, expansion, shifting, rising, settling, sinking, lateral or other movement, or other kinds of loss or damage to property which would not have occurred but for an event as described in 1. above.

3.  Tsunami

If fire or explosion is covered by this Policy, this exclusion shall not apply to loss or damage from fire or explosion resulting from 1 through 3 above.

B. Flood

This policy does not insure against loss or damage caused by any of the following, regardless of the cause of such event and regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage:

1. Flood, storm surge, surface water, mudslide or mud flow, waves, tidal water or tidal waves, overflow of streams, lakes, reservoirs, canals, drainage ditches, retention ponds or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (all whether or not naturally occurring),

2. Damage to, destruction, failure, or overflowing of levees, dams, dikes, floodgates and other similar works,

3. Water under the ground surface pressing on, or flowing or seeping through:

   a. Foundations, walls, floors or paved surfaces;

   b. Basements, whether paved or not; or

   c. Doors, windows or other openings.

4. Tsunami

If fire or explosion is covered by this Policy, this exclusion shall not apply to loss or damage from fire or explosion resulting from 1. through 4. above.

C. Boiler and Machinery Exclusion

This Policy excludes loss or damage due to:

1. Explosion in or of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; or gas turbines; except that this exclusion shall not apply to explosion of accumulated gases or unconsumed fuel within the firebox or the combustion chamber of any fired vessel, other than gas turbines, or within the flues or passages which conduct the gases of combustion therefrom

2. Rupture, bursting, cracking, burning or bulging of any of the following property: steam boilers, including equipment attached to and forming a part thereof; steam turbines; steam engines; steam pipes connecting any of the foregoing; hot water boilers or other equipment for heating water; pressure vessels, including equipment attached to and forming a part thereof; or gas turbines

3. Mechanical or machinery breakdown, including rupture or bursting caused by centrifugal force

4. Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

D.  **Special Exclusions**

Notwithstanding anything in Sub-paragraph E. Priority of Payments and Sub-paragraph F. Earthquake and Flood Drop Down of Paragraph 6. UNDERLYING INSURANCE CLAUSE to the contrary, any loss, damage, cost, claim or expense excluded under the following special exclusions but covered by the Underlying Insurance shall not be recognized by this Policy as reducing, eroding or exhausting the limit(s) of such Underlying Insurance.

1.  Fungi Exclusion

    This Policy does not cover:

    a.  Fungi, wet or dry rot, or Bacteria

    b.  Loss or damage caused directly or indirectly by Mold or Other Fungi, wet or dry rot, or Bacteria.

    c.  The costs associated with the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Mold or Other Fungi, wet or dry rot, or Bacteria.

    d.  Any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

    e.  This Mold or Other Fungi, wet or dry rot, or Bacteria exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

2.  Electronic Exclusion

    This Policy does not insure against loss or damage to, or any cost, claim or expense directly or indirectly arising out of or relating to, any of the following, regardless of any other cause or event contributing concurrently or in any other sequence to the loss, damage, claim or expense:

    a.  Data, Electronic Data, Programs, or Electronic Computer Programs,

    b.  failure of, interruption of, loss of use of, loss of access to, or reduction or alteration in the accuracy, functionality, availability, or operation of Data, Electronic Data, Programs, or Electronic Computer Programs,

    c.  any instruction, including but not limited to any Computer Virus, introduced into, or caused to act upon Computer Operations,

    d.  errors in configuring Computer Operations,

    e.  failure of, interruption of, loss of use of, loss of access to, or reduction or alteration in the accuracy, functionality, availability, or operation of Computer Operations.

    f.  Notwithstanding anything in the above to the contrary, and subject to the other terms and conditions of this Policy not in conflict herewith, this Policy insures against direct physical loss or damage caused by perils or causes of loss insured under this Policy to insured computer hardware and Electronic Data Processing Media.

3. Pollution Exclusion

This Policy does not cover any of the following:

a. Loss or damage caused by, or resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of Pollutants or Contaminants , however caused

b. The expense or cost to extract or remove Pollutants or Contaminants from debris;

c. The expense or cost to extract or remove Pollutants or Contaminants from land or water;

d. The expense or cost to extract or remove, restore or replace contaminated or polluted land or water;

e. The costs associated with the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Pollutants or Contaminants;

f. Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by Pollutants or Contaminants, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters; or

g. Any cost to store or otherwise dispose of any property because Pollutants or Contaminants infect the property, or

h. Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above

4. Materials Exclusion

This Policy does not cover loss or damage caused directly or indirectly by any of the following:

a. Removal of asbestos, dioxin, and polychlorinated biphenols from any goods, products, structures or debris;

b. Demolition, increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such asbestos, dioxin, and polychlorinated biphenols;

c. Any governmental direction or request declaring that such asbestos, dioxin, and polychlorinated biphenols present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; or

d. Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

5. Fines or Penalties

This Policy will not pay any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

6.  Nuclear Exclusion

This Policy does not cover loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy. This exclusion applies to all coverage under this Policy notwithstanding any coverage extension or any other endorsement.

7.  Chemical and Biological Exclusion

This Policy does not cover loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical or biological materials or agents that are harmful to property or human health, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy, however such dispersal, application, release or exposure may have been caused. This exclusion applies to all coverage under Policy notwithstanding any coverage extension or any other endorsement.

8.  LIMIT OF LIABILITY

a.  Total Limit of Liability

The Company shall not be liable for more than the Total Limit of Liability for this Policy as shown on Item 1 of the Schedule in any one Occurrence regardless of the number of Locations or coverages involved.

This Policy or any extensions or endorsements to it may specify limits for certain aspects of coverage and the Company shall not be liable for more than the limit specified. Such limits are part of and not in addition to the Total Limit of Liability. Such limits do not increase the Total Limit of Liability or any other limit.

When a Sub-limit is shown as "in the aggregate", the Company's maximum limit of liability will not exceed such limit during the term of the Policy regardless of the number of Occurrences, locations and coverages involved.

The inclusion of more than one Insured shall not increase the liability of the Company.

9.   LOSS PROVISIONS

a.   Assistance and Cooperation of the Insured

The Insured will cooperate with the Company and, upon the Company's request and expense, will attend hearings and trials and will assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting lawsuits.

b.   Notification of Loss

The Insured will provide the Company with prompt notice of any claim under any Underlying Insurance or any circumstance that could give rise to a claim under any Underlying Insurance.

c.   Settlement and Defense

The Company may, at its sole discretion, elect to participate in the investigation, defense or settlement of any claim under this Policy, regardless of whether the applicable Underlying Insurance has been exhausted.

d.   Proof of Loss

1.   The Insured shall complete and sign a sworn proof of loss within 90 days after the Occurrence of a loss stating the following:

a.   The time, place, and cause of the loss, the damage or expense, and the interest of the Insured and of all others in the damaged or destroyed property;

b.   The value of the property involved in the loss and the amount of loss, damage or expense; and

c.   All other insurance thereon.

2.   The proof of loss requirement for completion within 90 days after the Occurrence of a loss shall not be extended except with the prior written consent of the Company.

e.   Salvage and Recoveries

Any salvage or recovery will apply as if recovered or received prior to the loss settlement and any costs or expenses incurred in salvaging or recovering shall be apportioned between the interests of all concerned based on the ratio of their respective recoveries. If there is no recovery and the expenses are incurred solely by one interest, the costs shall be borne solely by that interest.

10. ADDITIONAL POLICY PROVISIONS

   a.  Assignment

      Assignment or transfer of this Policy will not be valid except with the prior written consent of the Company.

   b.  Due Diligence Clause

      The Insured shall use due diligence and do and concur in doing all things reasonably practicable to avoid or diminish any loss of or damage to the property insured hereunder.

   c.  Substitution of Terms And Conditions

      If this Policy follows a Lead Insurance Policy or is attached to another policy, the terms and conditions of this Policy and endorsements attached hereto shall determine the coverage afforded by this Policy.

   d.  Reporting Clause

      Notwithstanding that the Insured may be obligated to report full values for premium purposes, the Company's maximum limit of liability shall not exceed that amount stated in the Total Limit of Liability section of this Policy.

   e.  Statutory Requirements

      1.  Terms of this Policy, which are in conflict with the statutes of the state wherein this Policy is issued, are amended to conform to the minimum requirements of such statutes.

      2.  Any provisions required by law to be stated by policies issued by the Company shall be deemed to have been stated herein.

   f.  Contributing Insurance Clause

      1.  Permission is granted for other policies written upon the same plan, terms, conditions, and provisions as those contained in this Policy.

      2.  This Policy will contribute to the total of each loss otherwise payable herein to the extent of the participation of this Policy to the total limit of liability as provided by all such Contributing Insurance Policies, but only in accordance with the terms, conditions, provisions, exclusions, and limitations of this Policy.

   g.  Excess Insurance Clause

      Permission is granted to the Insured to have excess insurance over the Total Limit of Liability set forth in this Policy without prejudice to this Policy, nor will the existence of such insurance, if any, reduce any liability under this Policy.

   h.  Brands, Labels, and Trademarks

      1.  In case of loss or damage by an insured peril to insured property bearing a brand, label, or trademark, and the Company elects to take all or any part of that property, the Insured may, at its own expense:

      2.  Stamp salvage on the property or its container, if the stamp will not physically damage the property; or

      3.  Remove the brand, label, or trademark, if doing so will not physically damage the property. The Insured must re-label the property or its container to comply with the law.

   i.   Cancellation

      1.   This insurance may be canceled by the Insured at any time by written notice or by surrender of this Policy. This insurance may also be canceled by the Company by delivering or mailing to the Insured written notice by registered, certified or other first class mail, at the Insured's last mailing address as shown on or endorsed to this insurance Policy. Notice of cancellation will state the effective date of cancellation, not less than 60 days, 10 days for non-payment of premium.

      2.   The mailing of such notice shall be sufficient proof of notice and this insurance Policy shall terminate at the date and hour specified in such notice.

      3.   If this insurance is canceled by the Insured, the Company will retain the customary short rate proportion of the premium hereon except if this insurance is on an adjustable basis, the Company shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein, whichever is the greater.

      4.   Payment of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

      5.   If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period of limitation permitted by such law.

   j.   Titles of Paragraphs

The titles of the various paragraphs in this Policy and of any endorsements and supplemental contracts, if any, now and hereafter attached to this Policy are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

   k.   Terms

Nouns and pronouns used in this Policy and any endorsements or supplemental contracts, if any, now and hereafter attached to this Policy are deemed to refer to the masculine, feminine, neuter, singular, and plural, as the context may require.

   l.   Misrepresentation & Fraud

This entire Policy shall be void if, whether before or after a loss, the Insured has willingly' concealed or misrepresented any material fact or circumstance concerning this insurance of the subject thereof, or the interest of the Insured therein, or in case of any fraud or false swearing by the Insured relating thereto.

   m.   Minimum Earned Premium

In the event of:

      1.   cancellation of this Policy by the Insured or

      2.   failure of the Insured to make timely payment of premium

the product of the percentage indicated in the Minimum Earned Premium Percentage section of the Schedule times the original policy premium shall become earned; any conditions of the Policy to the contrary notwithstanding.

11. DEFINITIONS

a. Company means the insurance company listed on the Common Policy Declarations.

b. Lead Insurance Policy means the primary policy of insurance identified in Item 4 of the Commercial Property Schedule.

c. Limit of Liability of the Underlying Insurance means the limits of liability set forth in Item 3 of the Schedule.

d. Insured means the insured designated on the Common Policy Declarations.

e. Occurrence means, except as may be more specifically defined by peril, all loss, expense or damage that is attributable directly or indirectly to one cause, event, incident or repeated exposure to the same cause, event or incident, or to one series of similar causes, events, incidents or repeated exposures to the same cause, event or incident. All such loss, damage or expense will be treated as one Occurrence irrespective of the period of time, area or number of locations over which such loss, damage or expense occurs.

f. Policy Period means the period designated on the Common Policy Declarations.

g. Underlying Insurance consists of the Lead Insurance Policy and any other policy(ies) that affords coverage to the Insured for the covered property and is written for limits for which this Policy is excess, whether or not specifically listed in Item 3 of the Schedule. The Underlying Insurance Policy(ies) is (are) the first policy(ies) of property insurance to respond to a claim in the event of loss or damage covered under this Policy.

h. Mold or Other Fungi means:

   1. any type or form of mold or mildew;

   2. any other type or form of fungus; or

   3. any mycotoxin, spore, scent or byproduct that is produced or released by such mold, mildew or other fungus.

i. Bacteria means:

   1. any type or form of bacterium; or

   2. any byproduct that is produced or released by such bacterium.

j. Pollutants or Contaminants means:

   1. Any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   2. Pollutants or Contaminants include, but are not limited to those materials that can cause or threaten damage to human health or human welfare or cause or threaten damage, deterioration, loss of value, marketability or loss of use to property including Bacteria, fungi, mold, mildew, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency or any other governing authority.

k. Computer Operations means Computer Systems or Electronic Data Communications System

l.   Computer Systems means computer hardware of any kind; Electronic Computer Programs; Electronic Data Processing Media; Electronic Data; operating system; media microchip; microprocessors (computer chips); integrated circuit or similar device; computer network and networking equipment; firmware; servers; web sites; Extranet; and all input, output, processing, storage, and off-line media libraries.

m.   Computer Virus means any corrupting, harmful or otherwise unauthorized instructions or code including, but not limited to, any maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. Computer Virus includes, but is not limited to, 'Trojan Horses', 'worms' and `time or logic bombs'.

n.   Data means information or knowledge

o.   Electronic Data Communications System means any communication system, including Computer Systems and the Internet, which provides the Insured with access to other Computer Systems,    microchips, integrated circuits or similar devices in non-computer equipment, or which provides any party access to the Insured's Computer Systems, microchips, integrated circuits or similar   devices in non-computer equipment.

p.   Electronic Data Processing Media means punch cards, paper tapes, floppy disks, CD-ROM, hard drives, magnetic tapes, magnetic discs or any other tangible personal property on which Electronic Data or Electronic Computer Programs are recorded or transmitted, but not the Electronic Data or Electronic Computer Programs themselves. Money or Securities are not Electronic Data Processing Media.

q.   Electronic Data means Data recorded or transmitted in a form usable in Computer Systems, microchips, integrated circuits or similar devices in non-computer equipment, and which can be stored on Electronic Data Processing Media for use by Electronic Computer Programs.

r.   Extranet means an internal computer network that has been selectively opened to suppliers, customers, or other third parties via the Internet or otherwise.

s.   Internet means the worldwide publicly accessible network of computers, which is commonly referred to as "The Internet" or "World Wide Web", or any other similar publicly accessible network hereafter to be developed.

t.   Media means any item of tangible personal property on which Data or Programs can be recorded, but not the Data or Programs themselves. Money or Securities are not Media.

u.   Money means currency, coins, bank notes and bullion; and travelers checks, register checks and money orders held for sale to the public.

v.   Securities means all negotiable and nonnegotiable instruments or contracts representing either Money or other property and includes revenue and other stamps in current use, tokens and tickets, but does not include Money.

# HURRICANE MINIMUM EARNED PREMIUM ENDORSEMENT

| Named Insured **Bayshore Recycling Corporation; ETAL** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number **73PRX19A104** | Policy Period **6/1/2019 To  6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company) **Hallmark Specialty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

The following terms and conditions will apply to this policy:

1.      If you cancel this policy, remove a location or reduce the amount of insurance on a location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands, and coverage existed any time during the period of June 1st to November 30th, the amount of premium we will return will be the Unearned Premium for the location. The Unearned Premium is the annual premium for the policy (or for the location removed or coverage reduced, as applicable) multiplied by the Unearned Factor noted below. The location premium is the 100% annual rate multiplied by the location value as scheduled in the most current Statement of Values on file with the Company.

1 year Policy

| Days Policy In Force | Unearned Factor |
|---|---|
| 1 to 180 | 20% |
| 181 to 210 | 15% |
| 211 to 240 | 10% |
| 241 to 270 | 7.5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

2.      If a Location that is within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands is added during the term of the policy and  coverage exists at any time during the period of June 1st to November 30th, the rate will be calculated as 100% of the annual rate, less the Unearned Factor as calculated in No. 1 above based upon the number of days remaining in the policy term.

3.      The provisions of this endorsement replace any short rate provisions stipulated in this policy for all locations that are within 100 miles of the Atlantic Ocean and/or the Gulf of Mexico and/or the Hawaii Islands and coverage existed any time during the period of June 1st to November 30th.

4.      Nothing herein will act to provide coverage outside the automatic acquisition clause, if any, that is located elsewhere in the policy.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

## COMMERCIAL PROPERTY EXCLUSION ENDORSEMENT
## (ASBESTOS, POLLUTANTS AND NBCR)

| Named Insured<br>**Bayshore Recycling Corporation; ETAL** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number<br>**73PRX19A104** | Policy Period<br>**6/1/2019 To 6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company)<br>**Hallmark Specialty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

1. EXCLUSIONS

   A. POLLUTANTS AND CONTAMINANTS EXCLUSION

   1) As used in this endorsement, Pollutants or Contaminants means:

      a. Any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

      b. Pollutants or contaminants include, but are not limited to those materials that can cause or threaten damage to human health or human welfare or cause or threaten damage, deterioration, loss of value, marketability or loss of use to property. Pollutants or contaminants include, but are not limited to bacteria, fungi, mold, mildew, virus or hazardous substances as listed in the Federal Water Pollution Control Act, Clean Air Act, Resource Conservation and Recovery Act of 1976, Toxic Substances Control Act or as designated by the U.S. Environmental Protection Agency or any other governing authority.

   2) This policy does not cover any of the following:

      a. Loss or damage caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, escape or dispersal of pollutants or contaminants, however caused;

      b. The expense or cost to extract or remove pollutants or contaminants from debris;

      c. The expense or cost to extract or remove pollutants or contaminants from land or water;

      d. The expense or cost to extract or remove, restore or replace contaminated or polluted land or water;

      e. The costs associated with the enforcement of any ordinance or law which requires the Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of pollutants or contaminants;

      f. Any cost to transport any property or debris to a site for storage or decontamination required because the property is infected by pollutants or contaminants, whether or not such removal, transport or decontamination is required by law, regulation or any authority governing such matters;

    g.  Any cost to store or otherwise dispose of any property because pollutants or contaminants infect the property; or

    h.  Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3)  Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the insured to clean up or remove pollutants from land or water at Covered Locations under this policy during the policy period if the discharge, dispersal, seepage, migration, release or escape of the pollutants is directly caused by or results directly from fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system. The most the Company will pay for such pollutant clean up or removal is a $10,000 aggregate in any one policy year. The expenses will be paid only if they are reported to the Company in writing within 180 days of the date on which the covered loss occurs. This additional coverage does not increase the Policy Limit of Insurance.

B.  ASBESTOS, DIOXIN OR POLYCHLORINATED BIPHENOLS MATERIALS EXCLUSION

1)  In this exclusion, Asbestos, Dioxin, and Polychlorinated Biphenols are all referred to as "Materials."

2)  This policy does not cover loss or damage caused directly or indirectly by any of the following:

    a.  Removal of such "Materials" from any goods, products, structures or debris;

    b.  Demolition, increased cost of reconstruction, repair, debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating such "Materials";

    c.  Any governmental direction or request declaring that such "Materials" present in or part of or utilized in any undamaged portion of the Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified; or

    d.  Any expense for the investigation or defense of any loss, damage or any cost, loss of use expense, fine or penalty or for any expense or claim or suit related to any of the above.

3)  Additional Coverage

This policy is extended to cover the necessary and reasonable expenses actually incurred by the Insured to remove Asbestos at Covered Locations under this policy during the policy period if Asbestos itself is directly damaged by fire, lightning, aircraft impact, explosion, riot, civil commotion, smoke, vehicle impact, windstorm or hail, vandalism, malicious mischief, leakage or accidental discharge from automatic fire protective system. The most the Company will pay for such Asbestos removal is a $10,000 aggregate in any one policy year. The expenses will be paid only if they are reported to the Company in writing within 180 days of the date on which the covered loss occurs. This additional coverage does not increase the Policy Limit of Insurance.

C.  NUCLEAR, BIOLOGICAL, CHEMICAL, RADIOLOGICAL EXCLUSION CLAUSE

**HP CP 01 03 17**                                                

1) Loss or damage arising directly or indirectly from nuclear detonation, reaction, nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, or due to any act or condition incident  to any of the forgoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such nuclear detonation, reaction, nuclear radiation or radioactive contamination may have been caused. This exclusion replaces any other nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination exclusions found elsewhere in this Policy.

2) Loss or damage arising directly or indirectly from the dispersal, application or release of, or exposure to, chemical, radiological, or biological materials or agents, all whether controlled or uncontrolled, or due to any act or condition incident to any of the foregoing, whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by, any physical loss or damage insured against by this Policy or Coverage Part, however such dispersal, application, release or exposure may have been caused.

D. FINES OR PENALTIES

This policy will not pay any costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

2. OTHER INSURANCE CONTRACTS

Coverage provided by other insurance contract(s) for any exclusion in this endorsement shall not affect the terms and conditions as set forth by this endorsement. This policy shall not cover as excess insurance or contribute with such other insurance for loss or damage excluded by this endorsement.

The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy. All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.

All other terms and conditions remain unchanged.

## EXCLUSION OF PRIOR LOSS OR DAMAGE

| Named Insured<br>**Bayshore Recycling Corporation; ETAL** | | Endorsement Number |
|---|---|---|
| Policy Symbol | Policy Number<br>**73PRX19A104** | Policy Period<br>**6/1/2019 To  6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company)<br>**Hallmark Specialty Insurance Company** | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

In consideration of premium charged and coverage provided, it is understood and agreed that this policy does not provide any coverage for any direct or indirect physical loss or damage, or Business Income or Extra Expense coverage as defined in this policy, caused directly or indirectly or contributed to in any manner by loss or damage which occurred prior to the inception date of this policy, regardless of any other cause or event contributing concurrently or in any other sequence to the loss or damage.

All other terms and conditions remain unchanged.

**HP LD 01 03 17**                                                                                                    Page **1** of **1**

# STATE FRAUD STATEMENTS

---

Applicable in Alabama

### Alabama Fraud Statement

"Any person who knowing presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison or any combination thereof."

Applicable in Arkansas

### Arkansas Fraud Statement

"Any person who knowing presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in Colorado

### Colorado Fraud Statement

"It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies."

Applicable in District of Columbia

### District of Columbia Fraud Statement

"Warning: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant."

Applicable in Florida

### Florida Fraud Statement

"Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Applicable in Kansas

### Kansas Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or another person files an application for the issuance of, or the rating of, an insurance policy or statement of claim or any written statement containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal penalties."

# STATE FRAUD STATEMENTS

Applicable in Kentucky

### Kentucky Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime."

Applicable in Louisiana

### Louisiana Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

Applicable in Maine

### Maine Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits."

Applicable in Maryland

### Maryland Fraud Statement

"Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in New Jersey

### New Jersey Fraud Statement

"Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties."

Applicable in New Mexico

### New Mexico Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties."

Applicable in New York

### New York Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation."

# STATE FRAUD STATEMENTS

Applicable in Ohio

### Ohio Fraud Statement

"Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud."

Applicable in Oklahoma

### Oklahoma Fraud Statement

"Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony."

Applicable in Oregon

### Oregon Fraud Statement

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

In order for us to deny a claim on the basis of misstatements, misrepresentations, omissions or concealments on your part, we must show that:

A. The misinformation is material to the content of the policy;

B. We relied upon the misinformation; and

C. The information was either:

  1. Material to the risk assumed by us; or

  2. Provided fraudulently.

For remedies other than the denial of a claim, misstatements, misrepresentations, omissions or concealments on your part must either be fraudulent or material to our interests.

With regard to fire insurance, in order to trigger the right to remedy, material misrepresentations must be willful or intentional.

Misstatements, misrepresentations, omissions or concealments on your part are not fraudulent unless they are made with the intent to knowingly defraud.

Applicable in Pennsylvania

### Pennsylvania Fraud Statement

"Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

# STATE FRAUD STATEMENTS

Applicable in Puerto Rico

### Puerto Rico Fraud Statement

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

Applicable in Rhode Island

### Rhode Island Fraud Statement

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."

Applicable in Tennessee

### Tennessee Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

Applicable in Virginia

### Virginia Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

Applicable in Washington

### Washington Fraud Statement

"It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits."

# SERVICE OF SUIT ENDORSEMENT

| Named Insured **Bayshore Recycling Corporation; ETAL** | | | Endorsement Number |
|---|---|---|---|
| Policy Symbol | Policy Number **73PRX19A104** | Policy Period **6/1/2019 To 6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company) **Hallmark Specialty Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

General Counsel
Hallmark Financial Services, Inc.
777 Main St, Suite #1000
Ft. Worth, TX 76102

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.

The law of some jurisdictions of the United States of America require that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

# CLAIM REPORTING PROCEDURES

Your policy is written through Hallmark Specialty Insurance Company or Hallmark National Insurance Company. Please refer to your Declaration Page to determine who provides the coverage. Both companies offer options for reporting claims and addressing questions. The claims are handled by Effective Claims Management, Inc.

To report a new claim:

1.  You may e-mail a completed ACORD First Notice of Loss to claims@hallmarkgrp.com

2.  You may report a claim by faxing a completed ACORD First Notice of Loss to one of the following fax numbers: 800-722-4052 (toll free), 817-348-1607 or 817-348-1785

3.  You may report a claim telephonically by calling 800-426-5119 ext. 1780 (toll free number) or 817-348-1780 (direct to support staff personnel).

4.  You may mail the ACORD First Notice of Loss to:

    Effective Claims Management
    Attention: Claims
    777 Main Street, Suite 1000
    Fort Worth, Texas 76102

5.  The above email address and telephone numbers may also be used to direct your request(s) for the status of claims related questions (i.e. status of specific claim or the name of the adjuster to whom a claim has been assigned).

6.  To obtain claim information on your claim, ask a general question, or voice a complaint, you may contact the claims department directly at 800-426-5119 ext 1780 or 817-348-1780.

# Privacy Policy Disclosure Notice

The Gramm-Leach-Bliley Act (GLBA) and various other federal and state privacy regulations generally prohibit any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a non-affiliated third party unless the institution provides you with a notice of its privacy policies and practices, such as the type of information that it collects about you and the categories of persons or entities to whom it may be disclosed.

Hallmark Financial Services, Inc. ("HFS"), through its subsidiaries, provides insurance products and services and is firmly committed to its affirmative and continuing obligation to respect the privacy of its current, former and prospective policyholders and to protect the security and confidentiality of their nonpublic personal information. Therefore, proper handling of your personal information is one of our highest priorities. We collect and utilize information we believe is necessary to efficiently administer our business, to advise you about our products, and provide you with outstanding customer service. We want you to know why we collect personal information about you, what we do with that information and explain to you our commitment to protect the information collected.

In order to provide you with quality insurance products and the service you deserve, it is necessary for us to collect nonpublic personal information about you and, in certain situations, to share that information with others. The following notice describes our policies and practices with regard to your nonpublic personal information.

## PROTECTION OF YOUR PERSONAL INFORMATION

Not only is the protection of nonpublic personal information a legal requirement, it is also a good business practice. We maintain appropriate physical, electronic and procedural safeguards to maintain the confidentiality and security of your nonpublic personal information. We restrict access to nonpublic personal information about you to those employees who need access to that information to provide products or services to you. When information is shared with companies performing work on Hallmark's behalf, we protect your personal information where required by law with contractual confidentiality agreements that obligate those companies to keep confidential any information about you furnished to them.

We provide training to our employees on the importance of maintaining the confidentiality and security of your nonpublic personal information. Employees who violate our privacy policies are appropriately disciplined.

## CATEGORIES OF INFORMATION THAT WE COLLECT

We collect and use only that nonpublic personal information required for us to provide services and products requested by you and to administer your business with us such as underwriting and processing your policies and the administration and handling of claims.

We may collect nonpublic personal information about you from the following sources:

- Information that we receive from you on applications and other related forms such as your name, address, telephone number, and social security number;
- Information about your transactions with us, our affiliates or others such as your underwriting information, driving record, claim history, policy number, premium, payment history, and claim information;
- Information that we receive from consumer credit reporting agencies such as your credit history.

The nonpublic personal information collected may come from persons such as independent insurance agents, brokers, policyholders, or persons involved in the claim adjustment process such as claimants, witnesses to an accident, repair facilities, hospitals, doctors and attorneys.

# Privacy Policy Disclosure Notice

If you visit our website, www.hallmarkgrp.com, we automatically track and collect information regarding your visit including your IP address; domain server, type of computer, type of web browser and the pages you viewed on our site. This information (Traffic Data) is information that unless you have specifically entered identifying information somewhere in the site, does not personally identify you, but rather is helpful for marketing purposes or for improving your experience on the Site. We currently do not collect nonpublic personal information through your use of our corporate website. You may view the website privacy statement by clicking the "Conditions of Use" sections of the site.

**CATEGORIES OF INFORMATION THAT WE DISCLOSE AND PARTIES TO WHOM WE MAY DISCLOSE INFORMATION**

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as required or permitted by law. Hallmark does not sell or distribute for sale any nonpublic personal information. Nor do we disclose your personal information to any person, company or organization not affiliated with us for their own marketing purposes.

However, we may disclose nonpublic personal information about our policyholders (current, former and prospective) with affiliated and non-affiliated third parties as necessary to service an insurance policy or claim or as permitted or required by law. We may disclose nonpublic personal information we collect about you to third parties with whom we contract to perform business functions such as record keeping, policy administration, claim administration, billing, computer related services, distribution of materials, and joint marketing of our products and services.

We understand the importance and seriousness of protecting the confidentiality and security of your nonpublic personal information. We respect and appreciate the trust that you, as a valued policyholder, have placed with us and we continuously strive to earn and maintain that trust.

**ACCESS TO AND CORRECTION OF YOUR INFORMATION:**

You have a right to know the nature and substance of the recorded personal information contained in our files about you. You may review and/or for a reasonable fee, receive a copy of the information upon written request at the address shown below. You must properly identify yourself and reasonably describe the information you seek. Your request should contain your name, address, all policy and claim numbers issued to you by us and a copy of your drivers license or other personal identification. Upon receipt of your request, we will furnish to you within thirty (30) business days the nature and substance of locatable, retrievable and available recorded personal information. We will also furnish you with a list of all persons or organizations to whom the information has been disclosed within the past two years. If the source of information about you was a consumer credit reporting agency or other institution, we will identify those sources so you can contact them if you so desire. You may also request that we correct, amend or delete any recorded personal information. If we do not make the requested change(s), you have the right to provide, for insertion in our file, a concise written statement setting forth what you think is the correct, relevant or fair information and a concise statement of the reasons why you disagree with our decision not to correct, amend or delete recorded personal information. Your statement will become a part of our file and included with any future disclosures.

## Privacy Policy Disclosure Notice

**CHANGES TO OUR NOTICE OF PRIVACY POLICY AND INSURANCE INFORMATION PRACTICES:**

We reserve the right to change our privacy policies and insurance information practices. If we make any material changes to our policies or practices, we will provide you with a copy of a revised notice.

**OPT OUT STATEMENT:**

If you prefer we do not disclose personal identifying information or personal financial information about you to nonaffiliated third parties, you may opt out of those disclosures (other than disclosures allowed by law). You may do so by sending us a letter informing us of your election to opt out at the address shown below.

If you have any questions regarding the content of this notice, you may call us at (817)348-1600 or you may write to us at:

Hallmark Financial Services, Inc.
Attention: Compliance
777 Main Street, Suite 1000
Fort Worth, Texas 76102

This notice is being provided on behalf of the following companies:

Hallmark Financial Services, Inc.

Hallmark E&S Insurance Services, LLC

Hallmark Specialty Insurance Company

Hallmark Claims Service Inc.

Effective Claims Management, Inc.

Heath XS, LLC

Hallmark National Insurance Company

**HP 00 01 01 15**                                                                                    **Page 3 of 3**

**NEW JERSEY SURPLUS LINES NOTIFICATION**

**"THIS POLICY IS WRITTEN BY A SURPLUS LINES INSURER AND IS NOT SUBJECT TO THE FILING OR APPROVAL REQUIREMENTS OF THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. SUCH A POLICY MAY CONTAIN CONDITIONS, LIMITATIONS, EXCLUSIONS AND DIFFERENT TERMS THAN A POLICY ISSUED BY AN INSURER GRANTED A CERTIFICATE OF AUTHORITY BY THE NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE. THE INSURER HAS BEEN APPROVED BY THE DEPARTMENT AS AN ELIGIBLE SURPLUS LINES INSURER, BUT THE POLICY IS NOT COVERED BY THE NEW JERSEY INSURANCE GUARANTY FUND, AND ONLY A POLICY OF MEDICAL MALPRACTICE LIABILITY INSURANCE AS DEFINED IN N.J.S.A. 17:30D-3D OR A POLICY OF PROPERTY INSURANCE COVERING OWNER-OCCUPIED DWELLINGS OF LESS THAN FOUR DWELLING UNITS ARE COVERED BY THE NEW JERSEY SURPLUS LINES GUARANTY FUND."**

SL-18898

# EXCLUSION OF TERRORISM

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**ALL COVERAGE PARTS**

**A.   Definitions**

1.   "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in that Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a.   The act resulted in insured losses in excess of $5 million in aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2.   "Other act of terrorism" means activities against persons, organizations or property of any nature:

   a.   That involves the following or preparation for the following:

      1.   Use or threat of force or violence; or

      2.   Commission or threat of a dangerous act; or

      3.   Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b.   When one or both of the following applies:

      1.   The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      2.   It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

   c.   The act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act.

**B.   The following exclusion is added:**

**Exclusion of Certified Act of Terrorism and the following Other Acts of Terrorism**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism" or an "other act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But with respect to any "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

1.   That involves the use, release or escape of nuclear materials, or that directly or indirectly results

2.   in nuclear reaction or radiation or radioactive contamination; or

3.   That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials, or

4.   In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

# FUNGUS, WET ROT, DRY ROT AND BACTERIA EXCLUSION

| Named Insured | Endorsement Number |
|---|---|
| **Bayshore Recycling Corporation; ETAL** | |

| Policy Symbol | Policy Number | Policy Period | Endorsement Date |
|---|---|---|---|
| | **73PRX19A104** | **6/1/2019 To 6/1/2020** | |

| Issued By (Name of Insurance Company) |
|---|
| **Hallmark Specialty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

A. The following exclusion is added:

We will not pay for loss, or physical loss or damage, caused directly or indirectly by any of the following. Such loss or physical loss or damage, is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss, or physical loss or damage:

1. Presence, growth, proliferation, spread or activity of "fungus", wet rot, or dry rot or bacteria. But if "fungus", wet rot, or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss caused by that "specified cause of loss". This exclusion does not apply when "fungus", wet rot or dry rot, or bacteria results from fire or lightning;

2. Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet rot or dry rot, or bacteria; or

3. The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet rot or dry rot, or bacteria.

B. The following are added to the Definitions:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

"Specified cause of loss" means: fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; water damage.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement may be attached to a coverage form or an endorsement with a different definition from the listed definitions. If there is a different definition, that definition does not apply to this endorsement.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**HP FU 01 01 15**                                                                                    Page **1** of 1

## OCCURRENCE LIMIT OF LIABILITY

| Named Insured | Endorsement Number |
|---|---|
| **Bayshore Recycling Corporation; ETAL** | |

| Policy Symbol | Policy Number | Policy Period | Endorsement Date |
|---|---|---|---|
| | **73PRX19A104** | **6/1/2019 To 6/1/2020** | |

| Issued By (Name of Insurance Company) |
|---|
| **Hallmark Specialty Insurance Company** |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**ALL COVERAGE PARTS**

It is understood and agreed that the following special terms and conditions apply to this policy:

1.      In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

   a.      The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

   b.      The Total stated value for each scheduled item of property insured at the location which had the loss as shown    on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

   c.      The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

2.      Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3.      The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours. When filing a proof of loss the insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to occur at any covered location.

## POLLUTION EXCLUSION AND POLLUTANT CLEANUP AND REMOVAL COVERAGE EXTENSION ENDORSEMENT

| Named Insured<br>**Bayshore Recycling Corporation; ETAL** | | Endorsement Number |
|---|---|---|
| Policy Symbol | Policy Number<br>**73PRX19A104** | Policy Period<br>**6/1/2019 To  6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company)<br>**Hallmark Specialty Insurance Company** | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**

The following provisions and exclusions apply to the policy; supersede any term, provision or endorsement to the contrary in this policy; and apply notwithstanding any such term, provision or endorsement in this policy or in any underlying, contributing or followed policy to the contrary:

1. **A.2. Property Not Covered** is amended to include the following:

   Covered Property does not include:

   Land, water, growing crops or lawns.

2. **B.1. Exclusions** is amended to include the following:

   We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **Pollution**

   Discharge, dispersal, seepage, migration, release or escape of "pollutants". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in fire, we will pay for the direct loss or damage caused by that fire if the fire would be covered under this Coverage Form.

3. **Debris Removal**

   If any Debris Removal coverage is included in this policy, this policy is amended as follows:

   Debris Removal coverage does not apply to costs to:

   **(a)** Extract "pollutants" from land or water; or
   **(b)** Remove, restore or replace polluted land or water.

4. **Time Element**

   In the event that Time Element coverage is provided elsewhere in this policy or endorsed hereto, the term "period of restoration", "period of recovery", "period of interruption" or any similar term which defines the time period for which a loss is covered shall not include any increased periods of time due to the enforcement of laws regulating the prevention, control, repair, clean-up or restoration of environmental damage.

5.  **Pollutant Cleanup and Removal**

The following Coverage Extension applies to this policy and replaces any other Pollutant Cleanup and Removal additional coverage or coverage extension contained elsewhere in this policy:
We will pay your reasonable and necessary expense to extract "pollutants" from land or water if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results form a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Coverage Extension does not apply to costs for tests for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Coverage Extension is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during the policy period or during each separate 12-month period of this policy if this policy is for a term greater than 12 months.

6.  **Definition**

The following definition is added to this policy and replaces any other definition of "pollutants" contained elsewhere in this policy:

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

# TOTAL EXCLUSION - ELECTRONIC PROPERTY AND VIRUS

| Named Insured **Bayshore Recycling Corporation; ETAL** | | Endorsement Number |
|---|---|---|
| Policy Symbol | Policy Number **73PRX19A104** | Policy Period **6/1/2019 To 6/1/2020** | Endorsement Date |
| Issued By (Name of Insurance Company) **Hallmark Specialty Insurance Company** | | |

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under all Coverage Parts.

A.  It is agreed the following is not Covered Property:

Electronic Data

Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

B.  It is agreed the following are not Covered Causes of Loss:

1.  Virus - A virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

2.  Computer Manipulation - Loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by any entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

C.  The following item is added as an EXCLUSION:

COST TO REPLACE ELECTRONIC DATA — The cost to replace or restore information which exists as electronic data

D.  The following is added to the Business Income (and Extra Expense) Coverage Form, if it applies: ADDITIONAL LIMITATION — Interruption of Computer Operations

Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data.

Coverage of Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data.

**ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.**

**HALLMARK SPECIALTY INSURANCE COMPANY**

**In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.**

**President**                         **Secretary**