EXHIBIT B

# Commercial Property – Claim Reporting and Claim Questions

## Options for Reporting a New Claim

- *Telephone :*        *AIG CallOne*[sm]**:** 800-931-9546 24/7, 365 days/year

- *Email :*        newloss-usproperty&energy@aig.com

- *Fax :*        855-805-4125

- *Internet :*        Complete a Quick Claim form at ***http://www.lexingtoninsurance.com/claims***

- *Mail :*        P.O. Box 2310, Alpharetta, Georgia 30023-2310

Such written notice shall include the Named Insured as shown on the Declarations, the policy number, the date of loss and a brief description of the potential claim.

## Options for Questions Regarding Existing/Previously Reported Claims

For questions regarding existing claims, contact should be made directly with the assigned AIG Examiner via direct dial or email. *However, in the instance where an AIG Examiner is unknown, please use the following methods to obtain the information:*

- **Claim Service Center***:* **877-873-9972**

- **AIG CallOne: 800-931-9546**

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation or by calling 1-800-706-3102.

| 91222 (9/16) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |

Risk Specialists Companies
Insurance Agency, Inc.
d/b/a RSCIA in NH, UT & VT
CA Surplus Lines License #: 0G29322
99 High Street
Boston, MA 02110
www.aig.com

# LEXINGTON INSURANCE COMPANY
### ADMINSTRATIVE OFFICES: 99 HIGH STREET, BOSTON, MA 02110
### (hereinafter called the "Company")

### COMMERCIAL PROPERTY POLICY
### DECLARATIONS

**Policy Number:   011144836**                    **Renewal of:   011144575**

*Item 1.*       **Named Insured and Address:**

        **BAYSHORE RECYCLING CORP.**
        **P.O. Box 290, 75 Crows Mill Road**
        **Keasbey, NJ 08832**

        The Named Insured shall mean the First Named Insured and its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be incorporated, constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is legally obligated to insure.

*Item 2.*       **Mortgageholders, Loss Payees and Additional Insureds:** Per Certificates on file with the Company or any endorsement attached to and forming a part of this **Policy**.

*Item 3.*       **Policy Period:**

        From: **06/01/2019**            To: **06/01/2020**

        (At 12:01 A.M. Standard Time at the **Insured Location**.)

*Item 4.*       **Coverage Territory:**

        The United States, its territories and possessions and Puerto Rico, including their respective coastal waters.

*Item 5.*       **Premium:**

        **A.  Total Premium**: **$178,378**

        **B.  Terrorism Premium: Not Covered**  (not included within the Total Premium)

        **C.  Minimum Earned Premium**: **35.00%** of Total Premium

        **100% Layer Premium:**

            $178,378  (Premium figures do not include surplus lines taxes and fees)

The Premium above does not include a charge applicable to coverage as respects the Terrorism Risk Insurance Program Reauthorization Act, as the Insured has not purchased this cover.

**Lexington Premium:**

$89,189 (Premium figures do not include surplus lines taxes and fees)

The Premium above does not include a charge applicable to coverage as respects the Terrorism Risk Insurance Program Reauthorization Act, as the Insured has not purchased this cover.

*Item 6.*    **Policy Limit: $5,000,000 is the maximum liability in any** one **Occurrence** as a result of all covered loss or damage regardless of the number of **Insured Locations**, coverages or **Covered Causes of Loss** under this **Policy**.

**Participation:**

50.00% being $2,500,000 part of $5,000,000 per **Occurrence** and in the primary

**A.**  **Sublimits of Liability:**

The Sublimits of Liability stated in this **Policy** are part of and not in addition to the **Policy Limit** and any Sublimits of Liability shown in Item **6.A.** below. The Sublimits of Liability are: (1) the maximum amount the Company will pay for all covered loss or damage arising out of the specific perils or coverages and/or (2) the maximum number of days for a specific coverage, regardless of the number of **Insured Locations**, coverages or **Covered Causes of Loss** under this **Policy**.

The following Sublimits of Liability are part of and not in addition to the Program Limit of Liability. They represent 100% of the coverage purchased by the Insured for the Program set forth above and the Company's share of each Sublimit of Liability shall be determined by applying the Participation shown above.

The Sublimits of Liability stated in this **Policy** are per **Occurrence** unless otherwise indicated. Regardless of the number of **Occurrences**, any Annual Aggregate in this **Policy** is the maximum amount payable for all covered loss or damage for the applicable coverage or **Covered Cause of Loss**.

*If the words, NOT COVERED are shown instead of a limit, Sublimit amount, or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or **Covered Cause of Loss**, then no coverage is provided for that coverage or **Covered Cause of Loss**.*

**1.**  **Sublimits Applicable to Specified Covered Causes of Loss –** Each of these Sublimits is part of and not in addition to the **Policy Limit**.

    **a.**  **Earth Movement**:

        **i.**  **$5,000,000:** Annual Aggregate for all covered loss or damage arising out of **Earth Movement**

| PR8370 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 2 of 8 |
|---|---|---|

**ii.** Subject to **A.1.a.i.** above, the Annual Aggregate for all covered loss or damage arising out of **Earth Movement** in California, Alaska, Hawaii and Puerto Rico combined: **Not Covered**

**iii.** Subject to **A.1.a.i.** above, the Annual Aggregate for all covered loss or damage arising out of **Earth Movement** in the **Pacific Northwest Earthquake Zone: Not Covered**

**iv.** Subject to **A.1.a.i.** above, the Annual Aggregate for all covered loss or damage arising out of **Earth Movement** in the **New Madrid Earthquake Zone:  Not Covered**

**b.** Flood:

**i.** **$5,000,000:** Annual Aggregate for all covered loss or damage arising out of **Flood**

**ii.** Subject to **A.1.b.i.** above, the Annual Aggregate for all covered loss or damage arising out of **Flood** in a Special Flood Hazard Area (SFHA) as defined by the Federal Emergency Management Agency (FEMA) at the time of the loss: **$5,000,000**

If the property that sustains physical loss or damage due to **Flood** is partially in such Special Flood Hazard Area (SFHA), then the entire property shall be deemed to be in that Special Flood Hazard Area (SFHA) and the loss or damage will be subject to the Sublimit stated **A.1.b.ii.** above.

**c.** Named Storm:

**i.** **$5,000,000** for all covered loss or damage arising out of **Named Storm**

**ii.** Subject to **A.1.c.i.** above, for all covered loss or damage arising out of **Named Storm** in a **Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands): Not Covered**

**iii.** Subject to **A.1.c.i.** above, for all covered loss or damage arising out of **Named Storm** in a **Tier 1 High Hazard Wind Zone (Consisting of Virginia to Maine): Not Covered**

**iv.** Subject to **A.1.c.i.** above, for all covered loss or damage arising out of **Named Storm** in a **Tier 1 High Hazard Wind Zone (Florida): Not Covered**

**v.** Subject to **A.1.c.i.**  above, for all covered loss or damage arising out of **Named Storm** in a **Tier 2 High Hazard Wind Zone: Not Covered**

For the purpose of the above Sublimits of Liability, **Named Storm** includes, but is not limited to, loss or damage from wind, **Hail**, lightning, tornado, rain or water (whether driven by wind or not), **Flood**, or any wind driven objects or debris.

In the event covered loss or damage by **Flood** occurs concurrently or in any sequence with a **Named Storm**, the maximum amount the Company will pay

| PR8370 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 3 of 8 |
|---|---|---|

per **Occurrence** for all such loss or damage by **Flood** shall be the applicable Sublimits of Liability for **Flood** as shown in Item **6.A.1.b.** above, but in no event shall the Company pay more than the maximum applicable **Named Storm** Sublimit.  However, if **Flood** is not covered, the maximum amount the Company will pay per **Occurrence** for all such loss or damage arising out of **Named Storm** shall exclude loss or damage by **Flood**.

   d.   **Equipment Breakdown:Not Covered** for all covered loss or damage from **Equipment Breakdown**

2.  **Sublimits Applicable to Additional Time Element Coverages -** Each of these Sublimits is part of, and not in addition to the **Policy Limit** and any Sublimits applicable to Specified Covered Causes of Loss shown in Item **6.A.1** above.

|   |   |   |
|---|---|---|
| a. | **Contingent Time Element:** | **Not Covered**, except as respects **Earth Movement, Flood,** and **Named Storm,** where the Sublimit is **Not Covered** |
| b. | **Extended Period of Indemnity:** | **180** days |
| c. | **Extra Expense:** | **$100,000** |
| d. | **Ingress & Egress:** | **30** days, subject to a maximum Sublimit of **$1,000,000** and a distance limitation of **1** mile |
| e. | **Interruption by Civil or Military Authority:** | **30** days, subject to a maximum Sublimit of **$1,000,000** and a distance limitation of **1** mile |
| f. | **Rental Value:** | **Included** |
| g. | **Royalties:** | **Not Covered** |
| h. | **Additional Sublimits:** | |

3.  **Sublimits Applicable to Additional Coverages -** Each of these Sublimits is part of, and not in addition to the **Policy Limit** and any Sublimits applicable to Specified Covered Causes of Loss shown in Item **6.A.1.** above.

|   |   |   |
|---|---|---|
| a. | **Accounts Receivable:** | **$1,000,000** |
| b. | **Debris Removal:** | **25.00%** of covered direct physical loss or damage payable for all Insured Property, subject to a maximum Sublimit of **$1,000,000** |
| c. | **Demolition And Increased Cost of Construction:** | |
|    | **Demolition Coverage A:** | **Included** |
|    | **Demolition Coverage B:** | **$500,000** |
|    | **Demolition Coverage C:** | **$500,000** |

| | | |
|---|---|---|
| d. | Electronic Data and Media: | $100,000 |
| e. | Errors or Omissions: | $100,000, except as respects **Earth Movement, Flood,** and **Named Storm,** where the Sublimit is **$100,000** |
| f. | Expediting Expenses: | **Not Covered** |
| g. | Fine Arts: | **$250,000** per item subject to a maximum Sublimit of **$250,000** per **Occurrence** |
| h. | Fire Brigade Charges And Extinguishing Expenses: | $250,000 |
| i. | Leasehold Interest (including Leasehold Improvements & Betterments): | $250,000 |
| j. | Limited Pollution Coverage: | $100,000 Annual Aggregate |
| k. | Miscellaneous Unnamed Locations: | **$500,000**, except as respects **Earth Movement, Flood,** and **Named Storm,** where the Sublimit is **$500,000** |
| l. | New Construction and Additions: | **Not Covered,** except as respects **Earth Movement, Flood,** and **Named Storm,** where the Sublimit is **Not Covered.** In no event will the Company pay more than **Not Covered** for **Soft Costs.** |
| m. | Newly Acquired Property: | **$1,000,000,** except as respects **Earth Movement, Flood,** and **Named Storm,** where the Sublimit is **$1,000,000** |
| n. | Outdoor Property: | $50,000 |
| o. | Pairs or Sets: | **Not Covered** |
| p. | Professional Fees: | $250,000 |
| q. | Property Removed from Insured Locations: | $500,000 |
| r. | Service Interruption: | $500,000 |
| s. | Spoilage: | **Not Covered** |
| t. | Transit: | **$100,000** per conveyance subject |

          to a maximum Sublimit of **$100,000** per **Occurrence**

**u.**    **Valuable Papers and Records**:    **$1,000,000**

**v.**    **Additional Sublimits**:

Reward Reimbursement: $25,000

Leased or Rented Equipment: $100,000, maximum $25,000 per item

Lock and Key Replacement: $25,000

**4. Other Sublimits:** Each of these Sublimits is part of, and not in addition to the **Policy Limit** and any Sublimits applicable to Specified Covered Causes of Loss shown in Item **6.A.1** above.

**a.**    **Contractor's Equipment:**    **Not Covered** for physical loss or damage to contractor's equipment per item subject to a maximum Sublimit of **Not Covered** per **Occurrence**

**b.**    **Ordinary Payroll**    **30** days

**B. Maximum Amount Payable**: In the event of covered loss or damage hereunder, the liability of the Company shall be limited to the least of the following:

1. The actual adjusted amount of covered loss or damage, less applicable Deductible(s);

2. As respects each **Insured Location**, one-hundred (100%) percent of the total combined stated values for all categories of Insured Property and Time Element coverages shown for that **Insured Location** on the latest Statement of Values or other documentation, on file with the Company prior to the time of the loss or damage; or

3. The **Policy Limit** or applicable Sublimit(s) of Liability shown in Item 6.A. or elsewhere in this **Policy**.

*Item 7*.    **Qualifying Periods:** In accordance with the **Policy**, the following Qualifying Periods apply to these Additional Coverages:

**A.**    **Ingress & Egress**:    N/A hours

**B.**    **Interruption by Civil or Military Authority**:    N/A hours

**C.**    **Service Interruption**:    24 hours

*Item 8*.    **Deductibles**:  The Deductibles shown below apply per **Occurrence** unless otherwise stated.

**A.** Policy Deductible: **$100,000** applicable to all covered loss or damage unless otherwise stated below or in this **Policy**.

| PR8370 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 6 of 8 |
|---|---|---|

**B.** **Earth Movement**:

    **1.** **$100,000** for all covered loss or damage arising out of **Earth Movement** (other than as set forth in this Earth Movement Deductible section).

    **2.** Other Deductibles applicable to **Earth Movement**: Not Applicable

**C.** **Flood**:

    **1.** **$100,000** for all covered loss or damage arising out of **Flood** (other than as set forth in this Flood Deductible section).

    **2.** Other Deductibles applicable to **Flood**: With respect to locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding, as defined by the Federal Emergency Management Agency (if these locations are not excluded elsewhere in this policy with respect to the peril of flood), the deductible shall be **$500,000** per Building, **$500,000** per Contents per building, **$100,000** Business Interruption per Occurrence

**D.** **Named Storm**

    **1.** **N/A%** of Total Insurable Values at the time of the loss at each **Insured Location** involved in the loss or damage, subject to a minimum of **$100,000** any one **Occurrence** for all covered loss or damage arising out of **Named Storm** (other than as set forth in this Named Storm Deductible section).

    **2.** Other Deductibles applicable to **Named Storm: Not applicable**

**E.** **High Hazard Hail**:

    **1.** **Not Covered** of Total Insurable Values at the time of the loss at each **Insured Location** involved in the loss or damage, subject to a minimum of **Not Covered** any one **Occurrence** for all covered loss or damage arising out of **Hail** in **Hail Zone 1**.

    **2.** **Not Covered** of Total Insurable Values at the time of the loss at each **Insured Location** involved in the loss or damage, subject to a minimum of **Not Covered** any one **Occurrence** for all covered loss or damage arising out of **Hail** in **Hail Zone 2**.

    **3.** Other Deductibles applicable to **Hail**:

**F.** **Equipment Breakdown**:

    **1.** **Property Damage and Time Element Combined Deductible**:

        **Not Covered** for all covered loss or damage from **Equipment Breakdown**

    **2.** Other Deductibles applicable to **Equipment Breakdown**:

**G.** **Additional Deductible(s)**:

In each case of loss or damage covered by this **Policy**, the Company shall not be liable unless the Insured sustains covered loss or damage in a single **Occurrence** greater than any

| PR8370 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 7 of 8 |
|---|---|---|

applicable Deductible described in this **Policy** and then only for the amount in excess of such Deductible.

If an amount is not shown for any Deductible, then that Deductible shall not apply.  Also, if an amount is not shown with respect to a part of a Deductible, then such part shall not apply, but the rest of the Deductible shall apply.  When this **Policy** covers more than one **Insured Location**, the Deductible shall apply against the total loss or damage covered by this **Policy** in any one **Occurrence**, unless otherwise stated herein.

If two or more Deductible amounts provided in this **Policy** apply to a single **Occurrence**, the total to be deducted shall not exceed the largest applicable Deductible unless otherwise stated in this **Policy**.  However, if a separate Property Damage Deductible and a separate Time Element Deductible apply to loss or damage in a single **Occurrence**, the Company shall apply both Deductibles.  For any coverage for which there is a waiting period or a time period before coverage commences, such period shall apply in addition to any applicable Deductible(s) set forth in this **Policy**.

For avoidance of doubt, with respect to the largest applicable Deductible, if covered loss or damage by **Flood** occurs concurrently or in any sequence with a **Named Storm**, then the Company shall apply the **Flood** Deductible set forth in Item **8.C.** or the **Named Storm** Deductible set forth in Item **8.D.**, whichever is greater.

*Item 9.*    **Assigned Adjuster:**

        Adjuster Name:

        Adjusting Firm:

*Item 10.*    **Forms Attached:**  See attached Forms Schedule

_____
**Authorized Representative**

# FORMS SCHEDULE

Named Insured: **Bayshore Recycling Corp.**

Policy No: **011144836**                               Effective Date: **06/01/2019**

| Form Number | Edition Date | Endorsement Number | Title |
|---|---|---|---|
| 1255951 | 03/17 | 001 | FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT |
| PR8543 | 01/18 | 002 | TERRORISM COVERAGE ENDORSEMENT (EXCLUDING BIOLOGICAL AND/OR CHEMICAL TERRORISM) |
| PR4266 | 12/14 | 003 | TERRORISM EXCLUSION ENDORSEMENT |
| NMA2918 | 08/01 | 004 | WAR AND TERRORISM EXCLUSION ENDORSEMENT |
| NMA2914 | 01/01 | 005 | ELECTRONIC DATA ENDORSEMENT A |
| PR4419 | 10/15 | 006 | EQUIPMENT BREAKDOWN EXCLUSION ENDORSEMENT |
| PR4259 | 07/14 | 007 | ANTI-STACKING ENDORSEMENT |
| PR8530 | 08/09 | 008 | Mold/Fungus Exclusion (with direct result of covered loss exception) |
| MANUSCRIPT | | 009 | GENERAL CHANGE ENDORSEMENT |



# LEXINGTON INSURANCE COMPANY
# COMMERCIAL PROPERTY POLICY

## TABLE OF CONTENTS

This Table of Contents is being provided for convenience only and shall not in any way affect the provisions to which they relate.

SECTION I – COVERED CAUSES OF LOSS.................................................................1
  A.  INSURING AGREEMENT ...................................................................................1
  B.  PERILS EXCLUDED .........................................................................................1
      1.  Concurrent Causation Exclusions .................................................1
      2.  Exclusions (Without Concurrent Causation Wording) ........................................3
      3.  Concurrent Causation if Earth Movement, Flood or Named Storm is not covered ...4
SECTION II - INSURED PROPERTY ........................................................................4
  A.  INSURED PROPERTY ......................................................................................4
      1.  Real and Personal Property ........................................................4
      2.  Improvements and betterments ...................................................4
      3.  Personal property of officers and employees ...................................4
      4.  Personal property of others in the care, custody and control of the Insured .........4
      5.  Contractor's and vendor's interest ...............................................4
  B.  PROPERTY EXCLUDED.....................................................................................4
      1.  New buildings, structures and additions .......................................4
      2.  Materials, equipment and supplies for new buildings ........................4
      3.  Currency, money, notes, securities, stamps, furs, jewelry, etc. ..........................5
      4.  Land, land values, etc.............................................................5
      5.  Water ................................................................................5
      6.  Outdoor Property ...................................................................5
      7.  Standing timber, growing crops, or animals ...................................5
      8.  Vehicles licensed for highway use, watercraft, aircraft, etc. .............................5
      9.  Property of Insured sold under conditional sale, etc.. .......................................5
      10. Property in transit .................................................................5
      11. Underground mines, etc. .........................................................5
      12. Offshore property, etc. ...........................................................5
      13. Satellites and spacecraft .........................................................5
      14. Bridges, tunnels, reservoirs and canals .......................................5
      15. Bulkheads, pilings, docks, piers and wharves .................................5
      16. Transmission and distributions lines...........................................5
      17. Personal property in the care, custody, and control of Insured (Insured acting as a warehouse operator, etc.)............................................5
      18. Electronic Data and Media .......................................................5
      19. Fine Arts ...........................................................................5
SECTION III – VALUATION....................................................................................5
  A.  All property other than property described in B – N below ...........................5
  B.  Stock in process .............................................................................6

   C.  Finished Goods .................................................................................. 6
   D.  Raw Materials ................................................................................... 6
   E.  Valuable Papers and Records........................................................... 6
   F.  Electronic Data and Media ............................................................... 6
   G.  Jigs and fixtures, dies, small tools, etc.............................................. 6
   H.  Leasehold improvements and betterments.......................................... 6
   I.  Fine Arts ......................................................................................... 7
   J.  Accounts Receivable........................................................................ 7
   K.  Property for Sale ............................................................................. 7
   L.  Property in Transit........................................................................... 7
   M.  Contractor's equipment ................................................................... 8
   N.  Trees, shrubs, plants and lawns ....................................................... 8
SECTION IV – TIME ELEMENT COVERAGE GROSS EARNINGS ............................... 8
   A.  ACTUAL LOSS OF INCOME SUSTAINED .......................................... 8
   B.  EXPENSE TO REDUCE LOSS ....................................................... 10
   C.  ADDITIONAL TIME ELEMENT COVERAGES..................................... 10
       1.  CONTINGENT TIME ELEMENT.................................................. 10
       2.  EXTENDED PERIOD OF INDEMNITY .......................................... 10
       3.  EXTRA EXPENSE .................................................................. 11
       4.  INGRESS & EGRESS.............................................................. 11
       5.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY .................... 11
       6.  RENTAL VALUE..................................................................... 12
       7.  ROYALTIES .......................................................................... 12
   D.  ADDITIONAL (TIME ELEMENT) EXCLUSIONS ----------------------------- 12
       1.  IDLE PERIODS ...................................................................... 12
       2.  REMOTE LOSS ...................................................................... 12
       3.  FINISHED GOODS .................................................................. 12
       4.  TRANSIT .............................................................................. 12
       5.  CONTRACTOR'S OR VENDOR'S INTERESTS .............................. 13
SECTION V – ADDITIONAL COVERAGES ............................................................. 13
   A.  ACCOUNTS RECEIVABLE .............................................................. 13
   B.  DEBRIS REMOVAL ........................................................................ 13
   C.  DEMOLITION AND INCREASED COST OF CONSTRUCTION ................ 13
   D.  ELECTRONIC DATA AND MEDIA ..................................................... 14
   E.  ERRORS OR OMISSIONS ............................................................... 14
   F.  EXPEDITING EXPENSES ................................................................ 15
   G.  FINE ARTS.................................................................................... 15
   H.  FIRE BRIGADE CHARGES AND EXTINGUISING EXPENSES ................ 15
   I.  LEASEHOLD IMPROVEMENTS & BETTERMENTS ............................... 15
   J.  LEASEHOLD INTEREST ................................................................. 15
   K.  LIMITED POLLUTION COVERAGE..................................................... 16
   L.  MISCELLANEOUS UNNAMED LOCATIONS ....................................... 16
   M.  NEW CONSTRUCTION AND ADDITIONS .......................................... 16
   N.  NEWLY ACQUIRED PROPERTY....................................................... 16
   O.  OUTDOOR PROPERTY .................................................................. 17
   P.  PAIRS OR SETS ........................................................................... 17

Q. PROFESSIONAL FEES ........................................................................................ 17
R. PROPERTY REMOVED FROM INSURED LOCATIONS............................................. 17
S. SERVICE INTERRUPTION .................................................................................... 17
T. SPOILAGE ......................................................................................................... 18
U. TRANSIT ........................................................................................................... 18
V. VALUABLE PAPERS AND RECORDS .................................................................... 19
SECTION VI – CONDITIONS ........................................................................................ 19
A. ABANDONMENT ................................................................................................. 19
B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED ........................................ 19
C. APPRAISAL........................................................................................................ 19
D. ASSIGNED ADJUSTER ....................................................................................... 20
E. ASSIGNMENT .................................................................................................... 20
F. BRANDS AND LABELS ........................................................................................ 20
G. CANCELLATION ................................................................................................. 20
H. CONTROL OF DAMAGED MERCHANDISE............................................................. 20
I. CURRENCY ........................................................................................................ 21
J. DIVISIBLE CONTRACT ....................................................................................... 21
K. ECONOMIC AND TRADE SANCTIONS .................................................................. 21
L. INCREASE IN HAZARD........................................................................................ 21
M. INSPECTION AND AUDIT .................................................................................... 21
N. MISREPRESENTATION AND FRAUD .................................................................... 21
O. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE ................... 21
P. PROTECTION AND PRESERVATION OF PROPERTY ............................................... 22
Q. REINSTATEMENT OF LIMITS............................................................................... 22
R. REQUIREMENTS IN CASE OF LOSS..................................................................... 22
S. SALVAGE AND RECOVERIES ............................................................................. 23
T. SERVICE OF SUIT .............................................................................................. 23
U. SETTLEMENT OF CLAIMS .................................................................................. 23
V. SUBMISSION OF VALUES .................................................................................. 23
W. SUBROGATION.................................................................................................. 24
X. SUIT AGAINST COMPANY .................................................................................. 24
Y. SUSPENSION .................................................................................................... 24
Z. TITLES OF PARAGRAPHS................................................................................... 24
AA. VACANCY ......................................................................................................... 24
SECTION VII – POLICY DEFINITIONS .......................................................................... 25
A. Accident............................................................................................................ 25
B. Aircraft or Vehicle Impact ................................................................................... 25
C. Average Daily Value (ADV) ................................................................................. 25
D. Cloud Computing Service.................................................................................... 25
E. Collapse ........................................................................................................... 25
F. Corruption, Erasure or Alteration ........................................................................ 26
G. Coverage Territory.............................................................................................. 26
H. Covered Cause of Loss ...................................................................................... 26
I. Covered Equipment ............................................................................................ 26
J. Defined Peril...................................................................................................... 26
K. Denial of Service Attack ..................................................................................... 26

L. Earth Movement ................................................................................................ 26
M. Earthquake Zones ............................................................................................. 27
N. Electronic Data and Media ................................................................................ 27
O. Equipment Breakdown ...................................................................................... 27
P. Fine Arts ............................................................................................................ 28
Q. Finished Goods ................................................................................................. 28
R. Flood ................................................................................................................. 28
S. Fungus, Mold or Spore ..................................................................................... 28
T. Hail .................................................................................................................... 28
U. High Hazard Hail Zones .................................................................................... 28
V. Insured Location(s) ........................................................................................... 30
W. Leakage From Fire Protection Equipment ........................................................ 30
X. Magnetic Damage to Electronic Data and Media .............................................. 31
Y. Malicious Code .................................................................................................. 31
Z. Miscellaneous Unnamed Location(s) ................................................................ 31
AA. Named Storm .................................................................................................... 31
BB. Occurrence ........................................................................................................ 31
CC. Outdoor Property .............................................................................................. 31
DD. Perishable Goods .............................................................................................. 31
EE. Policy ................................................................................................................. 31
FF. Policy Limit ........................................................................................................ 31
GG. Pollutants or Contaminants .............................................................................. 32
HH. Raw Materials ................................................................................................... 32
II. Riot, Strike or Civil Commotion ......................................................................... 32
JJ. Smoke ............................................................................................................... 32
KK. Soft Costs .......................................................................................................... 32
LL. Terrorism ........................................................................................................... 32
MM. Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands) ................................................................... 33
NN. Tier 1 High Hazard Wind Zone (Consisting of Virginia to Maine) ..................... 33
OO. Tier 1 High Hazard Wind Zone (Florida) ........................................................... 34
PP. Tier 2 High Hazard Wind Zone .......................................................................... 34
QQ. Unauthorized Access ........................................................................................ 34
RR. Unauthorized Use .............................................................................................. 34
SS. Valuable Papers and Records ........................................................................... 34
TT. Vandalism and Malicious Mischief .................................................................... 35
UU. Windstorm or Hail ............................................................................................. 35



**LEXINGTON INSURANCE COMPANY**
**ADMINISTRATIVE OFFICES: 99 HIGH STREET, BOSTON, MA 02110**
(hereinafter called the "Company")

## COMMERCIAL PROPERTY POLICY

Various provisions in this **Policy** restrict coverage. Read the entire **Policy** carefully to determine rights, duties and what is and is not covered.

The word "Insured" means the Named Insured shown in Item **1.** of the Policy Declarations and any person or entity qualifying as a Named Insured. The word "Company" means the Insurer providing coverage under this **Policy**. Words or phrases which appear in boldface type have special meanings as defined in the POLICY DEFINITIONS Section and elsewhere in this **Policy**.

**SECTION I – COVERED CAUSES OF LOSS**

A.  INSURING AGREEMENT: Subject to all of the terms and conditions of this **Policy**, the Company insures against all risks of direct physical loss or damage to Insured Property from a **Covered Cause of Loss**.

B.  PERILS EXCLUDED:

   1.  Except as otherwise provided under the Additional Coverages and Additional Time Element Coverages (and in such event, only to the extent provided therein), the Company does not insure for loss or damage caused directly or indirectly by any of the following perils. Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   a.  Nuclear reaction or nuclear radiation or radioactive contamination from any cause, all whether direct or indirect, controlled or uncontrolled, proximate or remote, or is contributed to or aggravated by a **Covered Cause of Loss**. However:

      i.  If fire and sprinkler leakage not otherwise excluded ensues, the Company shall be liable for direct physical loss or damage by such ensuing fire and sprinkler leakage, but not including any loss or damage due to nuclear reaction, nuclear radiation or radioactive contamination; and

      ii.  This exclusion shall not apply to direct physical loss or damage, not otherwise excluded, caused by sudden and accidental radioactive contamination, including resultant radiation damage, from material used or stored or from processes conducted on the **Insured Location**, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the **Insured Locations**.

   b.  i.  War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

      (1)  By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 35 |

(2) By military, naval or air forces; or

(3) By an agent of any such government, power, authority or force;

ii. Any weapon employing atomic fission, fusion or radioactive force, or any weapon that disperses radioactive material or a directed-energy or electromagnetic weapon, whether in time of peace or war, whether or not its discharge was accidental; or

iii. Insurrection, rebellion, revolution, civil war, usurped power, seizure, destruction or any action taken by governmental authority in hindering, combating or defending against any action described in this Subparagraph b;

Including any consequence of Subparagraphs b.i., b.ii. or b.iii. above of this exclusion.

c. Loss or damage caused directly or indirectly by **Terrorism**, whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event. Such **Terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **Terrorism**.

d. Any fraudulent or dishonest act or acts committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured, or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured, or others listed above, without the knowledge of any of the Insured's proprietors, partners, directors, trustees or officers is covered.

e. Removal of asbestos material, except this exclusion does not apply to asbestos material when such material is part of Insured Property which sustains direct physical loss or damage caused by a **Defined Peril** at the **Insured Location**.

f. The actual, alleged or threatened release, discharge, escape or dispersal of **Pollutants or Contaminants**, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any **Covered Cause of Loss** under this **Policy**.

However, this exclusion shall not apply to direct physical loss or damage to Insured Property from **Pollutants or Contaminants** caused by a **Defined Peril** at the **Insured Location**, including the cost to clean-up **Pollutants or Contaminants** from Insured Property at the **Insured Location**, resulting from such loss or damage. No coverage is provided for testing or monitoring for **Pollutants or Contaminants**. For the purpose of the exception to this exclusion only, **Pollutants or Contaminants** do not include radioactive contaminants.

g. Lack of:

i. Incoming electricity, gas, fuel, steam, water or refrigeration;

ii. **Cloud Computing Service** or data, voice or video service; or

iii. Outgoing sewerage.

h. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 2 of 35 |
|---|---|---|

    i. Any functioning or malfunctioning or lack of:

        i. The internet or similar facility; or

        ii. Any intranet or private network, computer system, computer or computing device or similar facility;

    However, if direct physical loss or damage to Insured Property at an **Insured Location** from a **Defined Peril** ensues, this **Policy** shall cover such ensuing loss or damage.

    j. Error or omission in machine programming or instructions of **Electronic Data and Media**, including, loss attributable to program design constraints, networking compatibility and original business software; all unless direct physical loss or damage not otherwise excluded by this **Policy** ensues, in which event, the Company shall cover only such ensuing loss or damage.

    k. Loss or damage due to any **Unauthorized Access, Unauthorized Use, Malicious Code, Magnetic Damage to Electronic Data and Media, Denial of Service Attack** or other similar peril affecting **Electronic Data and Media** or the access to or use of computer hardware, software or other components thereof; all unless direct physical loss or damage not otherwise excluded by this **Policy** ensues, in which event, the Company shall cover only such ensuing loss or damage.

    l. **Fungus, Mold or Spore;** or any spores or toxins created or produced by or emanating from such **Fungus, Mold or Spore**.

    m. **Equipment Breakdown** of: (1) vehicles, draglines or excavation or construction equipment; or (2) any equipment on the foregoing.

    n. Loss or damage arising out of any **Covered Cause of Loss**, Additional Coverages or Additional Time Element Coverages for which the words NOT COVERED or for which a specified amount or number of days is not shown in the Policy Declarations.

2. The Company does not insure for loss or damage caused by any of the following:

    a. Delay, loss of market or loss of use.

    b. Indirect, remote or consequential loss or damage.

    c. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

    d. Voluntary parting with title or possession of any property, including voluntary parting which is the result of larceny, false pretenses or any other similar act.

    e. Faulty workmanship, material, construction, installation or design from any cause. However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, this **Policy** will cover only such ensuing loss or damage.

    f. Processing, fabricating, testing, packaging or other similar operations as part of manufacturing or processing of stock, materials or **Finished Goods**, including any voluntary or involuntary recall of any product for any reason; all unless direct physical loss or damage not otherwise excluded by this **Policy** ensues, in which event this **Policy** will cover only such ensuing loss or damage.

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 3 of 35 |
|---|---|---|

g. Deterioration; depletion; rust; corrosion; erosion; wet or dry rot; decay; evaporation; leakage; wear and tear; animal, insect or vermin damage; inherent vice or latent defect; shrinkage or change in color, flavor, texture or finish; damages from extremes or changes of temperature; damage from changes in relative humidity; all whether atmospheric or not.  However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, this **Policy** will cover only such ensuing loss or damage.

h. Settling, cracking, shrinking, bulging or expansion of pavements, foundations, walls, floors or ceilings.  However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, this **Policy** will cover only such ensuing loss or damage.

i. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test to any type of electrical equipment.  However, if direct physical loss or damage not otherwise excluded by this **Policy** ensues, this **Policy** will cover only such ensuing loss or damage.

3. If **Earth Movement**, **Flood** or **Named Storm** is not covered, then any cause or event occurring concurrently or in any sequence with such peril(s) is also not covered, except for direct physical loss or damage to Insured Property caused by fire, sprinkler leakage or explosion following **Earth Movement**, **Flood** or **Named Storm**, whichever is applicable.

Direct physical loss or damage to Insured Property caused by fire, sprinkler leakage or explosion shall not be considered loss or damage by **Earth Movement**, **Flood** or **Named Storm**, whichever is applicable, within the terms and conditions of this **Policy**.

## SECTION II – INSURED PROPERTY

A. INSURED PROPERTY:  Unless otherwise excluded, this **Policy** covers the following property while on the **Insured Locations** and within 1,000 feet thereof:

1. Real property and personal property in which the Insured has an insurable interest;

2. Improvements and betterments to buildings or structures in which the Insured has an insurable interest.  Such improvements and betterments shall be considered real property;

3. Personal property, other than motor vehicles, of officers and employees of the Insured;

4. Except as set forth in Subparagraph **II.B.17.**, personal property of others in the care, custody and control of the Insured, when the Insured is under obligation to insure such property for physical loss or damage of the type insured against under this **Policy**;

5. Contractor's and vendor's interests in property of the type covered by this **Policy** to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage.  However, such interests do not extend to any Time Element coverage provided by this **Policy**.

B. PROPERTY EXCLUDED: Except as otherwise provided under the Additional Coverages and Additional Time Element Coverages (and in such event, only to the extent provided therein), this **Policy** does not insure against loss or damage to:

1. New buildings, structures and additions under construction, including any site preparation;

2. Materials, equipment and supplies for new buildings, structures and additions;

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 4 of 35 |
|---|---|---|

3. Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones and semi-precious stones. This exclusion does not apply to precious metals and precious or semi-precious stones used by the Insured for industrial purposes;

4. Land, land values, any substance in or on land or any alteration to the land; however, this **Policy** does insure the following:

   a. Any manmade: dams, dikes, levees, aqueducts and other surface containments, if values for such structures are reported to the Company; and

   b. Fill beneath any buildings or structures;

5. Water, except water which is normally contained within any type of insured tank, piping system or other process equipment;

6. **Outdoor Property**;

7. Standing timber, growing crops or animals;

8. Vehicles licensed for highway use, watercraft, aircraft, drones, locomotives and railroad rolling stock;

9. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

10. Property in transit;

11. Underground mines, caverns or mining shafts, and any property contained therein;

12. Offshore property, including offshore rigs, platforms or similar structures, and property contained therein or thereon;

13. Satellites and spacecraft while on the launch pad, and after the time of launch;

14. Bridges, tunnels, reservoirs and canals;

15. Bulkheads, pilings, docks, piers and wharves;

16. Transmission and distribution lines of every type and description, except when located on an **Insured Location** or within one-thousand (1,000) feet thereof;

17. Personal property in the care, custody, and control of the Insured when the Insured is acting as a warehouse operator, bailee for hire or a carrier for hire;

18. **Electronic Data and Media**; and

19. **Fine Arts.**

## SECTION III – VALUATION

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. For all property other than property specifically described in Subparagraphs **B.** through **N.**, inclusive, below: Such property will be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and/or obsolescence. The Insured may elect to rebuild on another site, however the

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 5 of 35 |
|---|---|---|

liability of the Company is limited to the amount of loss or damage that would otherwise be payable to rebuild at the same site. Property that is not repaired or replaced within two (2) years after the date of loss, unless such requirement is waived by Company in writing, will be valued at actual cash value at the time and place of the loss.

B. Stock in process will be valued at the cost of **Raw Materials** and labor expended plus the proper proportion of overhead charges.

C. **Finished Goods** manufactured by the Insured will be valued at the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

D. **Raw Materials**, supplies and merchandise not manufactured by the Insured will be valued at the cost to replace such property.

E. **Valuable Papers and Records** will be valued at the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Company will only pay the blank value of the papers or records.

F. **Electronic Data and Media: Electronic Data** will be valued at the cost to restore such data from duplicates to the condition that existed prior to the time of the loss. If duplicate electronic data is not available, then the **Electronic Data** will be valued at the cost to research, gather and assemble the **Electronic Data** to the condition that existed prior to the time of the loss.

**Media** will be valued at the lesser of the cost to repair the **Media** or replace it with blank media of like kind and quality without deduction for depreciation and/or obsolescence.

G. Jigs and fixtures, dies, small tools and patterns will be valued at replacement cost, if replacement cost values have been reported to the Company and if actually replaced; otherwise, such items will be valued at the replacement cost minus the proper deduction for depreciation and/or obsolescence, but not to exceed the cost to repair or replace the property with materials of like kind and quality.

H. Leasehold improvements and betterments will be valued as follows:

   1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments with materials of like kind and quality;

   2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost determined as follows:

      a. Multiplying the original cost by the number of days from the date of loss or damage to the expiration of the lease; and

      b. Dividing the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

      If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

   3. If others pay for repairs or replacement, then no amount shall be payable.

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 6 of 35 |

I.  **Fine Arts** will be valued at the least of: (1) the cost to repair or replace the **Fine Arts;** (2) the appraised value had no loss or damage occurred which will be determined at the time of the loss; or (3) the agreed value on file with the Company.

J.  Accounts Receivable will be valued at the amount owed the Insured which the Insured is unable to collect from customers due to the loss of the Accounts Receivable, and shall include:

1.  Any collection expenses over and above the normal collection costs;

2.  Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3.  The reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

All amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid by the Company will belong and be paid to the Company by the Insured up to the total amount of loss paid by the Company.  All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Company shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

K.  Property for Sale:   As respects any real property that was being offered for sale at the time of loss, the loss or damage to such property will be valued at the lesser of:

1.  The cost to repair or replace the damaged property; or

2.  The price at which the property is offered for sale less the market value of the land.

L.  Property in Transit:  In case of loss, the basis of adjustment shall be:

1.  Property shipped to or for the account of the Insured shall be valued at the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

2.  Property which has been sold by the Insured and has been shipped to or for the account of the purchaser is valued at the amount of the Insured's selling invoice, including prepaid or advanced freight;

3.  Property of others not under invoice shall be valued at the least of the Insured's legal liability for such property, the replacement cost or the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

4.  Property of the Insured not under invoice shall be valued in accordance with the valuation provisions of this **Policy** applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 7 of 35 |
| --- | --- | --- |

M. Contractor's equipment shall be valued at actual cash value, unless an agreed value on file with the Company applies.

N. Trees, shrubs, plants and lawns will be valued at the cost to replace the property with local nursery stock.

Unless otherwise specifically stated, the Company will compute the valuations at the time and place of the loss. All of the above shall be subject to the applicable Sublimit of Liability set forth in this **Policy**.

## SECTION IV – TIME ELEMENT COVERAGE

## GROSS EARNINGS

This **Policy** covers actual loss of income sustained by the Insured during the necessary partial or total interruption of the Insured's business operations, services or production during the Period of Interruption directly resulting from a **Covered Cause of Loss** to Insured Property at an **Insured Location**.

A. ACTUAL LOSS OF INCOME SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

1. To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted); or

2. To continue business operations or services;

through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an **Insured Location** or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Company shall be liable, subject to all other conditions of this **Policy** not inconsistent herewith, for the actual loss of income sustained during the Period of Interruption.

The actual loss of income sustained shall be determined by calculating the **Gross Earnings** and subtracting all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services.

For the purpose of this coverage, **Gross Earnings** means:

1. For manufacturing operations: The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

2. For mercantile or non-manufacturing operations: The total net sales (excluding any revenue derived from property held for rent), less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

3. Plus all other earnings except **Rental Value** derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under this **Policy** for direct physical loss or damage to merchandise shall be included as though the merchandise had been sold to the Insured's regular customers and will be credited against such net sales.

In determining the amount payable under this coverage, the Period of Interruption shall be:

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 8 of 35 |
|---|---|---|

The period from the time of direct physical loss or damage from a **Covered Cause of Loss** to Insured Property to the time when, with the exercise of due diligence and dispatch, either:

1.  Normal operations resume; or

2.  Physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage;

whichever is less. Such period of time shall not be cut short by the expiration or earlier termination date of this **Policy**.

Such Period of Interruption includes the time necessary, with the exercise of due diligence and dispatch:

a.  To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services;

b.  To replace physically damaged or destroyed mercantile stock necessary to resume operations; and

c.  To replace **Raw Materials** and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable **Raw Materials** and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

For property in the Course of Construction: The period of time between the anticipated date of completion and the actual date on which occupancy or commercial service can commence with respect to new buildings, structures or additions under construction with the exercise of due diligence and dispatch, but only with respect to any delay related to covered loss to such property under this **Policy**.

The Period of Interruption does not include any additional time:

1.  Required for restaffing or retraining employees;

2.  Due to the Insured's inability to resume operations for reasons other than those enumerated in Subparagraphs a. through c., inclusive, above; or

3.  Required for making change(s) to the buildings, structures or equipment for any reason except as provided in the Demolition and Increased Cost of Construction coverage, if such coverage is provided by this **Policy**.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred. Due consideration shall also be given to any sales which are made up within a reasonable period of time, not limited to the period during which business is interrupted.

There is no coverage for any portion of the Insured's Ordinary Payroll expense unless a specified number of days for Ordinary Payroll is shown in the Policy Declarations. In such case, the Company will pay Ordinary Payroll for that number of days only. Ordinary Payroll means the

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 9 of 35 |
|---|---|---|

entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

B. EXPENSE TO REDUCE LOSS: Coverage is provided for expenses necessarily incurred by the Insured in reducing its **Gross Earnings** loss otherwise payable hereunder, but in no event shall this Company be liable for an amount greater than the **Gross Earnings** loss that otherwise would have been payable.

C. ADDITIONAL TIME ELEMENT COVERAGES

All Additional Time Element Coverages are subject to the terms and conditions of this **Policy**, including but not limited to, any conditions set forth in this TIME ELEMENT COVERAGE Section, the Sublimits of Liability corresponding to each such Additional Time Element Coverage, any other applicable Sublimits or Deductibles shown elsewhere in this **Policy**. The Sublimits corresponding to each such Additional Time Element Coverage are the maximum amount the Company will pay for all loss or damage arising out of such specified Additional Coverages. Such Sublimits are part of, and not in addition to the **Policy Limit** and the Specified Covered Causes of Loss Sublimits shown in Item **6.A.1.** of the Policy Declarations or elsewhere in this **Policy**.

1. CONTINGENT TIME ELEMENT: If direct physical loss or damage to property of the type insured under this **Policy** of a direct supplier or direct customer of the Insured is damaged by a **Covered Cause of Loss**, and such loss or damage to:

   a. Wholly or partially prevents any direct supplier from supplying their goods and/or services to the Insured; or

   b. Wholly or partially prevents any direct customer from accepting the Insured's goods and/or services;

   then this **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained by the Insured during the Period of Interruption with respect to such property of the supplier or customer that sustains such loss or damage. This coverage does not apply to new buildings, additions or alterations in the course of construction of any direct supplier or direct customer.

   This coverage applies to the Insured's direct suppliers or direct customers located in the **Coverage Territory**.

   Notwithstanding the foregoing, this Additional Coverage does not apply to:

   a. Any supplier of electricity, gas, fuel, steam, water, refrigeration, sewerage service, **Cloud Computing Service** or data, voice or video service; or

   b. The Insured's customers, if the Insured is a supplier of electricity, gas, fuel, steam, water, refrigeration, sewerage service, **Cloud Computing Service** or data, voice or video service.

2. EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   a. The date on which the liability of the Company for loss or damage would otherwise terminate; or

b.  The earliest date on which either normal operations resume, or repair, replacement or rebuilding of the property that has been damaged is actually completed;

but in no event for a period of time exceeding the number of days specified in the Policy Declarations starting with the later of Subparagraph a. or b. above.  This Extended Period of Indemnity does not apply to any Additional Time Element Coverages.

3.  EXTRA EXPENSE:  This **Policy** is extended to cover the loss sustained by the Insured for **Extra Expense** during the Period of Interruption resulting from direct physical loss or damage by a **Covered Cause of Loss** to Insured Property utilized by the Insured.  **Extra Expense** means reasonable and necessary:

a.  Extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b.  Extra costs of temporarily using property or facilities of the Insured or others;

all less any value remaining at the end of the Period of Interruption for property obtained in connection with the above.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the loss under this TIME ELEMENT COVERAGE Section of this **Policy**.

The maximum amount that the Company will pay for all **Extra Expense** under this **Policy** is the Extra Expense Sublimit of Liability as shown in the Policy Declarations regardless of any other applicable coverages, Additional Coverages or Additional Time Element Coverages.

4.  INGRESS & EGRESS:  This **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained during the period of time when partial or total physical ingress to or egress from the Insured's real or personal property is prohibited as a direct result of a **Covered Cause of Loss** to property of others, provided that such property of others is within the distance from the **Insured Location** as shown on the Policy Declarations under Ingress & Egress.  There shall be no loss payable under this Additional Coverage unless the prohibition of ingress to or egress from real or personal property exceeds the Qualifying Period shown in the Policy Declarations. If the prohibition does exceed the Qualifying Period, the loss shall be measured from the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no longer than the number of days for Ingress & Egress shown in the Policy Declarations.  In no event shall the Company pay more than the Sublimit shown in the Policy Declarations.

5.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:  This **Policy** is extended to cover the actual loss of income and **Extra Expense** sustained during the period of time when an order of civil or military authority prohibits total or partial access to the Insured's real or personal property, provided such order is a direct result of a **Covered Cause of Loss** to property of others and such property of others is within the distance from the **Insured Location** as shown on the Policy Declarations under Interruption by Civil or Military Authority.  There shall be no loss payable under this Additional Coverage unless the length of time the order prohibiting access to the Insured's real or personal property exceeds the Qualifying Period shown in the Policy Declarations.  If the length of time of the order does exceed the Qualifying Period, the loss shall be measured from the effective date of such order and ends when the order expires, but no longer than the number of days for Interruption of Civil or Military Authority shown in the Policy Declarations.  In no event shall the Company pay more than the Sublimit shown in the Policy Declarations.

6. RENTAL VALUE:  As respects Insured Property held for rental to others, this **Policy** is extended to cover the loss sustained by the Insured due to direct physical loss or damage by a **Covered Cause of Loss** during the Period of Interruption but not exceeding the reduction in **Rental Value** less charges and expenses which do not necessarily continue.

**Rental Value** means the sum of:

   a. The total anticipated gross rental income from tenant occupancy of the **Insured Location** as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises;

   b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

   c. The fair rental value of any portion of such property which is occupied by the Insured.

   Due consideration will be given to the historic rental income and expenses prior to the loss and the probable rental income and expenses thereafter.

7. ROYALTIES:  This **Policy** is extended to cover actual loss of income sustained by the Insured under a royalty, licensing fee or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a **Covered Cause of Loss** during the term of this **Policy** to real or personal property of the type insured of such other party.

If a **Covered Cause of Loss** results in coverage under more than one Additional Time Element Coverage, the Company will only pay for loss under one of them, whichever is greater.

D. ADDITIONAL EXCLUSIONS: Time Element Coverage under this **Policy** does not cover:

1. IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than direct physical loss or damage from a **Covered Cause of Loss** to which this coverage applies.

2. REMOTE LOSS –

   a. Any increase in loss due to the suspension, cancellation or lapse of any lease, contract, license, order or loss of market;

   b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

   c. Any increase in loss due to interference at the Insured's premises or the supplier's or customer's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of such premises.

   Nor shall the Company be liable for any other consequential or remote loss, other than as specifically provided in this TIME ELEMENT COVERAGE Section of this **Policy**.

3. FINISHED GOODS - Any loss resulting from loss or damage to **Finished Goods** nor for the time required for their reproduction.

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

5. CONTRACTOR'S OR VENDOR'S INTERESTS – Any loss resulting from loss or damage to contractor's or vendor's interests in Insured Property.

## SECTION V – ADDITIONAL COVERAGES

All Additional Coverages are subject to the terms and conditions of this **Policy**, including but not limited to, the Sublimits of Liability corresponding to each such Additional Coverage and any other applicable Sublimits or Deductibles shown elsewhere in this **Policy**. The Sublimits corresponding to each such Additional Coverage are the maximum amount the Company will pay for all loss or damage arising out of such specified Additional Coverages. Such Sublimits are part of, and not in addition to the **Policy Limit** and the Specified Covered Causes of Loss Sublimits shown in Item **6.A.1**. of the Policy Declarations or elsewhere in this **Policy**.

In addition, the maximum amount that the Company will pay for each **Occurrence** for all loss or damage with respect to **Miscellaneous Unnamed Locations**, Newly Acquired Property or for locations for which coverage is provided under the ERRORS OR OMISSIONS Additional Coverage is the corresponding applicable Sublimit of Liability for MISCELLANEOUS UNNAMED LOCATIONS, NEWLY ACQUIRED PROPERTY or ERRORS OR OMISSIONS Additional Coverages as shown in the Policy Declarations for each such Additional Coverage regardless of any other coverage, Additional Coverages or Additional Time Element Coverages.

A. ACCOUNTS RECEIVABLE: This **Policy** covers any shortage in the collection of Accounts Receivable resulting from direct physical loss or damage by a **Covered Cause of Loss** to Accounts Receivable records.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, corruption, erasure, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This **Policy** covers the necessary and reasonable expense to remove debris consisting of Insured Property from the **Insured Location(s)** remaining as a result of direct physical loss or damage from a **Covered Cause of Loss** when the Insured gives written notice of such direct physical loss or damage to the Company within one hundred eighty (180) days after such loss or damage. The Company shall not be liable for any debris removal cost or expense associated with removing contaminated or polluted uninsured property, nor the **Pollutants or Contaminants** therein or thereon, whether or not such contamination results from a **Covered Cause of Loss**.

C. DEMOLITION AND INCREASED COST OF CONSTRUCTION: In the event of direct physical loss or damage by a **Covered Cause of Loss** to a building at an **Insured Location** that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Company shall pay up to the applicable Sublimits set forth in the Policy Declarations as follows:

1. Demolition Coverage A: In accordance with the VALUATION Section of this **Policy**, the cost to replace the undamaged portion of the damaged building as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged portion of the same building;

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 13 of 35 |

2. Demolition Coverage B:  The cost to demolish and clear the site of the undamaged portion of the damaged building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged portion of the same building; and

3. Demolition Coverage C:  The increased cost of repair or replacement of the damaged building and undamaged portion of the same building, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or replacement of the damaged building.  However, the Company shall not be liable for any such increased cost unless the damaged building is actually repaired or replaced.

The Company shall not be liable for any cost set forth above:

a. Necessitated by the enforcement of any law or ordinance regulating any form of **Pollutants or Contaminants;** or

b. Incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the time of the direct physical loss or damage.

D. ELECTRONIC DATA AND MEDIA:  This **Policy** is extended to cover direct physical loss or damage to **Electronic Data and Media** by a **Covered Cause of Loss**.  However, the Company shall not be liable for any loss or damage arising out of **Unauthorized Access, Unauthorized Use, Denial of Service Attack, Malicious Code, Magnetic Damage to Electronic Data and Media** or **Vandalism** and **Malicious Mischief**.

E. ERRORS OR OMISSIONS:  This **Policy** is extended to cover direct physical loss or damage by a **Covered Cause of Loss** at locations within the **Coverage Territory** that are owned, leased or operated by the Insured, if such loss or damage is not payable under this **Policy** solely due to:

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the Policy Period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

a. Include any location of the Insured at the inception of the **Policy**; or

b. Report any newly acquired location before the period of automatic coverage expires under the NEWLY ACQUIRED PROPERTY Additional Coverage.

This **Policy** covers such direct physical loss or damage, to the extent it would have provided coverage had such error or omission not been made.

It is a condition of this Additional Coverage that any error or omission be reported by the Insured to the Company when discovered and that the Insured shall pay any additional premium due.

No coverage is provided at any location for new buildings, additions or alterations in the course of construction if the Insured has failed to report such location due to an error or omission (other than inadvertent error or unintentional omission in the description of the address of the property).

There is no coverage under this Subparagraph for loss or damage which is covered under the MISCELLANEOUS UNNAMED LOCATIONS or NEWLY ACQUIRED PROPERTY Additional Coverages.

F.  EXPEDITING EXPENSES: This **Policy** is extended to cover reasonable and necessary expediting expenses to:

1.  Make temporary repairs to Insured Property; or

2.  Expedite the permanent repair or replacement of Insured Property;

that has sustained direct physical loss or damage by a **Covered Cause of Loss**.

G.  FINE ARTS:  This **Policy** is extended to cover direct physical loss or damage to **Fine Arts** by a **Covered Cause of Loss** at an **Insured Location**.  However, no coverage is provided for breakage unless such breakage is caused by a **Defined Peril**.  The Company shall not be liable for loss or damage resulting from restoring, repairing or retouching **Fine Arts**.

H.  FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:  This **Policy** covers the following expenses resulting from a **Covered Cause of Loss** at an **Insured Location**:

1.  Fire brigade charges and extinguishing expenses which the Insured incurs;

2.  Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

I.  LEASEHOLD IMPROVEMENTS & BETTERMENTS: This **Policy** is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the Insured tenant or the Insured's lessor acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a **Covered Cause of Loss** at an **Insured Location**.  This Additional Coverage is subject to the Leasehold Interest Sublimit set forth in the Policy Declarations.

J.  LEASEHOLD INTEREST:  If Insured Property is: (1) rendered wholly or partially untenantable by direct physical loss or damage to Insured Property by a **Covered Cause of Loss** during the Policy Period and (2) the Insured's lease is cancelled by a party, other than the Named Insured or an entity that has a common ownership with the Named Insured, in accordance with the conditions of the lease, then this **Policy** is extended to cover **The Interest of the Insured as Lessee** or **The Interest of the Insured as Lessor**, whichever is applicable, but only for the first three months succeeding the date of the loss and the **Net Lease Interest** shall be paid for the remaining months of the unexpired lease.

Recovery under this Additional Coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1.  The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease; and

2.  The amount of advance rent paid by the Insured and not recoverable under the terms of the lease.

The following terms, wherever used in this Subparagraph, shall mean:

1.  **The Interest of the Insured as Lessee** is defined as:

    a.  The excess of the **Rental Value** of similar premises over the actual rent payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 15 of 35 |
|---|---|---|

b.   The rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this **Policy**, over and above the rental expenses specified in the lease between the Insured and the lessor.

2.   **The Interest of the Insured as Lessor** is defined as the difference between the rents payable to the Insured under the terms of the lease in effect at the time of loss and the actual rent collectible by the Insured during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this **Policy**.

3.   **Net Lease Interest** is the discounted amount that at 6% interest would be equivalent to the Insured receiving the full amount of **The Interest of the Insured as Lessee or Lessor**, whichever is applicable, for each separate month of the unexpired term of the lease.

The Company shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any lease or by the Named Insured exercising any option to cancel the lease.  Furthermore, the Named Insured shall use due diligence including all things reasonably practicable to diminish loss under this Additional Coverage.

K.   LIMITED POLLUTION COVERAGE:    This **Policy** is extended to cover the reasonable and necessary expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from land and water at an **Insured Location** when such land or water is contaminated or polluted due to a **Covered Cause of Loss** at that **Insured Location**.  There will be no coverage unless such expenses are reported to the Company within one hundred eighty (180) days after the date of such **Covered Cause of Loss**.

L.   MISCELLANEOUS UNNAMED LOCATIONS:   This **Policy** is extended to cover direct physical loss or damage by a **Covered Cause of Loss** to property of the type insured under this **Policy** at **Miscellaneous Unnamed Locations** to the extent of the Insured's insurable interest.   No coverage is provided for new buildings, additions or alterations in the course of construction under this MISCELLEANOUS UNNAMED LOCATIONS Additional Coverage.

There is no coverage under this Subparagraph for loss or damage which is covered under the ERRORS OR OMISSIONS or NEWLY ACQUIRED PROPERTY Additional Coverages.

M.   NEW CONSTRUCTION AND ADDITIONS: This **Policy** is extended to cover:

1.   Direct physical loss or damage by a **Covered Cause of Loss** to: (i) new buildings, structures and/or additions while in the course of construction at an **Insured Location** and (ii) materials, equipment and supplies to be permanently installed in such new buildings, structures and/or additions at an **Insured Location**; and

2.   **Gross Earnings** loss and **Soft Costs** incurred by the Insured during the Period of Interruption as set forth in Subparagraph **IV.A**. if such property in Subparagraph **M.1.** above sustains direct physical loss or damage by a **Covered Cause of Loss**.

3.   Additional expenses which are incurred by the Insured for the purpose of continuing as nearly as practicable the scheduled progress of undamaged work, but only when such scheduled progress is impaired by direct physical loss or damage by a **Covered Cause of Loss** to new buildings, structures and/or additions while in the course of construction.

N.   NEWLY ACQUIRED PROPERTY:   This **Policy** covers direct physical loss or damage by a **Covered Cause of Loss** to real and personal property of the type insured under this **Policy** that is rented, leased, purchased or acquired by the Insured after the inception date of this **Policy** and within

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 16 of 35 |

the **Coverage Territory**.  Coverage under this Additional Coverage ceases at the earliest of the following dates:

1. Ninety (90) days from the date of rental, lease, purchase or acquisition of such property;

2. When such newly acquired property is bound by the Company;

3. The Company notifies the Insured that it will not bind the coverage for such property; or

4. When this **Policy** is cancelled or expires.

There is no coverage under this Subparagraph for loss or damage which is covered under the ERRORS OR OMISSIONS or MISCELLANEOUS UNNAMED LOCATIONS Additional Coverages.

O. OUTDOOR PROPERTY:  This **Policy** is extended to cover direct physical loss or damage to **Outdoor Property** at the **Insured Location**, but only for loss or damage caused directly by a **Defined Peril** (other than **Windstorm or Hail**), not otherwise excluded.

P. PAIRS OR SETS:  If two or more insured components or parts that comprise Insured Property are necessary for a complete object, then this **Policy** covers reduction in value of insured components or parts of such complete object due to direct physical loss or damage by a **Covered Cause of Loss** to the other insured components or parts of such complete object.

Q. PROFESSIONAL FEES:  This **Policy** is extended to include reasonable and necessary expenses incurred by the Insured for preparing and certifying particulars or details of the Insured's claim required by the Company for which the Company has accepted liability in order to determine the amount of a covered loss payable under this **Policy**.  This **Policy** is also extended to include reasonable and necessary fees charged by any independent property manager for handling the claim.

There shall be no coverage under this **Policy** for expenses incurred by the Insured in utilizing the services of attorneys, public adjusters, insurance agents or brokers, or any of their subsidiary, related or associated entities, except that coverage is provided for expenses incurred by the Insured for its broker's forensic accounting units.  This **Policy** also excludes any fees or costs for consultation on coverage or negotiation of claims.

R. PROPERTY REMOVED FROM INSURED LOCATIONS:  This **Policy** is extended to cover direct physical loss or damage to covered personal property of the Insured by a **Covered Cause of Loss** at any location within the **Coverage Territory** when such property is removed from the **Insured Locations** for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another insurance policy; or

2. Personal property removed from the **Insured Locations** for normal storage or processing or preparation for sale or delivery.

S. SERVICE INTERRUPTION: This **Policy** is extended to cover physical loss or damage to Insured Property and actual loss of income and **Extra Expense** sustained by the Insured arising from an interruption in: (1) incoming electricity, gas, water, steam or refrigeration; (2) the Insured's data, voice or video service; or (3) outgoing sewerage, caused by a **Covered Cause of Loss** to a service provider's property of the type insured under this **Policy** or to transmission, distribution or communication lines, situated outside the **Insured Location**.

This Additional Coverage for SERVICE INTERRUPTION shall also apply to such equipment of others situated on the **Insured Locations** but such equipment shall not be subject to the Service Interruption Sublimit set forth in the Policy Declarations.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the Qualifying Period shown in the Policy Declarations.  If the loss exceeds the Qualifying Period then loss shall be measured from date and time of the interruption of service.  However, such Qualifying Period does not apply if there is physical loss or damage to Insured Property caused by the interruption.  The service interruption ends when: (1) incoming electricity, gas, fuel, steam, water or refrigeration; (2) the Insured's data, voice or video service; or (3) outgoing sewerage service; is restored.

This period of time shall not be cut short by the end of the Policy Period.

Notwithstanding the foregoing, the Company will not pay for any interruption intentionally caused by the Insured or any service provider.

T.  SPOILAGE: This **Policy** is extended to cover the spoilage of **Perishable Goods**, including while in transit, by a **Covered Cause of Loss**.  Such physical loss or damage includes spoilage of the Insured's **Perishable Goods** due to contamination from the release of refrigerant including, but not limited to, ammonia.

U.  TRANSIT:  This **Policy** is extended to cover direct physical loss or damage to Insured Property by a **Covered Cause of Loss**, while such property is in transit, including:

1.  Personal property shipped to customers on F.O.B., C & F, or similar terms.  The Insured's contingent interest in such shipments is admitted;

2.  The interest of the Insured in, and legal liability for personal property of others in the actual or constructive custody of the Insured; and

3.  Personal property of others sold by the Insured for which the Insured has agreed prior to loss to insure during the course of delivery.

Subject to the terms and conditions of this **Policy**, this TRANSIT Additional Coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit until delivered at the destination, provided that the original point of shipment and the point of destination are within the **Coverage Territory**.

Permission is granted to the Insured without prejudice to this insurance to accept ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.  The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

The following additional exclusions apply to this Additional Coverage:

1.  Samples in the custody of salespersons or selling agents;

2.  Property insured under import or export ocean cargo policies.  However, coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 18 of 35 |
|---|---|---|

insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft;

3. Waterborne shipments via the Panama Canal or waterborne to and from the United States mainland, its territories and possessions, Alaska, Puerto Rico and Hawaii;

4. Shipments made by air unless via regularly scheduled passenger airlines or air freight carriers;

5. Property shipped by mail;

6. Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the law or regulatory agencies in the applicable jurisdiction; or

7. Any transporting vehicle or conveyance.

This Additional Coverage does not provide any Time Element coverage.

These additional exclusions for transit also apply to the extent that any Additional Coverages provide transit coverage.

If another Additional Coverage, other than this TRANSIT Additional Coverage, provides coverage for a specific type of Insured Property while such property is in transit, then loss or damage for such property shall be subject to the Sublimit of Liability applicable to such Additional Coverage and no coverage for such property shall be provided under this TRANSIT Additional Coverage.

V. VALUABLE PAPERS AND RECORDS:  This **Policy** is extended to cover direct physical loss or damage to **Valuable Papers and Records** by a **Covered Cause of Loss**.

## SECTION VI – CONDITIONS

A. ABANDONMENT:  There can be no abandonment to the Company of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED:  Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any certificates of insurance on file with the Company which require payment to a loss payee or mortgageholder.

If this **Policy** insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations and duties under this **Policy**. Payment of loss or return premium under this **Policy** to the First Named Insured shall satisfy the Company's obligations with respect to all Insureds.

C. APPRAISAL: If the Company and the Insured disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If the appraisers cannot agree on an umpire, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the replacement cost and actual cash value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 19 of 35 |
|---|---|---|

If there is an appraisal, it is without prejudice to the Company's rights under the terms and conditions of the **Policy** including the Company's right to deny the claim.

D.   ASSIGNED ADJUSTER:   It is hereby agreed that the Assigned Adjuster set forth in the Policy Declarations, if any, shall be designated as the Account Claim Adjuster for all claims reported under this **Policy**.   If the Account Claim Adjuster fails to comply with the Company's "Claim Handling Guidelines for Independent Adjusters Protocol" or similar guidelines, the Company reserves the right to select an alternative claim adjuster.   The Account Claim Adjuster may not re-assign any claim(s) without the prior approval of the Company.   The Account Claim Adjuster is not a party to this contract.

The Company retains the right to terminate the Account Claim Adjuster for lack of compliance with the aforementioned Guidelines Protocol or for lack of performance at the discretion of the Company.   In such event, or in the event that the Account Claim Adjuster becomes unwilling or unable to perform, a replacement Account Claim Adjuster will be selected by the mutual agreement of the Company and Named Insured.

E.   ASSIGNMENT: The Insured may not assign this **Policy** without the Company's prior written consent.

F.   BRANDS AND LABELS:   If branded or labeled merchandise covered by this **Policy** is physically damaged and the Company elects to take all or any part of such merchandise at the value established by the terms of this **Policy**, the Insured may, at its own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

G.   CANCELLATION:

   1.   This **Policy** can be canceled by the First Named Insured by providing the Company with:

      a.   An advance written request for cancellation stating when the cancellation shall be effective; and

      b.   The original **Policy** or a lost policyholder release signed by the First Named Insured or its legal representative.

   2.   This **Policy** may be canceled by the Company by giving written notice to the First Named Insured stating when, not less than sixty (60) days thereafter, or ten (10) days thereafter for non-payment of premium, such cancellation shall be effective.   If notice is mailed, proof of mailing will be sufficient proof of notice.   Payment or tender of any unearned premium due to the First Named Insured shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made in due course.

   3.   If the Company cancels, any refund due will be pro-rata.   If the First Named Insured cancels, any earned premium due will be calculated in accordance with the customary short-rate table and procedure, subject to the Minimum Earned Premium shown in the Policy Declarations.

H.   CONTROL OF DAMAGED MERCHANDISE: This **Policy** gives the Insured control of physically damaged **Finished Goods** that have been manufactured by or for the Insured, provided that such goods have been physically damaged as a result of direct physical loss or damage by a **Covered Cause of Loss**.   Under such circumstances, the Insured shall have full rights to the possession and control of all such physically damaged **Finished Goods,** provided that the Insured performs or has proper testing performed to demonstrate what property is physically damaged.   The Insured,

| PR8371 (01/18) | ©American International Group, Inc. <br> All Rights Reserved. | Page 20 of 35 |
|---|---|---|

exercising reasonable judgment, will decide if the physically damaged **Finished Goods** can be reprocessed or sold.  Physically damaged **Finished Goods** judged by the Insured to be fit for reprocessing or for selling will be sold or otherwise disposed of and the salvage proceeds shall be handled in accordance with the SALVAGE AND RECOVERIES Condition of this Section. These rights and obligations also are extended to merchandise that the Insured is contractually obligated by the manufacturer or designer to exercise control of the damaged merchandise as long as such obligation is in writing prior to the loss or damage.

I.  CURRENCY:  Any amount of money specified in this **Policy**, including **Policy Limit**, Deductibles and Premium, shall be considered to be in United States dollars.

J.  DIVISIBLE CONTRACT:  Subject to the MISREPRESENTATION AND FRAUD Condition of this Section, if any **Insured Location** includes two or more buildings or the contents of two or more buildings, the breach of any condition of this **Policy** in respect to any one or more of the buildings insured or containing the Insured Property, shall not prejudice the right to recover for direct physical loss or damage by a **Covered Cause of Loss** occurring in any building insured or containing the Insured Property where, at the time of such loss or damage, a breach of condition does not exist.

K.  ECONOMIC AND TRADE SANCTIONS: The Company shall not be deemed to provide cover and the Company shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Company, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or the United States of America.

L.  INCREASE IN HAZARD: The Company is not liable for any loss at an **Insured Location** to the extent that such loss is a result of or in connection with a material increase in hazard over which the Insured has control or knowledge.  Any material increase in hazard at one or more **Insured Locations** will not affect coverage at other **Insured Locations** where, at the time of loss or damage, the increase in hazard does not exist.

M.  INSPECTION AND AUDIT: The Company, at all reasonable times during this Policy Period, shall be permitted but not obligated to inspect the property insured by this **Policy**.  Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Company, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Company may also examine and audit the Insured's books and records at any reasonable time during the Policy Period and within one year after the **Policy** termination, as long as such examination and audit relate to the subject matter of this **Policy**.

N.  MISREPRESENTATION AND FRAUD: This entire **Policy** shall be voidable by the Company if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

O.  OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE:  In the event there is other insurance covering loss or damage insured under this **Policy**, then this **Policy** shall apply only as excess and in no event as contributory insurance (unless this **Policy** is specifically written to be primary or contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible.  Permission is granted for the Insured to

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 21 of 35 |
| --- | --- | --- |

==purchase excess insurance over the limits provided by this **Policy**, and underlying insurance on all or any part of the Deductibles of this **Policy**.==

P.  PROTECTION AND PRESERVATION OF PROPERTY: In case of actual or imminent direct physical loss or damage by a **Covered Cause of Loss**, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Insured Property shall be included in the physical loss or damage amount otherwise recoverable under this **Policy**, if any, but shall be subject to the applicable Deductible, Sublimit of Liability and the **Policy Limit**.

Q.  REINSTATEMENT OF LIMITS: Except for any **Covered Cause of Loss** which is subject to an Annual Aggregate limit or Annual Aggregate Sublimit of Liability, payment of a claim will not reduce the amount payable under this **Policy** for any subsequent covered loss.

R.  REQUIREMENTS IN CASE OF LOSS:  The Insured shall:

1.  Give prompt written notice of any loss or damage to the Company;

2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3.  Protect the property from further loss or damage;

4.  Separate the damaged and undamaged personal property;

5.  Maintain such property in the best possible order;

6.  Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7.  Furnish all other documents or insurance policies that the Company may reasonably require;

8.  Allow the Company to access and inspect any of the damaged or undamaged property;

9.  Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

10. Cooperate with the Company in all aspects of any claim and provide the Company with any additional information that it requires; and

11. Within sixty (60) days after the Company's request, the Insured shall provide the Company with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

    a.  The time and origin of the loss;

    b.  The interest of the Insured and of all others in the property;

    c.  The value of each item thereof determined in accordance with the valuation provisions of this **Policy** and the amount of loss thereto and all encumbrances thereon;

    d.  All other contracts of insurance, whether collectible or not, covering any of said property; and

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 22 of 35 |
|---|---|---|

e. Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this **Policy**, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

S. SALVAGE AND RECOVERIES: All salvages, recoveries and payments (other than proceeds from subrogation and underlying insurance), will accrue entirely to the benefit of the Company until the sum paid or payable by the Company is recovered or reduced as applicable.

T. SERVICE OF SUIT: In the event of the Company's failure to pay any amount claimed to be due hereunder, the Company, at the Insured's request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Lexington Insurance Company, 99 High Street, Boston, Massachusetts 02110 or his or her representative, and that in any suit instituted against the Company upon this **Policy**, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successors in office as the Company's true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by the Insured or on the Insured's behalf or any beneficiary hereunder arising out of this **Policy** of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

U. SETTLEMENT OF CLAIMS: The amount of loss for which the Company may be liable shall be payable within thirty (30) days after proof of loss herein required is received and accepted by the Company and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Company or an amount is determined by binding Appraisal in accordance with the provisions of this **Policy**.

The Company shall have the option to take all or any part of the property at the agreed or appraised value. Alternatively, the Company shall have the option to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so up to thirty (30) days after receipt of the proof of loss herein required.

V. SUBMISSION OF VALUES: The Insured shall provide to the Company at **Policy** inception and each subsequent anniversary date of this **Policy**, a Statement of Values which consists of the separate amounts for real property, personal property and Time Element values for each **Insured Location** calculated on the same basis as valuation under this **Policy**.

The property values shall be shown on a replacement cost basis for property which is covered on a replacement cost basis and on an actual cash value basis for other property. The value of stock and supplies shall be determined in accordance with the VALUATION Section of this **Policy** and shall be based on the approximate average of the stock and supplies on hand during the twelve (12) months immediately preceding the annual review of values. Time Element values (if

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 23 of 35 |

applicable) shall be forwarded in accordance with the terms of the applicable Time Element provisions and projected twelve (12) months into the future.

Upon inception of this **Policy** and at each anniversary date, the Annual Premium shall be due and payable to the Company.   Receipt of said Statement of Values by this Company shall be considered as authorization by the Insured for the Company to calculate, at its discretion, premiums due for subsequent annual renewal(s).

The premium for this **Policy** is based upon the Statement of Values on file with the Company.

W. SUBROGATION: The Company may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this **Policy**.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the Deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Company and, upon the Company's request and expense will:

1. Attend hearings and trials; and

2. Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting suits.

X. SUIT AGAINST COMPANY: No suit, action or proceeding for the recovery of any claim under this **Policy** shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this **Policy**, nor unless the same be commenced within twenty four (24) months following the date of the loss, provided that if under the laws of the applicable jurisdiction such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest applicable limit of time permitted by the laws of such jurisdiction.

Y. SUSPENSION:  Upon the discovery of a dangerous condition with respect to **Covered Equipment**, any representative of the Company may immediately suspend the insurance against loss from an **Accident** to such **Covered Equipment** or part thereof by notifying the Insured's representative at the **Insured Location** of such dangerous condition.  Written notice of the suspension will also be mailed or delivered to the Named Insured at the address of the Named Insured shown in the Policy Declarations.  The insurance so suspended may be reinstated by the Company, but only by endorsement to this **Policy**.  The Insured shall be allowed a pro-rata return of the unearned portion of the premium paid for such suspended insurance.

Z. TITLES OF PARAGRAPHS: The titles in this **Policy** are solely for reference and shall not in any way affect the provisions to which they relate.

AA. VACANCY: The Insured has permission to cease business operations or to have any insured building remain vacant or unoccupied, provided that fire protection, security and alarm services are maintained and written notice is given to the Company prior to the one-hundred twentieth (120th) consecutive day of cessation of business operations, vacancy or lack of occupancy. The insured building is considered vacant or unoccupied when:

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 24 of 35 |
|---|---|---|

1. Such building does not contain adequate Insured Property to conduct customary business operations; or

2. Such building is no longer used by the Insured, a lessee or a sub-lessee to conduct customary business operations;

provided however, this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations.

## SECTION VII – POLICY DEFINITIONS

A. **Accident** means a fortuitous event that causes direct physical loss or damage to **Covered Equipment**. The event must be one of the following:

   1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

   2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   3. Explosion of steam boilers, steam turbines, steam engines or steam pipes owned or leased by the Insured, or operated under the control of the Insured, except explosion of accumulated gases or unconsumed fuel;

   4. Loss or damage to steam boilers, steam turbines, steam engines or steam pipes caused by or resulting from any condition or event inside such equipment; or

   5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

B. **Aircraft or Vehicle Impact** means physical contact of an aircraft including a drone, spacecraft, self-propelled missile or objects falling therefrom, or of a vehicle or an object thrown up by a vehicle.

C. **Average Daily Value (ADV)** means the **Gross Earnings** that would have been earned during the Period of Interruption had no loss or damage occurred, divided by the number of working days during that Period of Interruption. No reduction shall be made for the **Gross Earnings** not being earned, or in the number of working days, because of the loss or damage or any other scheduled or unscheduled shutdowns during the Period of Interruption. The **ADV** applies to the **Gross Earnings** of the entire **Insured Location**, whether or not the loss affects the entire **Insured Location**. If more than one **Insured Location** is included in the valuation of the loss, the **ADV** will be the combined value of all affected **Insured Locations**. The number of days for **ADV** indicated in the Policy Declarations will be multiplied by the **ADV** as determined above. The result shall be used as the applicable Deductible.

D. **Cloud Computing Service** means a service: (i) in the business of storing, managing and processing electronic data for which the **Insured** has a written contract and (ii) that provides access to and use of: software and/or a network of remote servers hosted away from an **Insured Location** to store, manage or process such data.

E. **Collapse** means an abrupt falling down or caving in of a building or any part of a building or structure.

F. **Corruption, Erasure or Alteration** means **Electronic Data and Media** that has been corrupted, destroyed or deleted such that the **Electronic Data and Media** can no longer be accessed or used for its intended purpose.

G. **Coverage Territory** means the coverage territory shown in Item **4.** of the Policy Declarations.

H. **Covered Cause of Loss** means a peril or other type of loss, not otherwise excluded under this **Policy**.

I. **Covered Equipment** means the following:

  1. Equipment that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

  2. Equipment which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

  The following is not **Covered Equipment**:

  1. Structure, foundation, cabinet, compartment or air supported structure or building;

  2. Insulating or refractory material;

  3. Sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

  4. Water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

  5. Vehicle or any equipment mounted on a vehicle;

  6. Satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

  7. Dragline, excavation or construction equipment; or

  8. Equipment manufactured by the Insured for sale.

J. **Defined Peril** means fire; lightning; explosion; **Windstorm or Hail**; **Smoke**; **Aircraft or Vehicle Impact**; **Riot, Strike or Civil Commotion**; **Vandalism and Malicious Mischief**; **Collapse** or **Leakage From Fire Protection Equipment**. **Defined Peril** also includes **Equipment Breakdown**, provided that **Equipment Breakdown** is covered under this **Policy**.

K. **Denial of Service Attack** means an attack that sends an excessive volume of electronic data to computer hardware, software or any components thereof which prevents those who are authorized to do so from gaining access to or using such computer hardware, software or any components thereof.

L. **Earth Movement** means any natural or manmade:

  1. Earthquake, including any earth sinking, rising or shifting related to such event;

  2. Landslide, including any earth sinking, rising or shifting related to such event;

  3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising, or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of real or personal property. Soil conditions include, but are not limited to, contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface;

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, sinkhole collapse or subsidence; or

6. Tsunami arising out of any of the above.

M. Earthquake Zones: Designated Earthquake Zones as reflected in this **Policy** shall be the following:

1. **Pacific Northwest Earthquake Zone** means the following counties in Washington state:

   Clallam, Jefferson, King, Kitsap, Mason, Pierce, San Juan, Skagit, Snohomish, Thurston and Whatcom.

2. **New Madrid Earthquake Zone** means the following counties (unless otherwise stated) within the following states:

   | | |
   |---|---|
   | **Arkansas:** | Counties of Clay, Craighead, Crittenden, Cross, Greene, Jackson, Lawrence, Mississippi, Poinsett, Randolph and Sharp; |
   | **Illinois:** | Counties of Alexander, Bond, Clinton, Franklin, Hardin, Jackson, Jefferson, Johnson, Madison, Massac, Monroe, Perry, Pope, Pulaski, Randolph, Saline, St. Clair, Union, Washington and Williamson; |
   | **Indiana:** | Counties of Gibson, Pike, Posey, Vanderburgh and Warrick; |
   | **Kentucky:** | Counties of Ballard, Calloway, Carlisle, Fulton, Graves, Hickman, Livingston, Marshall and McCracken; |
   | **Mississippi:** | Counties of Bolivar, Coahoma, Desoto, Marshall, Tate and Tunica; |
   | **Missouri:** | Counties of Bollinger, Butler, Cape Girardeau, Dunklin, Franklin, Iron, Jefferson, Madison, Mississippi, New Madrid, Pemiscot, Perry, Reynolds, Scott, Stoddard, St. Charles, St. Francois, St. Genevieve, St. Louis, Warren, Washington, Wayne; and the City of St. Louis; and |
   | **Tennessee:** | Counties of Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Lake, Lauderdale, Madison, Obion, Shelby and Tipton. |

N. **Electronic Data and Media** consists of:

1. **Electronic Data**, meaning data, messages, information, coding, programs, instructions or software stored in a form suitable for communications, storage or processing by electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment; and

2. **Media**, meaning the electronic storage media upon which **Electronic Data** is stored.

   **Electronic Data and Media** does not include **Valuable Papers and Records.**

O. **Equipment Breakdown** means damage that is the direct result of an **Accident.**

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 27 of 35 |
|---|---|---|

P.  **Fine Arts** means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, antique furniture, antique jewelry, bric-a-brac, porcelains and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metals, aircraft, money and securities.  **Fine Arts** does not include any item which would qualify as **Valuable Papers and Records**.

Q.  **Finished Goods** means stock manufactured or processed by the Insured, which is in final packaging and ready for shipment or sale to the Insured's customers.

R.  **Flood** means, whether natural or manmade, flood waters, surface water, waves, tide or tidal water, overflow or rupture of a dam, levy, dike or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.  A tsunami shall not be considered a **Flood**.

S.  **Fungus, Mold or Spore** means:

**Fungus** includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including **Mold**(s), rusts, mildews, yeast, smuts and mushrooms.

**Mold** includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

**Spore** includes any dormant or reproductive body produced by or arising or emanating out of any **Fungus**, **Mold**(s), mildew, plants, organisms or microorganisms.

T.  **Hail** means precipitation consisting of concentric layers of clear ice or compact snow.

U.  <u>High Hazard Hail Zones</u>: Designated High Hazard Hail Zones as reflected in this **Policy** shall be the following:

1.  **Hail Zone 1** means the following counties (unless otherwise stated) within the following states:

<u>Colorado:</u>    Counties of Adams, Arapahoe, Baca, Bent, Cheyenne, Crowley, Elbert, Kiowa, Kit Carson, Lincoln, Logan, Morgan, Phillips, Prowers, Sedgwick, Washington, Weld and Yuma;

<u>Kansas:</u>    Counties of Barber, Barton, Butler, Cheyenne, Clark, Comanche, Cowley, Decatur, Dickinson, Edwards, Ellis, Ellsworth, Finney, Ford, Gove, Graham, Grant, Gray, Greeley, Hamilton, Harper, Harvey, Haskell, Hodgeman, Jewell, Kearny, Kingman, Kiowa, Lane, Lincoln, Logan, Marion, McPherson, Meade, Mitchell, Morton, Ness, Norton, Osborne, Ottawa, Pawnee, Phillips, Pratt, Rawlins, Reno, Rice, Rooks, Rush, Russell, Saline, Scott, Sedgwick, Seward, Sheridan, Sherman, Smith, Stafford, Stanton, Stevens, Sumner, Thomas, Trego, Wallace and Wichita;

<u>Nebraska:</u>    Counties of Arthur, Banner, Blaine, Box Butte, Brown, Buffalo, Chase, Cherry, Cheyenne, Custer, Dawes, Dawson, Deuel, Dundy, Franklin, Frontier, Furnas, Garden, Gosper, Grant, Harlan, Hayes, Hitchcock, Hooker, Kearney, Keith, Kimball, Lincoln, Logan, Loup, McPherson, Morrill, Perkins, Phelps, Red Willow, Rock, Scotts Bluff, Sheridan, Sherman, Sioux, Thomas and Valley;

<u>New Mexico:</u>  Counties of Chaves, Curry, Eddy, Lea, Quay and Roosevelt;

Oklahoma:    Counties of Alfalfa, Beaver, Beckham, Blaine, Caddo, Canadian, Carter, Cimarron, Cleveland, Comanche, Cotton, Custer, Dewey, Ellis, Garfield, Garvin, Grady, Grant, Greer, Harmon, Harper, Jackson, Jefferson, Kay, Kingfisher, Kiowa, Lincoln, Logan, Love, Major, Marshall, McClain, Murray, Noble, Oklahoma, Osage, Pawnee, Payne, Pottawatomie, Roger Mills, Stephens, Texas, Tillman, Washita, Woods and Woodward;

South Dakota:    Counties of Bennett, Butte, Custer, Fall River, Haakon, Harding, Jackson, Lawrence, Meade, Oglala Lakota, Pennington, Perkins, Todd and Ziebach;

Texas:    Counties of Andrews, Archer, Armstrong, Bailey, Baylor, Borden, Bosque, Brewster, Briscoe, Brown, Callahan, Carson, Castro, Childress, Clay, Cochran, Coke, Coleman, Collin, Collingsworth, Comanche, Concho, Cooke, Cottle, Crane, Crosby, Dallam, Dallas, Dawson, Deaf Smith, Denton, Dickens, Donley, Eastland, Ector, Ellis, Erath, Fisher, Floyd, Foard, Gaines, Garza, Glasscock, Gray, Grayson, Hale, Hall, Hamilton, Hansford, Hardeman, Hartley, Haskell, Hemphill, Hill, Hockley, Hood, Howard, Hutchinson, Jack, Johnson, Jones, Kent, King, Knox, Lamb, Lampasas, Lipscomb, Loving, Lubbock, Lynn, Martin, McCulloch, Midland, Mills, Mitchell, Montague, Moore, Motley, Nolan, Ochiltree, Oldham, Palo Pinto, Parker, Parmer, Pecos, Potter, Randall, Roberts, Rockwall, Runnels, San Saba, Scurry, Shackelford, Sherman, Somervell, Stephens, Sterling, Stonewall, Swisher, Tarrant, Taylor, Terrell, Terry, Throckmorton, Tom Green, Upton, Ward, Wheeler, Wichita, Wilbarger, Winkler, Wise, Yoakum and Young; and

Wyoming:    Counties of Campbell, Crook, Goshen, Laramie, Niobrara, Platte and Weston.

2.  **Hail Zone 2** means the following counties (unless otherwise stated) within the following states:

Colorado:    Counties of Denver, Douglas, El Paso, Las Animas, Otero and Pueblo;

Kansas:    Counties of Allen, Anderson, Atchison, Bourbon, Brown, Chase, Chautauqua, Cherokee, Clay, Cloud, Coffey, Crawford, Douglas, Elk, Franklin, Geary, Greenwood, Jackson, Jefferson, Johnson, Labette, Leavenworth, Linn, Lyon, Marshall, Miami, Montgomery, Morris, Nemaha, Neosho, Osage, Pottawatomie, Republic, Riley, Shawnee, Wabaunsee, Washington, Wilson, Woodson and Wyandotte;

Missouri:    Counties of Andrew, Atchison, Barry, Barton, Bates, Benton, Buchanan, Camden, Cass, Cedar, Christian, Clay, Clinton, Crawford, Dade, Dallas, Dekalb, Dent, Douglas, Franklin, Gasconade, Greene, Henry, Hickory, Holt, Howell, Jackson, Jasper, Jefferson, Johnson, Laclede, Lafayette, Lawrence, Lincoln, Maries, McDonald, Newton, Nodaway, Oregon, Osage, Ozark, Phelps, Platte, Polk, Pulaski, Ray, Shannon, St. Charles, St. Clair, St. Louis, Stone, Taney, Texas, Vernon, Warren, Washington, Webster and Wright; and the City of St. Louis;

Nebraska:    Counties of Adams, Antelope, Boone, Boyd, Burt, Butler, Cass, Cedar, Clay, Colfax, Cuming, Dodge, Douglas, Fillmore, Gage, Garfield, Greeley, Hall, Hamilton, Holt, Howard, Jefferson, Johnson, Keya Paha, Knox, Lancaster, Madison, Merrick, Nance, Nemaha, Nuckolls, Otoe, Pawnee, Pierce, Platte, Polk, Richardson, Saline, Sarpy, Saunders, Seward, Stanton, Thayer, Thurston, Washington, Wayne, Webster, Wheeler and York;

New Mexico:    Counties of Colfax, De Baca, Guadalupe, Harding, Lincoln, San Miguel and Union;

Oklahoma:    Counties of Adair, Atoka, Bryan, Cherokee, Choctaw, Coal, Craig, Creek, Delaware, Haskell, Hughes, Johnston, Latimer, Le Flore, Mayes, McCurtain, McIntosh, Muskogee, Nowata, Okfuskee, Okmulgee, Ottawa, Pittsburg, Pontotoc, Pushmataha, Rogers, Seminole, Sequoyah, Tulsa, Wagoner and Washington;

South Dakota: Counties of Aurora, Beadle, Bon Homme, Brookings, Brown, Brule, Buffalo, Campbell, Charles Mix, Clark, Clay, Codington, Corson, Davison, Day, Deuel, Dewey, Douglas, Edmunds, Faulk, Gregory, Hamlin, Hand, Hanson, Hughes, Hutchinson, Hyde, Jerauld, Jones, Kingsbury, Lake, Lincoln, Lyman, Marshall, McCook, McPherson, Mellette, Miner, Minnehaha, Moody, Potter, Sanborn, Spink, Stanley, Sully, Tripp, Turner, Union, Walworth and Yankton;

Texas:    Counties of Anderson, Bandera, Bell, Bexar, Blanco, Bowie, Burnet, Camp, Cass, Cherokee, Comal, Coryell, Crockett, Culberson, Delta, Edwards, Falls, Fannin, Franklin, Freestone, Gillespie, Gregg, Harrison, Hays, Henderson, Hopkins, Hunt, Irion, Jeff Davis, Kaufman, Kendall, Kerr, Kimble, Kinney, Lamar, Limestone, Llano, Marion, Mason, Maverick, McLennan, Medina, Menard, Morris, Navarro, Panola, Presidio, Rains, Reagan, Real, Red River, Reeves, Rusk, Schleicher, Smith, Sutton, Titus, Travis, Upshur, Uvalde, Val Verde, Van Zandt, Williamson, Wood and Zavala; and

Wyoming:    Counties of Albany, Converse, Johnson and Sheridan.

V.  **Insured Location(s)** means:

1.  The location(s) within the **Coverage Territory** described in the most recent Statement of Values on file with the Company, **Miscellaneous Unnamed Locations** and locations as covered by the ERRORS OR OMISSIONS and NEWLY ACQUIRED PROPERTIES Additional Coverages;

2.  Unless otherwise set forth in the Statement of Values, each such **Insured Location(s)** shall be comprised of any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear land space or open waterways, each not less than fifty (50) feet wide.  Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

W.  **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1.  Water or other substances discharged from within any part of the **Fire Protection Equipment** for the **Insured Location** or for any adjoining locations; and/or

2.  Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include:

1.  Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 30 of 35 |
| --- | --- | --- |

2.  Any underground water mains or appurtenances located outside of the **Insured Location** and forming a part of the public water distribution system; or

3.  Any pond or reservoir in which the water is impounded by a dam.

X.  **Magnetic Damage to Electronic Data and Media** means the **Corruption, Erasure or Alteration** of **Electronic Data and Media** through magnetism of any kind or description from any source.

Y.  **Malicious Code** means a corrupting or a harmful piece of code which infiltrates computer hardware, software or any components thereof.

Z.  **Miscellaneous Unnamed Location(s)** means a location(s) in the **Coverage Territory** that has not been included in the most recent Statement of Values on file with the Company and has not been reported to the Company as may be required in the **Policy** provisions elsewhere. Such locations shall be comprised as set forth in Subparagraph **W.2.** of the POLICY DEFINITIONS Section of this **Policy**.

AA.  **Named Storm** means a storm that, at any time, has been declared by the United States National Weather Service to be a Hurricane, Typhoon, Tropical Cyclone, Tropical Storm or Tropical Depression, including any status or designation change with respect to such storm.

BB.  **Occurrence** means any one accident, loss, disaster, casualty, incident or series of accidents, losses, disasters, casualties or incidents, including all resultant or concomitant insured losses, not otherwise excluded by this **Policy** and with respect to:

1.  **Terrorism** (to the extent **Terrorism** is covered), arises out of the same or related purpose or cause; or

2.  Covered perils other than **Terrorism**, arises out of a single event or originating cause.

The **Occurrence** must occur during the Policy Period.

When the term applies to loss or losses from the perils of **Windstorm or Hail**; **Named Storm**; **Riot, Strike or Civil Commotion**; **Vandalism and Malicious Mischief**; **Earth Movement**; **Flood** or **Terrorism**, to the extent any such peril(s) are covered, all losses arising from such peril(s) occurring during a continuous period of seventy-two (72) hours shall be deemed to be a single **Occurrence**. The Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Insured Property, but no two such 72 hour periods shall overlap.

If the **Occurrence** commences during the Policy Period, then the Company shall treat the entire **Occurrence** as occurring during the Policy Period.

CC.  **Outdoor Property** means outdoor: (i) lawns (including fairways, greens and tees), trees, shrubs, plants; and (ii) walkways, roadways, patios or other paved surfaces, including the fill beneath such paved surfaces.

DD.  **Perishable Goods** means personal property: (i) maintained under controlled conditions for its preservation; and (ii) susceptible to loss or damage if the controlled conditions are not maintained.

EE.  **Policy** means the policy, the Policy Declarations and any extensions or endorsements hereto.

FF.  **Policy Limit** means the limit of liability shown in Item **6.** of the Policy Declarations.

| PR8371 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 31 of 35 |

GG. **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances  listed in applicable environmental state, federal or foreign law or regulation, or as designated by the U.S. Environmental Protection Agency or similar applicable state or foreign governmental authority. Waste includes materials to be recycled, reconditioned or reclaimed.  **Pollutants or Contaminants** does not include **Fungus, Mold or Spore**.

HH. **Raw Materials** means materials and supplies in the state in which the Insured receives them for conversion by the Insured into **Finished Goods**.

II. **Riot, Strike or Civil Commotion** means riot or civil commotion including, but not limited to:

1. Acts of striking employees while occupying an **Insured Location**; and

2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

JJ. **Smoke** means loss or damage ensuing from a sudden and accidental release of smoke.  The peril of **Smoke** does not include loss or damage caused by smoke from agricultural smudging or industrial operations.

KK. **Soft Costs** means the reasonable and necessary:

1. Amount of actual interim or construction financing interest, including loan fees and other one-time charges incurred to negotiate a new construction loan and/or extend the existing one;

2. Real estate taxes and ground rent, if any;

3. Advertising and promotional expenses;

4. Cost of additional commissions;

5. Fees for architects, surveyors, legal services, consulting engineers or other fees not otherwise covered under this **Policy**;

6. Project administration expense, but not including development fees; and

7. Insurance premiums.

LL. **Terrorism** means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

1. A government;

2. The civilian population of a country, state or community; or

3. Disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002, and any revisions, reauthorizations or amendments thereto is in effect (the "Act"), **Terrorism** includes a certified act of terrorism defined by Section 102. Definitions of the Act.

MM. **Tier 1 High Hazard Wind Zone (Consisting of Texas to North Carolina, Hawaii, Puerto Rico and U.S. Virgin Islands)** means the following counties (unless otherwise stated) within the following states or territories:

| | |
|---|---|
| <u>Alabama:</u> | Counties of Baldwin and Mobile; |
| <u>Georgia:</u> | Counties of Bryan, Camden, Chatham, Glynn, Liberty and McIntosh; |
| <u>Hawaii:</u> | Entire State; |
| <u>Louisiana:</u> | Parishes of Assumption, Calcasieu, Cameron, Iberia, Jefferson, Lafourche, Livingston, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John the Baptist, St. Martin (South), St. Mary, St. Tammany, Tangipahoa, Terrebonne and Vermilion; |
| <u>Mississippi:</u> | Counties of Hancock, Harrison and Jackson; |
| <u>North Carolina:</u> | Counties of Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell and Washington; |
| <u>Puerto Rico:</u> | Entire Territory; |
| <u>South Carolina:</u> | Counties of Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry and Jasper; |
| <u>Texas:</u> | Counties of Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Liberty, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria and Willacy; and |
| <u>U.S. Virgin Islands:</u> | Entire territory, including St. Croix, St. John and St. Thomas. |

NN. **Tier 1 High Hazard Wind Zone (Consisting of Virginia to Maine)** means the following counties (unless otherwise stated) within the following states:

| | |
|---|---|
| <u>Connecticut:</u> | Counties of Fairfield, Middlesex, New Haven and New London; |
| <u>Delaware:</u> | County of Sussex; |
| <u>Maine:</u> | Counties of Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington and York; |
| <u>Maryland:</u> | Counties of Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico and Worcester; |
| <u>Massachusetts:</u> | Counties of Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth and Suffolk; |
| <u>New Hampshire:</u> | Counties of Rockingham and Strafford; |

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 33 of 35 |
|---|---|---|

New Jersey: Counties of Atlantic, Bergen, Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean and Union;

New York: Counties of Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk and Westchester;

Rhode Island: Counties of Bristol, Kent, Newport, Providence and Washington; and

Virginia: Counties of Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Prince George, Surry, Sussex, York and Westmoreland; and

Independent Cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Suffolk, Virginia Beach and Williamsburg.

OO. **Tier 1 High Hazard Wind Zone (Florida)** means the entire state of Florida.

PP. **Tier 2 High Hazard Wind Zone** means the following counties (unless otherwise stated) within the following states:

Georgia: Counties of Brantley, Charlton, Effingham, Long and Wayne;

Louisiana: Parishes of Acadia, Ascension, East Baton Rouge, Iberville, Jefferson Davis, Lafayette, St. Martin (North), Washington and West Baton Rouge;

Mississippi: Counties of George, Pearl River and Stone;

North Carolina: Counties of Bladen, Duplin, Gates, Hertford, Lenoir, Martin and Pitt;

South Carolina: Counties of Florence, Marion and Williamsburg; and

Texas: Counties of Bee, Brooks, Fort Bend, Goliad, Hardin, Hidalgo, Jasper, Jim Wells and Wharton.

QQ. **Unauthorized Access** means the gaining of access to computer hardware, software or any components thereof by an unauthorized person.

RR. **Unauthorized Use** means the use of computer hardware, software or any components thereof by any person in an unauthorized manner.

SS. **Valuable Papers and Records** means documents that are written, printed or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2. Legal and financial agreements such as deeds and mortgages;

3. Addressograph plates; and

4. Any data stored on printouts or punched cards.

**Valuable Papers and Records** does not include money and securities, **Fine Arts** or **Electronic Data and Media**.

| PR8371 (01/18) | ©American International Group, Inc.<br>All Rights Reserved. | Page 34 of 35 |
|---|---|---|

TT.  **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, Insured Property.  **Vandalism and Malicious Mischief** does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

UU.  **Windstorm or Hail** means the direct action of wind or the direct action of **Hail**, whether accompanied by wind or not. However, **Windstorm or Hail** does not mean:

1.  Loss or damage caused by or resulting from frost or cold weather, ice (other than **Hail**), snow or sleet, whether driven by wind or not;

2.  Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand, or dust, whether driven by wind or not, unless the building or structure first sustains wind or **Hail** damage to its roof or walls through which the rain, snow, sand or dust enters; or

3.  Loss or damage caused when the weight of snow, rainwater, ice or sleet is a contributing factor to the fall or **Collapse** of a building or structure or any part thereof, whether driven by wind or not.

**ENDORSEMENT #001**

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## FEDERAL SHARE OF COMPENSATION UNDER TRIA AND CAP ON LOSSES ENDORSEMENT

This endorsement modifies insurance provided by this Policy:

### DISCLOSURE

You should know that where coverage is provided by this Policy for losses resulting from "Certified Acts of Terrorism" (as defined by Section 102 (1) of United States Terrorism Risk Insurance Act), such losses may be partially reimbursed by the United States Government under a formula established by federal law.  However, your Policy may contain other exclusions which might affect your coverage such as, an exclusion for nuclear events.  Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning January 1, 2018; 81% beginning January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "Certified Acts of Terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion in a calendar year and if we have met our insurer deductible, we are not liable for the payment of any portion of the amount of such losses that exceeds $100 billion; and for aggregate insured losses up to $100 billion, we will only pay a pro rata share of such insured losses as determined by the Secretary of the Treasury.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| 125595 (03/17) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #002</u>

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## TERRORISM COVERAGE ENDORSEMENT (EXCLUDING BIOLOGICAL AND/OR CHEMICAL TERRORISM)

This endorsement modifies insurance provided by the policy:

Notwithstanding anything to the contrary in this **Policy**, **Terrorism** which causes direct physical loss or damage to property is covered under this **Policy**.

However, this **Policy** does not cover loss or damage caused directly or indirectly by **Biological and/or Chemical Terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other event, cause, or peril. Such loss or damage is excluded regardless of any other event, cause, or peril contributing concurrently or in any sequence to the loss or damage.

The following definitions apply to this policy:

1. **Biological and/or Chemical Terrorism** means the dispersal, discharge, or release of pathogenic, toxic, poisonous, or damaging biological or chemical agents or substances in an act(s) of **Terrorism**.

2. **Terrorism** has the meaning set forth in this **Policy**.

All other terms and conditions of the policy remain the same.

_____
Authorized Representative

| PR8543 (01/18) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #003</u>

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## TERRORISM EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

This insurance does not cover loss or damage caused directly or indirectly by **terrorism** whether controlled or uncontrolled, proximate or remote, sudden or over any length of time, or which is contributed to or aggravated by any other cause or event.  Such **terrorism** is excluded regardless of any other cause or event occurring concurrently or in any sequence with such **terrorism**.

As used herein, **terrorism** means the use or threatened use of force or violence against a person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

    j.   A government;

    k.   The civilian population of a country, state or community; or

    l.   Disrupt the economy of a country, state or community.

So long as the Terrorism Risk Insurance Act of 2002, and any revisions or amendments thereto is in effect (the "Act"), **terrorism** includes a certified act of terrorism defined by Section 102. Definitions of the Act.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| PR4266 (12/14) | ©American International Group, Inc.<br>All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #004</u>

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## WAR AND TERRORISM EXCLUSION ENDORSEMENT
**(Applies to locations outside the United States of America, its territories and possessions)**

This endorsement modifies insurance provided by the Policy:

Notwithstanding any provision to the  contrary within this insurance or  any endorsement thereto, it is agreed that this insurance excludes loss, damage, cost or expense  of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

1.  War, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.  Any act of terrorism.

    For the purpose of this endorsement an act of terrorism means an act including, but not limited to, the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1. and/or 2. above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| NMA2918 (08/01) LX8569 | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |
| --- | --- | --- |

## ENDORSEMENT #005

**This endorsement, effective 12:01 A.M., 06/01/2019**
Forms a part of Policy No.: 011144836
Issued to: BAYSHORE RECYCLING CORP.
By: LEXINGTON INSURANCE COMPANY

## ELECTRONIC DATA ENDORSEMENT A

**1.    Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

a) This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorised instructions or code including a set of maliciously introduced unauthorised instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b) However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils: Fire, Explosion

**2.    Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed $100,000 any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

_____
Authorized Representative

| NMA2914 (01/01) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #006</u>

This endorsement, effective 12:01 A.M., 06/01/2019
Forms a part of Policy No.: 011144836
Issued to: BAYSHORE RECYCLING CORP.
By: LEXINGTON INSURANCE COMPANY
## EQUIPMENT BREAKDOWN EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

Notwithstanding any provision to the contrary within this Policy or any endorsement thereto it is agreed that this Policy excludes loss, damage, cost or expense of whatsoever nature caused by, resulting from or in connection with any of the following:

1.    Electrical injury or disturbance to electrical appliances, devices, or wiring caused by artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances, or wires.

2.    Mechanical breakdown, including rupture or bursting caused by centrifugal force.

3.    Explosion, rupture, or bursting of steam boilers, steam pipes, steam engines, or steam turbines owned or leased by the Insured, or operated under the control of the Insured.

4.    Any condition or event inside any steam boilers, steam pipes, steam engines, or steam turbines that causes loss or damage to such equipment.

5.    Any condition or event inside any hot water boilers or other water heating equipment that causes loss or damage to such boilers or equipment.

However, if direct physical loss or damage not otherwise excluded by this Policy ensues from any of the excluded causes of loss enumerated in Paragraphs 1 - 5 above, the Company shall cover only such ensuing loss or damage.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| PR4419 (10/15) | ©American International Group, Inc. All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #007</u>

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## ANTI-STACKING ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

The following condition is added to the policy:

If this insurance and any other insurance issued to the Insured by the Company or any entity that the Company controls, is controlled by or is under common control with applies to the same loss, claim, suit, occurrence or accident, whichever is applicable, then:

1.    The maximum limit of liability, or

2.    The maximum sublimit of liability with respect to a specific coverage or specific Covered Cause of Loss or peril;

under all insurance available from the above entities in the aggregate will not exceed the highest applicable limit of liability or highest applicable sublimit of liability available under any one policy.

However, this condition does not apply to any other insurance issued to the Insured by the Company or any entity that the Company controls, is controlled by or is under common control with which is specifically written to be primary to, in excess of, or quota share with the policy to which this endorsement is attached.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| PR4259 (07/14) | ©American International Group, Inc.<br>All Rights Reserved. | Page 1 of 1 |
|---|---|---|

<u>ENDORSEMENT #008</u>

**This endorsement, effective 12:01 A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## MOLD / FUNGUS EXCLUSION
## (with direct result of covered loss exception)

This endorsement modifies insurance provided by the Policy:

In consideration of the premium charged, it is hereby understood and agreed that this Policy is amended as follows.

The Company shall not be liable for any loss or damage in the form of, caused by, arising out of, contributed to, or resulting from fungus, mold(s), mildew or yeast; or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast;

    (a)  fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms;

    (b)  mold(s) includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s);

    I   spores means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms,

regardless of any other cause or event that contributes concurrently or in any sequence to such loss.

This exclusion shall not apply to any loss or damage in the form of, caused by, contributed to or resulting from fungus, mold(s), mildew or yeast, or any spores or toxins created or produced by or emanating from such fungus, mold(s), mildew or yeast which the Insured establishes is a direct result of a Covered Loss not otherwise excluded by the Policy, provided that such fungus, mold(s), mildew or yeast loss or damage is reported to the Company within twelve months from the expiration date of the Policy.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

| PR8530 (08/09) | ©American International Group, Inc.<br>All Rights Reserved. | Page 1 of 1 |
|---|---|---|

ENDORSEMENT #009

**This endorsement, effective 12:01A.M., 06/01/2019**
**Forms a part of Policy No.: 011144836**
**Issued to: BAYSHORE RECYCLING CORP.**
**By: LEXINGTON INSURANCE COMPANY**

## GENERAL CHANGE ENDORSEMENT
## TO LEXINGTON COMMERCIAL PROPERTY POLICY
## FORM PR8371 (Ed. 01/18)

**NOTE:  Terms that are bolded in this General Change Endorsement are defined in the Policy or this Endorsement.**

This endorsement modifies insurance provided by the Policy as follows:

1. **REWARD REIMBURSEMENT**

   The following shall be added to SECTION V - ADDITIONAL COVERAGES:

   REWARD REIMBURSEMENT

   The Company will cover reasonable payment of any reward offered by the Insured or on the Insured's behalf for information that leads to conviction of the perpetrator(s) of arson or theft to Insured Property.

   Regardless of the number of informants, the Company's total liability with respect to this coverage for any one **Occurrence** will not exceed the lesser of the Sublimit of Liability of $25,000.

2. **LOCKS AND KEYS REPLACEMENT**

   The following is added to SECTION V - ADDITIONAL COVERAGES:

   LOCKS AND KEYS REPLACEMENT

   The Company will pay reasonable and necessary expenses incurred by the Insured for replacing or reprogramming the Insured's locks and keys resulting from direct physical loss or damage to such locks and keys by a **Covered Cause of Loss**. Coverage includes the actual cost to replace, adjust or reprogram undamaged locks to accept new keys or entry codes.

   The Company's total liability with respect to this coverage for any one **Occurrence** will not exceed the Sublimit of Liability of $25,000.

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

**MANUSCRIPT**                    ©**American International Group, Inc.**                    Page 1 of 1
**All Rights Reserved.**

**ENDORSEMENT #010**

**This endorsement, effective 12:01 AM**, 06/01/2019
**Forms a part of Policy No.:** 011144836
**Issued to:** BAYSHORE RECYCLING CORP.
**By:** LEXINGTON INSURANCE COMPANY

## AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided by the Policy:

In consideration of the premium charged at inception, is its understood and agreed that the Outdoor Property Sublimit is amended to read as follows:

Outdoor Property:  $50,000, $5,000 per plant

All other terms and conditions of the Policy remain the same.

_____
Authorized Representative

©American International Group, Inc.
All Rights Reserved.