# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYSHORE RECYCLING CORPORATION,<br><br>                      Plaintiff,<br><br>v.<br><br>HALLMARK SPECIALTY INSURANCE COMPANY and NFP PROPERTY & CASUALTY SERVICES, INC.,<br><br>                      Defendants. | Civil Action No.:<br>2:23-cv-03047 (EP) (JBC)<br><br><br>**Motion Date:**<br>**December 18, 2023** |

---

## MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF BAYSHORE RECYCLYING CORPORATION IN OPPOSITION TO DEFENDANT NFP PROPERTY & CASUALTY SERVICES, INC.'S MOTION TO DISMISS

---

**ANDERSON KILL P.C.**
John P. Lacey Jr.
Finley T. Harckham
(admitted *Pro Hac Vice*)
One Gateway Center, Suite 1510
Newark, NJ  07102
973-642-5858

*Attorneys for Plaintiff*
*Bayshore Recycling Corporation*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKGROUND ............................................................................. 3

LEGAL ARGUMENT ..................................................................................... 5

I.      STANDARDS OF REVIEW ................................................................... 5

     A.      Legal Standard Under Rule 12(b)(1) of the Federal Rules
        of Civil Procedure ................................................................. 5

     B.      Legal Standard Under Rule 12(b)(6) of the Federal Rules
        of Civil Procedure ................................................................. 6

II.     BAYSHORE'S CLAIMS AGAINST NFP ARE RIPE AND
     WITHSTAND NFP'S SUPERFICIAL ATTACK PURSUANT
     TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL
     PROCEDURE. ........................................................................... 6

III.    BAYSHORE'S COMPLAINT ASSERTS FOUR DISCRETE
     CAUSES OF ACTION AGAINST NFP, WHICH ARE
     SUPPORTED BY FACTUAL ALLEGATIONS THAT ARE
     SUFFICIENT TO WITHSTAND NFP'S SUPERFICIAL
     ATTACK PURSUANT TO RULE 12(b)(6) OF THE
     FEDERAL RULES OF CIVIL PROCEDURE. ........................................ 12

     A.      NFP's Attempt to Dispose of Bayshore's Breach of
        Contract Claim Fails. ........................................................... 12

     B.      NFP's Attempt to Dispose of Bayshore's Negligence
        Claim Likewise Fails. .......................................................... 16

          1.      Bayshore's Negligence Claim is Separate and
             Distinct and Stands on Its Own Merits. ................................. 17

          2.      NFP's "Cognizable Duty" Argument is
             Disingenuous and, In Any Event, Fails. ................................. 19

i

# TABLE OF CONTENTS
## *(continued)*

**Page**

       3.     NFP's Reliance on the Economic Loss Doctrine is Misplaced. ............................................................... 21

       4.     Bayshore's Complaint Sufficiently Sets Forth a Negligence Claim Against NFP. ............................................ 22

    C.     NFP's Attempt to Dispose of Bayshore's Breach of Fiduciary Claim Fails....................................................... 23

    D.     NFP's Attempt to Dispose of Bayshore's Professional Malpractice Claim Likewise Fails.................................... 27

IV.    EVEN IF BAYSHORE'S CLAIMS, AS PLED, ARE INSUFFICIENT, THIS COURT SHOULD GRANT BAYSHORE LEAVE TO AMEND ITS COMPLAINT. .......................... 29

CONCLUSION ................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aden v. Fortsh*,
   776 A.2d 792 (N.J. 2001) ................................................................25

*Arc Fam., LLC v. Ralph Parnes Associates, Inc*.,
   No. A-5411-05T2, 2008 WL 1820799 (N.J. Super. App. Div. Apr.
   24, 2008) .........................................................................................21

*Arcand v. Brother Int'l Corp*.,
   673 F.Supp.2d 282 (D.N.J. 2009) ...................................................21

*Artway v. Attorney General of N.J.*,
   81 F.3d 1235 (3d Cir.1996) .............................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................6, 30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................6, 30

*Bell v. Hood*,
   327 U.S. 678, 66 S. Ct. 773 (1946) ..................................................5

*C.C. Forbes, LLC v. Axis Surplus Ins. Co*.,
   No. 2:16-CV-94, 2016 WL 10706290 (S.D. Tex. May 31, 2016)......9

*Call v. Czaplicki*,
   No. 09-cv-6561, 2010 WL 3001395 (D.N.J. July 28, 2010) ............25

*Canusa Corp. v. Owens Group LTD., Inc.*,
   No. CV1609081KMJBC, 2019 WL 6910172 (D.N.J. Dec. 19,
   2019) ..........................................................................................23, 24

*Caputo v. Nice-Pak Products, Inc.*,
   693 A.2d 494 (N.J. Super App. Div. 1997) .......................................7

## TABLE OF AUTHORITIES

### *(continued)*

**Page(s)**

*In re Campbell Soup Co. Securities Litig.*,
  CV 18-14385 (NLH/JS), 2020 WL 7022655 (D.N.J. Nov. 30,
  2020) .......................................................................................................30

*F.G. v. MacDonell*,
  696 A.2d 697 (N.J. 1997).......................................................................25

*Fabbro v. DRX Urgent Care, LLC*,
  616 F. App'x 485 (3d Cir. 2015)...................................................... 15, 16

*Fink v. Bishop*,
  Civil No. 21-00063, 2021 WL 3616157 (D.N.J. Aug. 16, 2021) .....................17

*Fink v. Kirchner*,
  No. 12-cv-4125, 2013 WL 1952303 (D.N.J. May 8, 2013) ...........................25

*Flaherty-Wiebel v. Morris, Downing & Sherred*,
  384 Fed. Appx. 173 (3d Cir. 2010) (unpublished)............................................16

*Fowler v. UPMC Shadyside*,
  578 F. 3d 203 (3d Cir. 2009)......................................................................6

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007).....................................................................16

*Garcia v. Correctional Medical Service, Inc.*,
  No. 13-cv-1250, 2016 WL 7377103 (D.N.J. Dec. 20, 2016) ...........................17

*Gould Elecs., Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000)......................................................................5

*Grayson v. Mayview State Hosp.*,
  293 F.3d 103 (3d Cir.2002).......................................................................30

*Hedges v. United States*,
  404 F.3d 744 ...............................................................................................6

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*,
  59 A.3d 561 (N.J. 2013)...........................................................................18

## TABLE OF AUTHORITIES

### *(continued)*

**Page(s)**

*Kuzian v. Electrolux Home Products, Inc.*,
  937 F. Supp. 2d 599 (D.N.J. 2013) .....................................................7

*Kyle-Labell v. Selective Serv. Sys.*,
  364 F. Supp. 3d 394 (D.N.J. 2019) .....................................................5

*Lukoil N.A. LLC v. Turnersville Petroleum Inc.*,
  No. CIV.A. 14-3810 RMB, 2015 WL 5455648 (D.N.J. Sept. 16,
  2015) ...........................................................................................13

*Lunderstadt v. Colafella*,
  885 F.2d 66 (3d Cir. 1989) .................................................................5

*Magi v, Rich*,
  No. CV208881ZNQRLS, 2023 WL 1363375 (D.N.J. Jan. 31,
  2023) .....................................................................................29, 30

*Massarsky v. Gen. Motors Corp.*,
  706 F.2d 111 (3d Cir. 1983) ..............................................................30

*Murphy v. Implicito*,
  920 A.2d 678 (N.J. Super. App. Div. 2007) .........................................13

*Nova Cas. Co. v. Guzman*,
  No. 3:20-CV-3440-B, 2021 WL 2014898 (N.D. Tex. May 20,
  2021) .............................................................................................9

*Packard-Bamberger & Co., Inc. v. Collier*,
  771 A.2d 1194 (N.J. 2001) ................................................................25

*Phillips v. Cty. of Allegheny* ,
  515 F.3d 224 (3d Cir. 2008) ..............................................................25

*Resintech, Inc. v. AIG Specialty Insurance Company, et al.*,
  Civil Action No. 1:21-cv-19843-KMW-AMD, ..................................10

*Rider v. Lynch*,
  201 A.2d 561 (N.J. 1964) ............................................................21, 22

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

*Robinson v. Vivirito*,
 86 A.3d 119 (N.J. 2014) ................................................................................ 18

*Saltiel v. GSI Consultants, Inc.*,
 788 A.2d 268 (N.J. 2002) ....................................................................... 21, 22

*Shane v. Fauver*,
 213 F.3d 113 (3d Cir. 2000) ....................................................................... 30

*Skypala v. Mortgage Electronic Registration Systems, Inc*,
 655 F. Supp. 2d 451 (D.N.J. 2009) ............................................................ 15

*SOME, Inc. v. Hanover Ins. Co.*,
 No. CV 21-493 (BAH), 2021 WL 2935893 (D.D.C. July 13, 2021) ......... 8, 9, 12

*Sullivan v. Jefferson, Jefferson & Vaida*,
 400 A.2d 836 (N.J. Super. App. Div. 1979) ............................................. 24

*Texas v. U.S.*,
 523 U.S. 296 (1998) ..................................................................................... 11

*Triarsi v. BSC Group Services*,
 27 A.3d 202 (N.J. Super. App. Div. 2011) ................................................ 27

*United of Omaha Life Ins. Co. v. Womack-Rodriguez*,
 461 F. Supp. 3d 455 (W.D. Tex. 2020) ....................................................... 9

*Wachovia Ins. Services, Inc. v. Toomey*,
 994 So.2d 980 (Fla. 2008) .......................................................................... 24

*Wakefern Food Corp., et al. v. Lexington Ins. Co., et al.*,
 Docket No. MID-L-6483-13 (N.J. Super. Ct. June 28, 2018) ................ 17, 18

*Warren County Vocational School v. Brown*,
 2007 WL 1498972 (N.J. App. Div. May 24, 2007) ................................... 24

**Other Authorities**

N.J.A.C. 11:17 A-4.10 .................................................................................. 25

Fed. R. Civ. P. 8(a)(2) ................................................................................... 6

# TABLE OF AUTHORITIES
## *(continued)*

**Page(s)**

Fed. R. Civ. P. 8(d)(2)..................................................................................7

Fed. R. Civ. P. 8(d)(3)..................................................................................7

Fed R. Civ. P. 12(b)(1)...........................................................................5, 6

Rule R. Civ. P. 12(b)(6)....................................................................6, 12, 18

Fed. R. Civ. P. 15.......................................................................................30

Plaintiff, Bayshore Recycling Corporation ("Bayshore"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant NFP Property & Casualty Services, Inc.'s ("NFP") Motion to Dismiss (the "Motion").

## PRELIMINARY STATEMENT

This case boils down to one fundamental question: who is liable to Bayshore, Hallmark or NFP? Hallmark has denied Bayshore coverage in connection with a fire at Bayshore's recycling facility. Hallmark's denial of coverage stems from NFP's submission of Bayshore's statement of values while procuring the Hallmark policy. Hallmark contends the statement of values limits Bayshore's business income coverage on a per-building basis and that Bayshore is not entitled to recover the full $5,000,000 limit under the Hallmark policy. As a result of either NFP's failure to procure the requested coverage or Hallmark's wrongful denial of coverage, Bayshore has suffered a concrete harm, pled alternative theories of liability, and seeks redress against both Hallmark and NFP.

Despite this, NFP has moved to dismiss Bayshore's Complaint, arguing Bayshore's claims are not ripe and, alternatively, fail to state a claim upon which relief can be granted. Both arguments are meritless.

NFP's ripeness argument rests on the erroneous notion that Bayshore's claims against NFP are contingent upon the resolution of Bayshore's claims

against Hallmark.  NFP's argument is baseless and illogical.  Bayshore could have sued just NFP in the first instance and then, if it did not prevail, sue Hallmark. Bayshore has not done so, for the same reason it should not be required to first sue Hallmark – because it could needlessly result in potentially two litigations involving the same witnesses, documentary evidence, and damages, which could result in inconsistent factual determinations and judgments.

NFP also ignores that Bayshore has suffered a concrete injury – the unreimbursed loss of income following a fire at its recycling facility.  That loss resulted either from NFP's failure to procure the requested coverage or Hallmark's breach of contract under the Hallmark policy.  Bayshore has alleged damages resulting from NFP's conduct; consequently, Bayshore's claims are ripe.  That Bayshore pled claims in the alternative against two different parties does not render Bayshore's claims unripe.  Thus, NFP's ripeness argument fails.

NFP's effort to dispose of Bayshore's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure likewise fails.  Bayshore's Complaint asserts four separate causes of action, which are discrete claims that stand on their own merits.  Each cause of action is supported by sufficient factual allegations, which plausibly state claims upon which relief can be granted.  NFP's arguments to the contrary, including its reliance on the economic loss doctrine, are unavailing.  The

economic loss doctrine has no application to this case whatsoever because the duties NFP owed to Bayshore are separate and apart from those in any contract.

Accordingly, NFP's Motion fails and should be denied.

## FACTUAL BACKGROUND

This is an insurance coverage and broker malpractice action against Defendants arising out of Hallmark's breach of contract and bad faith claims handling, as well as NFP's failure to procure adequate insurance in connection with a December 16, 2019 fire (the "Fire") at Bayshore's facility. ECF No. 1, Compl. at ¶ 1. The Fire severely damaged Bayshore's facility and interrupted Bayshore's operations, resulting in millions of dollars in losses. *Id*. at ¶ 3.

Bayshore retained NFP to procure insurance for its recycling facility, including business interruption coverage that would be sufficient to cover any foreseeable loss. *Id*. at ¶¶ 55-58. Based on NFP's advice, Bayshore paid hundreds of thousands of dollars in premiums to several insurance companies for primary and excess commercial property insurance policies, covering the June 1, 2019 to June 1, 2020 policy period. *Id*. at ¶ 4. Ironshore Specialty Insurance Company ("Ironshore"), Swiss Re ("Swiss"), Lexington Insurance Company ("Lexington"), and Navigators Specialty Insurance Company ("Navigators") sold Bayshore a primary policy, in which each is responsible for a portion of a shared $10,000,000 limit of liability. Hallmark sold Bayshore an excess policy, in which Hallmark is

responsible for a $15,000,000 limit of liability that sits atop the $10,000,000 limit under Bayshore's primary policies. *Id*. The coverage thereunder includes business interruption coverage, which required the submission of a statement of values that NFP prepared and submitted to Hallmark. *Id*. at ¶¶ 6, 60.

By April 2020 – four months after the loss, Ironshore, Swiss, Lexington, and Navigators tendered their respective policy limits to Bayshore, thus, triggering Hallmark's duty to indemnify Bayshore. *Id*. at ¶ 9. However, Hallmark breached its contractual obligations by failing to indemnify Bayshore for all loss and damage it suffered as a result of the fire, including for certain physical loss, extra expenses and business interruption. *Id*. at ¶ 10. Hallmark contends it only owed Bayshore $2,500,000 in lost income stemming from damage to Bayshore's main building because the statement of values, which NFP supplied to Hallmark, limits business interruption coverage to $2,500,000 in connection with that building. *Id*. at ¶ 53.

Bayshore sued Hallmark and NFP on June 2, 2023, because of Bayshore inability to recover its full business interruption losses due either to NFP's failure to procure the necessary coverage or Hallmark's refusal to honor its contractual obligations. *Id*. at ¶¶ 13-14. Bayshore has asserted four causes of action against NFP, including: (i) Breach of Contract (Count III); (ii) Negligence (Count IV); (iii) Breach of Fiduciary Duty (Count V); and (iv) Professional Malpractice (Count VI). *Id*. at 14-17 of 18. On October 31, 2023, NFP filed this Motion seeking dismissal

of Bayshore's Complaint.  ECF No. 34.  Thus, NFP's Motion fails and should be denied.

## LEGAL ARGUMENT

### I.    STANDARDS OF REVIEW

#### A.    Legal Standard Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) may be brought as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal citation omitted).  Where, as here, a facial challenge is made, the Court must accept the allegations in the Complaint as true and "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*; *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 401 (D.N.J. 2019).  A claim should not be dismissed pursuant to Rule 12(b)(1) unless it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682, 66 S. Ct. 773 (1946).  In addition, a claim should not be dismissed "merely because the legal theory alleged is probably false." *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989) (internal citations and quotation marks omitted).  Importantly, the "threshold to withstand a motion to dismiss under

Fed.R.Civ.P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion." *Id*.

### B.    Legal Standard Under Rule 12(b)(6) of the Federal Rules of Civil Procedure

It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). Thus, a complaint survives a motion to dismiss if it contains factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notably, on a Rule 12(b)(6) motion to dismiss, "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744. 750 (3d Cir. 2005).

## II.    BAYSHORE'S CLAIMS AGAINST NFP ARE RIPE AND WITHSTAND NFP'S SUPERFICIAL ATTACK PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

NFP erroneously seeks to dismiss Bayshore's claims on the purported basis that Bayshore's claims are not ripe. NFP asserts that Bayshore's claims against it

are not ripe because those claims are contingent upon the resolution of Bayshore's claims against Hallmark.  ECF No. 34-2, NFP Br. at 9-13 of 21.  NFP's argument fails for several reasons.

*First*, NFP's position runs directly counter to New Jersey law and the Federal Rules of Civil Procedure, which make clear that Bayshore is entitled to simultaneously pursue – and bring to trial – alternative and even inconsistent theories of recovery.  *See, e.g., Kuzian v. Electrolux Home Products, Inc.*, 937 F. Supp. 2d 599, 620 (D.N.J. 2013) ("The Court recognizes that plaintiffs have pleaded alternative bases for recovery, [and] having adequately asserted their allegations under those alternative theories, they are permitted to proceed to discovery on those claims.") (citing *Caputo v. Nice-Pak Products, Inc*., 693 A.2d 494, 497 (N.J. Super. App. Div. 1997) ("Under proper instructions from the judge, the jury may decide which of the two was proved, and plaintiff will be able to recover under one of the theories.  It is only recovery under inconsistent theories that is not permitted.")); *see also* Fed. R. Civ. P. 8(d)(2) (permitting a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); Fed. R. Civ. P. 8(d)(3) (stating that a party is entitled to "state as many separate claims or defenses as it has, regardless of consistency.").

*Second*, NFP disregards the holding in *SOME, Inc. v. Hanover Ins. Co.*, No. CV 21-493 (BAH), 2021 WL 2935893 (D.D.C. July 13, 2021), which honored the principles referenced above and rejected the exact same ripeness argument NFP asserts here. There, plaintiff contracted to construct a facility providing housing and services to low-income and homeless individuals. *Id.* at *1. After noticing severe structural damage to the newly built facility, plaintiff notified Hanover, its insurance company, of the loss due to necessary repairs at the facility. *Id.* Subsequently, Hanover denied plaintiff coverage. *Id.* Plaintiff then filed suit, alleging, in four claims, that Hanover wrongfully refused to provide coverage for the loss and that its insurance broker negligently misrepresented the coverage procured for plaintiff. *Id.*

Like NFP, the broker moved to dismiss plaintiff's claim on ripeness grounds. *Id.* The broker argued plaintiff's claim against it: (i) "will not be ripe until plaintiff's claims against Hanover have been adjudicated[,]" and (ii) "rests upon contingent circumstances that may not occur as anticipated, or may not happen at all." *Id.* at *1, *3. The court rejected these arguments and denied the broker's motion "since plaintiff's alleged harm due to the denial of coverage renders the claim against [the broker] as ripe as those against Hanover." *Id.* at *1. (Alterations added). In doing so, the court explained:

> Here, plaintiff has alleged damages resulting from [the broker's] tortious conduct, so the claim is ripe. . . .This conclusion does not

8

change because plaintiff may have pled claims in the alternative
against two different parties. . . . That the outcome of other claims
against a co-defendant in the same case might lessen or eliminate [the
broker's] liability is not a contingency giving rise to ripeness
concerns. Hanover has already denied coverage. Plaintiff need not
delay and separately litigate its claims against [the broker] based on
the mere possibility that it might prevail against another party. . . .
Plaintiff's claim against [the broker] is a straightforward claim in the
alternative, reliant on no contingencies giving rise to ripeness
concerns, and [the broker's] motion to dismiss is without merit.

*Id*. at *4-5 (alteration added).

Numerous other cases have also held the same. *See e.g.*, *Nova Cas. Co. v.
Guzman*, No. 3:20-CV-3440-B, 2021 WL 2014898, at *5 (N.D. Tex. May 20,
2021) (rejecting argument that a claimant's counterclaim against a broker was not
ripe because insurance company denied coverage, claimant suffered injury as a
result, and thus negligence claim was not premised on any contingency); *C.C.
Forbes, LLC v. Axis Surplus Ins. Co*., No. 2:16-CV-94, 2016 WL 10706290, at *2-
3 (S.D. Tex. May 31, 2016) (rejecting argument that negligence claim against
insurance agency was not ripe because it was "contingent and alternative"); *United
of Omaha Life Ins. Co. v. Womack-Rodriguez*, 461 F. Supp. 3d 455, 468-69 (W.D.
Tex. 2020) (rejecting argument that a claimant's counterclaims against insurance

agent were not ripe because they were "contingent on whether [the claimant] is deemed a proper beneficiary" under the life-insurance policy at issue).[1]

The reasoning in these cases apply with full force here.    In this case, Bayshore pleads similarly concrete alternative theories for recovery: under one alternative, NFP may not be liable if the loss from Bayshore's facility is covered under the Hallmark policy; under the other, NFP's negligence adversely affected the scope of Bayshore's insurance coverage, and NFP will be liable.    That the outcome of Bayshore's claims against a co-defendant in the same case might lessen or eliminate NFP's liability is not a contingency giving rise to ripeness concerns.    Hallmark has already denied coverage.    Thus, Bayshore has suffered a concrete harm and resultant damages either because NFP failed to procure the necessary insurance or Hallmark wrongfully denied coverage.    The fact that a final decision on the merits of Hallmark's coverage obligations has not been made does not render Bayshore's claims against NFP unripe.

Lastly, if a motion to dismiss is brought based on the ripeness doctrine, a court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Texas v. U.S.*, 523 U.S.

---

[1] Moreover, courts in this District routinely permit policyholders to simultaneously pursue claims against their insurance company and broker when, as here, there has been no adjudication regarding coverage. *See e.g.*, *Resintech, Inc. v. AIG Specialty Insurance Company, et al.*, Civil Action No. 1:21-cv-19843-KMW-AMD, ECF No. 26, in the United States District Court for the District of New Jersey.

296, 301 (1998). Here, the question before the Court – whether Bayshore has sufficiently alleged claims for broker malpractice – is purely a legal one that relates to facts that have already taken place. No additional facts will aid the Court in its inquiry. *Artway v. Attorney General of N.J.*, 81 F.3d 1235, 1249 (3d Cir.1996) ("[t]he more that the question presented is purely one of law, and the less that additional facts will aid the court in its inquiry, the more likely the issue is to be ripe, and vice-versa."). Thus, this question is ripe and fit for adjudication.

Further, a decision at this time poses no hardship for NFP. Indeed, it gives NFP additional time to prepare its defense against Bayshore's claims. Conversely, it would pose a significant hardship to Bayshore if it is required to wait. Bayshore's claims against Hallmark and NFP share a common set of facts, involve the same witnesses and documentary evidence, and concern legal issues that are inextricably intertwined. Bayshore need not delay and separately litigate its claims against NFP based on the mere possibility that it might prevail against another party. The witnesses involved in the placement or misplacement of Bayshore's insurance program are available now to answer for their actions or inactions.

In addition, a delay would be an inefficient use of judicial resources and could cause undue financial burden on Bayshore in being forced to try two separate cases. A delay could also bar Bayshore from bringing its claims against NFP by the statute of limitations, depending on how long it takes to resolve Bayshore's

claims against Hallmark. *SOME, Inc.*, 2021 WL 2935893, at *6, n.2 (noting the plaintiff would experience hardship from "delay of consideration of [its] alternative claim" because it would "risk[ ] the running of the statute of limitations on the negligence claim"). Now is the most practical time for all parties to present evidence regarding whether Hallmark's coverage position is correct, or whether NFP committed malpractice. As Bayshore's claims against NFP are fit for judicial decision and there could be hardship to Bayshore by withholding court consideration, Bayshore's claims against NFP are not subject to dismissal for being unripe.

Accordingly, NFP's Motion fails and should be denied.

## III. BAYSHORE'S COMPLAINT ASSERTS FOUR DISCRETE CAUSES OF ACTION AGAINST NFP, WHICH ARE SUPPORTED BY FACTUAL ALLEGATIONS THAT ARE SUFFICIENT TO WITHSTAND NFP'S SUPERFICIAL ATTACK PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

### A. NFP's Attempt to Dispose of Bayshore's Breach of Contract Claim Fails.

NFP erroneously argues that Bayshore's breach of contract claim should be dismissed because the Complaint fails to state the "portions" of the brokerage agreement "that were allegedly breached." ECF No. 34-2, NFP. Br. at 13 of 21. This argument fails for several reasons.

In New Jersey, a breach of contract claim simply requires that a plaintiff allege "that the parties entered into a valid contract, that the defendant failed to

perform his obligations under the contract, and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. App. Div. 2007); *see also Lukoil N.A. LLC v. Turnersville Petroleum Inc.*, No. CIV.A. 14-3810 RMB, 2015 WL 5455648, at *2 (D.N.J. Sept. 16, 2015) (denying motion to dismiss breach of contract claim, explaining that such a claim must only "contain sufficient factual matter, as accepted as true, to 'state a claim to relief that is plausible on its face.'") (alteration added and citations omitted).   There is no requirement in this District, under the notice-pleading standard, that a plaintiff, like Bayshore, set forth in its complaint a specific contract provision to withstand a motion to dismiss.   NFP's suggestion otherwise is a fallacy.

In support of its breach of contract claim, Bayshore states, *inter alia*, that: (i) "[t]he brokerage agreement between NFP and Bayshore constitutes a valid and enforceable contract[,]" (ii) "[u]nder the brokerage agreement, NFP agreed to provide brokerage services to Bayshore[,]" (iii) "NFP did not perform all of its duties consistent with the terms and conditions of its brokerage agreement with Bayshore[,]" (iv) "[b]y reason of the foregoing NFP has breached the broker agreement with Bayshore by failing, among other things, to secure adequate coverage for Bayshore in connection with the loss and damages Bayshore suffered as a result of the Fire[,]" and (v) "[a]s a result of the aforesaid breaches of contract, Bayshore has suffered damages in an amount to be proven at trial."  ECF No. 1,

Compl. at ¶¶ 79-83.  These allegations contain sufficient factual matter, which the Court must accept as true, that state a claim to relief that is plausible on its face. Thus, Bayshore's claim satisfies the notice-pleading standard and NFP's Motion should be denied.

Even if citing a contractual provision in a complaint is a requirement, Bayshore's Complaint specifically incorporates a provision of the brokerage agreement and describes NFP's breaches thereof.  In the brokerage agreement, there is a provision entitled "Services", under which NFP agreed "to provide Client the insurance brokerage and related services in accordance with the standards customarily prevailing in the insurance industry for brokers in exchange for the compensation set forth herein."  *See* Certification of John P. Lacey Jr., Esq., dated December 4, 2023 ("Lacey Cert."), **Exhibit A**.  This provision is explicitly incorporated into Bayshore's Complaint.  ECF No. 1, Compl. at ¶ 80.  By failing to provide these services in accordance with the standards customarily prevailing in the industry for brokers, NFP breached the brokerage agreement.  *Id*. at ¶¶ 54-59, 61-63, 79-83.  That Bayshore did not cite this provision, and instead incorporated it into its Complaint, is of no moment.  NFP's argument is meritless.

Lastly, NFP relies on several cases to support its argument that Bayshore's breach of contract should be dismissed.  However, each of these cases are distinguishable and have no application to this case whatsoever.  For example, in

*Skypala v. Mortgage Electronic Registration Systems, Inc*., the Court did not dismiss plaintiff's breach of contract claim for merely failing to identify a provision in a contract that was allegedly breached.  655 F. Supp. 2d 451, 454 (D.N.J. 2009).  Rather, the Court dismissed the breach of contract claim because it could not discern from the pleading what amounts may have been overcharged, which was the basis for the alleged breach.  In other words, the pleading lacked sufficient factual information to support the breach of contract claim.  Bayshore, on the other hand, has pled sufficient factual information to support its breach of contract claim.  Thus, *Skypala* is inapposite.

NFP's reliance on *Fabbro v. DRX Urgent Care, LLC*, 616 F. App'x 485 (3d Cir. 2015) is similarly misplaced.  NFP paints this case as one that requires parties to identify specific provisions in their pleading to sufficiently state a breach of contract claim.  ECF No. 34-2, NFP Br. at 14 of 21.  Yet, nowhere in *Fabbro* does the Third Circuit so hold.  The Third Circuit affirmed the dismissal of plaintiff's breach of contract claim because plaintiff failed to articulate sufficient facts to support the claim, not because he failed to identify a specific provision in the contract.  *Fabbro*, 616 F. App'x at 487.  As stated, Bayshore has pled sufficient facts to support its breach of contract, including by incorporating a provision in the brokerage agreement and describing NFP's breaches thereof.  Thus, *Fabbro* is inapposite.

NFP's reliance on *Flaherty-Wiebel v. Morris, Downing & Sherred*, 384 Fed. Appx. 173 (3d Cir. 2010) (unpublished) and *Frederico v. Home Depot*, 507 F.3d 188, 204 (3d Cir. 2007) is likewise unavailing.  In *Flaherty*, the Third Circuit affirmed the dismissal of the wife's breach of contract claim, and held the wife failed to identify any specific ways in which defendants breached their obligations under the contract to provide estate planning services.  *Flaherty*, 384 Fed. Appx at 178.  In *Frederico*, the Third Circuit affirmed the dismissal of plaintiff's breach of contract claim because plaintiff failed to plead sufficient facts in her complaint to support a breach of contract claim.  *Frederico*, 507 F.3d at 204.  Here, Bayshore has pled sufficient facts in its Complaint to support its breach of contract claim. Therefore, *Flaherty* and *Frederico* are inapposite.

Accordingly, NFP's attempt to dispose of Bayshore's breach of contract claim fails and should be rejected.

**B.    NFP's Attempt to Dispose of Bayshore's Negligence Claim Likewise Fails.**

NFP wrongly attempts to dispose of Bayshore's negligence claim on four grounds, claiming the professional malpractice claim subsumes the negligence claim, Bayshore's Complaint fails to state a claim because it fails to plead a cognizable duty, the negligence claim is barred by the economic loss doctrine, and the negligence claim "contains nothing but threadbare conclusory allegations." ECF No. 1, Compl. at 15-18 of 21.  Each of these arguments are meritless.

## 1.    Bayshore's Negligence Claim is Separate and Distinct and Stands on Its Own Merits.

Bayshore's negligence claim is distinct from, and not duplicative of, its professional malpractice cause of action. Indeed, New Jersey courts have held that negligence claims and professional malpractice claims are distinct, and have rejected the exact argument NFP asserts here. *Wakefern Food Corp., et al. v. Lexington Ins. Co., et al.*, Docket No. MID-L-6483-13, at 46 & 79 (N.J. Super. Ct. June 28, 2018) (denying broker's argument that negligence claim is subsumed by professional malpractice claim because "**they're distinct**. That's denied.") (emphasis added) (available at Lacey Cert., **Exhibit B**)[2]; *see also Garcia v. Correctional Medical Service, Inc.*, No. 13-cv-1250, 2016 WL 7377103, at *4 (D.N.J. Dec. 20, 2016) (noting that "it is possible to bring a simple negligence claim against a licensed professional as well as a malpractice claim."). Bayshore's negligence claim falls squarely within the holding of these cases.[3] This Court,

---

[2] Documents "properly considered on a motion to dismiss include ones attached to or relied on by the complaint, or ones on which the complaint is based. Likewise, on a motion to dismiss, [courts] may take judicial notice of another court's opinion – not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Fink v. Bishop*, Civil No. 21-00063, 2021 WL 3616157, at *3 (D.N.J. Aug. 16, 2021) (citations omitted). Thus, this Court may (and should) consider the New Jersey Superior Court's *Wakefern Food Corp.* decision in deciding NFP's Motion.

[3] In fact, the *Wakefern Food Corp.* court quoted, and rejected, the following argument by the brokers – the exact same argument NFP asserts here:

*footnote continued*

therefore, should deny NFP's Motion for the same reasons the *Wakefern Food Corp.* court declined to find that the policyholder's negligence claim was subsumed by the professional malpractice claim – because "they're distinct." *Id.* at 79.

Bayshore's Complaint also sufficiently pled the elements of negligence to withstand a Rule 12(b)(6) motion to dismiss. In New Jersey, the "fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (quoting *Jersey Cent. Power & Light Co. v. Melcar Util. Co*., 59 A.3d 561, 571 (N.J. 2013)). Here, Bayshore pled that as its insurance broker, NFP "owed Bayshore a duty to exercise reasonable skill, care, and diligence when" advising Bayshore in the purchase of the Hallmark policy, when procuring the Hallmark

---

"If you look at what plaintiff's claims are, -- and I say if you look at them, if you look actually at their complaint and you look at the allegations and you look at what they're saying, basically, they're all the same allegation. The crux of their case is, basically, that the brokers breached their common law duties. Their common law duties are to act with reasonable skill, care, and diligence. . . . All we're here to argue is whether or not the claims that Lex—or that Wakefern brought up or that Wakefern alleged in their complaint, the breach of contract, breach of fiduciary duty, negligence, and the professional negligence claims are more or less the same claims[.]"

*Id*. at 53-55.

policy on Bayshore's behalf, and when examining the proposed terms and conditions of the Hallmark policy and ensuring the Hallmark policy met Bayshore's needs.   ECF No. 1, Compl. at ¶ 85.   Bayshore alleged that NFP breached this duty by (among other things) failing to exercise the requisite skill, care, and diligence in failing to secure adequate coverage under the Hallmark policy.  *Id*. at ¶ 86.  The Complaint further alleges that as a result of NFP's breach, Bayshore has suffered damages.  *Id.* at ¶¶ 87-88.

In short, Bayshore has pled a distinct cause of action.  Under New Jersey law, Bayshore's negligence claim is not duplicative of its malpractice claim.  Thus, Bayshore's claim for negligence, which is pled in the alternative to its claim for professional malpractice, is both permissible and valid.

### 2.    NFP's "Cognizable Duty" Argument is Disingenuous and, In Any Event, Fails.

NFP argues that Bayshore's negligence claim fails because it fails to plead a "cognizable duty."  ECF No. 34-2, NFP Br. at 15 of 21.  In doing so, NFP claims that, as pled, the duty giving rise to Bayshore's negligence claim is one that requires NFP to secure higher policy limits for Bayshore and that such a duty is not recognized under New Jersey law.  NFP's argument fails for at least two reasons.

*First*, the duty (and breach thereof) giving rise to Bayshore's negligence claim has nothing to do with NFP's failure to secure higher policy limits.  To the contrary, the duty (and breach thereof) giving rise to Bayshore's negligence claim

stems from NFP's failure to exercise the requisite skill, care, and diligence required by an insurance broker in, among other things, procuring the coverage requested by Bayshore. The Complaint does not even allege that NFP failed to secure higher policy limits. To the contrary, the Complaint explicitly states that NFP neglected to procure adequate insurance, secured a policy that is materially deficient, and the Hallmark policy does not provide the coverage NFP undertook to supply to Bayshore. ECF No. 1, Compl. at ¶ 54. The New Jersey Supreme Court has long recognized that such duties are cognizable as a matter of law:

> One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, their different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby.

*Rider v. Lynch*, 201 A.2d 561, 567 (N.J. 1964). NFP's effort to artificially distort Bayshore's allegations is meritless and should be rejected out of hand.

*Second*, even if Bayshore specifically alleged that NFP failed to secure higher policy limits, such a claim is cognizable under New Jersey law. *See e.g.,* *Arc Fam., LLC v. Ralph Parnes Associates, Inc*., No. A-5411-05T2, 2008 WL 1820799, at *12 (N.J. Super. App. Div. Apr. 24, 2008) (explaining that "once

defendant undertook to calculate replacement value, it owed plaintiff a duty to use reasonable care, skill, and judgment in making an accurate determination, and plaintiff would only be entitled to recover commercially, reasonable expenditures.").

Accordingly, NFP's arguments fail.

### 3.    NFP's Reliance on the Economic Loss Doctrine is Misplaced.

The economic loss doctrine prohibits a party from recovering in tort for economic injuries that a party is only entitled to because of a contract. *Arcand v. Brother Int'l Corp*., 673 F.Supp.2d 282, 308 (D.N.J. 2009). Stated differently, a tort claim arising from a breach of a duty owed only because of a contract rather than by law is barred. *See Saltiel v. GSI Consultants, Inc*., 788 A.2d 268, 280 (N.J. 2002). As the New Jersey Supreme Court has noted, the law imposes independent duties on insurance brokers separate and apart from contractual obligations, which give rise to claims sounding in tort. *Id*. at 280-81.

In this transaction, the duties owed by NFP to Bayshore do not only arise from a contract. Rather, the duties owed by NFP to Bayshore arise from the duties that are specifically imposed by New Jersey law, which can (and should) be enforced separately and apart from any contractual obligations NFP owed to Bayshore. *See Rider*, 201 A.2d at 567.

Tellingly, NFP fails to cite even a single case employing the economic loss doctrine to bar a negligence claim arising out of an insurance broker-client relationship. Indeed, the cases on which NFP relies involve completely different facts in entirely different contexts. Given the rule articulated in *Saltiel*, NFP's failure is no surprise because no such case exists in the broker-client context. Bayshore has articulated a claim based on NFP's negligence, which New Jersey law imposes on insurance brokers separate and apart from any contract. Thus, NFP's reliance on the economic loss doctrine is meritless.[4]

### 4.    **Bayshore's Complaint Sufficiently Sets Forth a Negligence Claim Against NFP.**

NFP's last-ditch effort to dispose of Bayshore's negligence claim rests on the erroneous notion that Bayshore's negligence claim lacks factual support. NFP is wrong. As pled, Bayshore has sufficiently set forth a claim for negligence against NFP. In the Complaint, Bayshore states that its negligence claim is connected to NFP's brokerage services provided to Bayshore in purchasing insurance from Hallmark. ECF No. 1, Compl. at ¶ 14. Among other things, the Complaint states that: NFP failed to submit an accurate statement of values, reflecting the true business income generated by Bayshore's main building; NFP

---

[4] NFP similarly relies on the economic loss doctrine in connection with Bayshore's breach of fiduciary duty and professional malpractice claims. Such arguments are equally meritless for the same reasons set forth herein.

owed Bayshore a duty to exercise reasonable skill, care, and diligence when advising Bayshore in the purchase of the Hallmark policy, procuring the Hallmark policy, examining the proposed terms and conditions of the Hallmark policy and ensuring the Hallmark policy met Bayshore's needs, and securing adequate coverage under the Hallmark policy for Bayshore's loss and damages stemming from the Fire. *Id.* at ¶¶ 62, 85-86. The Complaint further alleges that as a result of NFP's breach, Bayshore has suffered damages. *Id.* at ¶¶ 87-88.

Despite NFP's arguments to the contrary, these allegations are consistent with the notice-pleading standard in this District and plausibly state a claim upon which relief can (and should) be granted. Thus, NFP's argument fails.

### C.    <u>NFP's Attempt to Dispose of Bayshore's Breach of Fiduciary Claim Fails.</u>

NFP wrongful attempts to dispose of Bayshore's breach of fiduciary duty claim likewise fails.

Under New Jersey law, breach of a fiduciary duty is a separate cause of action from a professional malpractice claim. In *Canusa Corp. v. Owens Group LTD., Inc.*, this District soundly rejected the position offered by NFP:

> Owens [the broker] additionally moves for an order dismissing Count III [Breach of fiduciary duty] as duplicative of Count I [Negligent Procurement of Insurance/Malpractice]. However, Canusa's claim for breach of fiduciary duty **cannot be subsumed under Count I as a matter of law.**

> It is undisputed that Owens has a fiduciary duty to ANW. . . Although the allegations supporting a claim for breach of fiduciary duty and professional malpractice may overlap, professional malpractice actions are grounded in the tort of negligence. In contrast, a claim that an individual breached a fiduciary duty is an intentional tort, **separate from allegations concerning an individual's negligent deviation from the professional standard of care.**
>
> Accordingly, **because the claims rest upon different standards**, Count III is not duplicative or superfluous, and Owen's motion . . . dismissing Count III is **DENIED.**

No. CV1609081KMJBC, 2019 WL 6910172, at *9 (D.N.J. Dec. 19, 2019) (emphasis added) (citations and quotations omitted); *see also Warren County Vocational School v. Brown*, 2007 WL 1498972, at *4 (N.J. App. Div. May 24, 2007) (explaining that "[a]s an insurance broker, [the defendant] was responsible for damages 'for breach of contract **or** in tort for negligence **or** breach of [] fiduciary duty' for failing 'to exercise reasonable skill, care and diligence.'") (emphasis added) (quoting *Sullivan v. Jefferson, Jefferson & Vaida*, 400 A.2d 836, 838 (N.J. Super. App. Div. 1979)); *accord Wachovia Ins. Services, Inc. v. Toomey*, 994 So.2d 980, 990 (Fla. 2008) (explaining how negligence claims and breach of fiduciary duty claims are separate causes of action and can be pled in the alternative because "insurance brokers will often have both a fiduciary duty to their insured-principals *and* a common-law duty to properly procure requested insurance coverage.") (emphasis in original).

NFP disregards New Jersey law, which makes clear that insurance brokers owe fiduciary duties to policyholders as a matter of law.  *See N.J.A.C.* 11:17A-4.10 (stating "[a]n insurance producer [including a broker] acts in a fiduciary capacity in the conduct of his or her insurance business."); *Aden v. Fortsh*, 776 A.2d 792, 800 (N.J. 2001) (finding broker stands in a fiduciary-type relationship to clients). Unlike a malpractice action, "an action for breach of fiduciary duty does not require establishing a standard of care and its breach." *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997).  To that end, New Jersey courts routinely recognize that when the facts to support claims of breach of fiduciary duty are properly pled, they state a separate, non-duplicative cause of action from a malpractice claim.  *Fink v. Kirchner*, No. 12-cv-4125, 2013 WL 1952303, at *3 (D.N.J. May 8, 2013); *see also Call v. Czaplicki*, No. 09-cv-6561, 2010 WL 3001395, at *7 (D.N.J. July 28, 2010) (citing *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1203 (N.J. 2001) (noting breach of fiduciary duty claim is an independent tort from a malpractice claim)).

Bayshore's breach of fiduciary duty claim is not duplicative of its malpractice claim because NFP owed fiduciary obligations to Bayshore that are separate and apart from NFP's professional duties of care.  More importantly, Bayshore's Complaint sufficiently sets forth facts supporting the elements of a cause of action for breach of fiduciary duty that are separate and apart from the

allegations supporting Bayshore's malpractice claim. The Complaint states that "[i]n New Jersey, insurance brokers are required to act in a fiduciary capacity to their client because of the increasing complexity of the insurance industry and the specialized knowledge required to understand its intricacies." ECF No. 1, Compl. at ¶ 90. The Complaint further states that "[t]he detection of deficiencies in material coverage provisions, including those that are buried within the policy, require specialized knowledge and training of NFP, upon which Bayshore relied." *Id*. at ¶ 91. In addition, the Complaint states that NFP: (i) "assumed the task of discerning and addressing deficiencies in coverage under the Hallmark policy, and Bayshore relied on NFP[,]" (ii) [i]n failing to perceive and address certain deficiencies in the Hallmark policy, including the potential limitation on business interruption coverage in connection with Bayshore's main building that was damaged by fire and generates approximately 95% of Bayshore's income, NFP breached its fiduciary duty to Bayshore, and caused harm to Bayshore[,]" and (iii) "[a]s a result, Bayshore has sustained injury proximately caused by NFP." *Id*. at ¶¶ 92-95.

As with NFP's challenge to the negligence claim, NFP's challenge to the breach of fiduciary duty claim is more cursory than earnest. A review of Bayshore's Complaint shows that Bayshore has alleged facts to support a fiduciary relationship, an alleged breach of that relationship through violating its position of

trust in, *inter alia*, neglecting to detect certain deficiencies in the Hallmark policy, and resultant damages. Thus, Bayshore has stated a valid claim for breach of fiduciary duty. NFP's attempt to conflate and blend together its fiduciary duties with its professional duty of care should be rejected, particularly since both claims rest upon different standards and each claim is independently supported by separate and distinct factual allegations.

**D.    NFP's Attempt to Dispose of Bayshore's Professional Malpractice Claim Likewise Fails.**

NFP wrongly attempts to dispose of Bayshore's professional malpractice claim, arguing that Bayshore's allegations are conclusory and fail to state a claim, and that such a claim is barred by the economic loss doctrine. ECF No. 34-2, NFP Br. at 18-20 of 21. In doing so, NFP ignores the well-pled factual allegations in Bayshore's Complaint.

In *Triarsi v. BSC Group Services*, the New Jersey Appellate Division explained that:

> Liability resulting from the negligent procurement of insurance is premised on the theory that an insurance broker ordinarily invites clients to rely upon his expertise in procuring insurance that best suits their requirements; the concept is essentially one of professional malpractice.

27 A.3d 202, 209 (N.J. Super. App. Div. 2011).

To that end, Bayshore's Complaint states that "NFP owed a professional duty to Bayshore to perform as Bayshore's insurance agent and broker and to

professionally provide those services with the degree of skill, care and diligence generally expected of reasonably skilled members of the profession." ECF No. 1, Compl. at ¶ 97. The Complaint further states that: "Bayshore reasonably relied upon NFP to act in a manner consistent with the standard of care for an insurance agent and broker[,]" "Bayshore specifically relied upon NFP to ensure that Bayshore did not have deficiencies in the Hallmark policy[,]" "NFP departed from the standard of care expected of members of its profession in procuring and reviewing Bayshore's insurance coverage under the Hallmark policy[,]" "NFP violated its professional duty of cared owed to Bayshore[,]" and "As a direct and proximate result of NFP's professional malpractice, Bayshore has sustained damages in an amount to be proven at trial." *Id.* at ¶¶ 98-102.

As with NFP's previous challenges, NFP's challenge to the professional malpractice claim is more cursory than earnest. A review of Bayshore's Complaint shows that Bayshore has alleged facts to support a professional malpractice claim. Thus, Bayshore has stated a valid claim for professional malpractice. NFP's arguments to the contrary should be rejected out of hand, as they are devoid of any merit and belied by the well-pled factual allegations in Bayshore's Complaint.

Further, NFP's reliance on *Magi v, Rich*, No. CV208881ZNQRLS, 2023 WL 1363375, at *6 (D.N.J. Jan. 31, 2023) is misplaced because the professional malpractice claim pled there is not even remotely similar to the professional

malpractice claim Bayshore has pled here.  In *Magi*, a policyholder asserted claims against his broker, including a cause of action for professional malpractice.  *Id*. at *6.  The Court ultimately dismissed <u>without prejudice</u> the policyholder's claim for professional malpractice because the claim failed to allege a breach of the applicable standard of care.  *Id*. at *7.

NFP contends the professional malpractice claim, as pled in *Magi*, is on equal footing with the professional malpractice claim here.  However, the two claims are diametrically different.  Unlike the professional malpractice claim in *Magi*, Bayshore's professional malpractice claim is supported by numerous factual allegations setting forth NFP's duties and breaches thereof.  Indeed, Bayshore's Complaint specifically sets forth the ways in which NFP departed from the standard of care expected of members of its profession, including in the procurement and review of Bayshore's insurance coverage under the Hallmark policy, failing to procure adequate coverage, and failing to submit an accurate statement of values.  ECF No. 1, Compl. at ¶¶ 62, 97-102.  As pled, Bayshore has stated a valid claim for professional malpractice.  Thus, *Magi* is inapposite.

## IV.    <u>EVEN IF BAYSHORE'S CLAIMS, AS PLED, ARE INSUFFICIENT, THIS COURT SHOULD GRANT BAYSHORE LEAVE TO AMEND ITS COMPLAINT.</u>

Courts in this District liberally grant leave to amend, and the decision to do so is within the sound discretion of this Court.  *See Massarsky v.*

*Gen. Motors Corp.,* 706 F.2d 111, 125 (3d Cir. 1983); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110–111 (3d Cir.2002); *see also In re Campbell Soup Co. Securities Litig.*, CV 18-14385 (NLH/JS), 2020 WL 7022655, at *12 (D.N.J. Nov. 30, 2020) (noting "Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities."); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

Bayshore filed a facially valid complaint under *Iqbal* and *Twombly* that sets forth facts that sufficiently support Bayshore's breach of contract, negligence, breach of fiduciary duty, and professional malpractice claims against NFP.  If, for some reason, the Court is inclined to dismiss any of Bayshore's claims, the Court should do so <u>without prejudice</u> and allow Bayshore to amend its complaint consistent with this Court's liberal policy of allowing amendments to ensure that cases are decided on their merits rather than on procedural technicalities.

## CONCLUSION

For all the foregoing reasons, Bayshore respectfully requests that the Court deny NFP's Motion to Dismiss.

Newark, New Jersey
Dated:  December 4, 2023

ANDERSON KILL P.C.

By:  /s/ John P. Lacey Jr.

John P. Lacey, Jr., Esq.
Finley T. Harckham, Esq.
(admitted *Pro Hac Vice*)
One Gateway Center, Suite 1510
Newark, New Jersey 07102
Telephone:  (973) 642-5858
Fax:  (973) 621-6361
jlacey@andersonkill.com
fharckham@andersonkill.com

*Attorneys for Plaintiff*
*Bayshore Recycling Corporation*