# ANDERSON KILL P.C.

Attorneys and Counselors at Law

ONE GATEWAY CENTER, SUITE 1510 ■ NEWARK, NJ 07102
TELEPHONE: 973-642-5858 ■ FAX: 973-621-6361
www.andersonkill.com

John P. Lacey Jr., Esq.
jlacey@andersonkill.com
973-642-5867

<u>*VIA CM/ECF*</u>   May 3, 2024

The Honorable James B. Clark, III, U.S.M.J.
United States District Court, District of New Jersey
Martin Luther King, Jr. Building & U.S. Courthouse
50 Walnut Street – Courtroom 2A
Newark, NJ 07101

      **Re:**   *Bayshore Recycling Corporation v. Hallmark Specialty Insurance Company, et al.*,
            <u>**Civil Action No.: 2:23-cv-03047-EP-JBC**</u>

Dear Judge Clark:

      This office represents Plaintiff Bayshore Recycling Corporation ("Bayshore") in the above-referenced matter. In accordance with Your Honor's Judicial Preferences, we write to address certain discovery disputes between Bayshore and the Defendants, Hallmark Specialty Insurance Company and NFP Property & Casualty Services, Inc. ("NFP"), that remain unresolved and require judicial intervention. We note that Bayshore has met its obligations under L. Civ. R. 37.1 with respect to Hallmark and NFP.

## I.    <u>NFP</u>

      Bayshore sent a discovery deficiency letter to NFP on February 28, 2024. NFP responded to Bayshore's letter on April 5, 2024. Following receipt of NFP's response, our office spoke with Counsel to NFP and Bayshore agreed to serve supplemental discovery requests in an effort to resolve any current discovery disputes with NFP. Accordingly, Bayshore respectfully requests that the Court extend the deadline to raise discovery disputes with the Court by at least 40 days to allow Bayshore to raise any discovery disputes with the Court after receipt of NFP's responses to Bayshore's supplemental discovery requests.

## II.    <u>Hallmark</u>

      Hallmark to this day has never stated its coverage position with respect to certain aspects of Bayshore's claim. Hallmark and Bayshore made certain agreements pre-suit in the context of settlement discussions. But now there is a lawsuit, and Hallmark has refused to clarify whether its <u>pre-suit position</u> regarding certain aspects of Bayshore's claim is the same as, or different

from, its <u>current position</u>.  Hallmark's current coverage position regarding these issues bear directly on the scope of appraisal.  Bayshore has asked Hallmark to clarify its current coverage position since at least November 2023.  Hallmark has inexplicably refused to clarify its position for almost six months, which has delayed the commencement of appraisal.  The fact that Hallmark has a right to appraisal does not mean it has the right to withhold its coverage position.  Bayshore has the right to know Hallmark's coverage position because it is relevant to this lawsuit and affects the scope of appraisal.  As detailed below, Hallmark is hiding its position and attempting an appraisal by ambush.  Hallmark has repeatedly obstructed and delayed Bayshore's efforts to initiate the appraisal process.  Hallmark has also obstructed and delayed Bayshore's efforts to take discovery in this case.  Accordingly, Bayshore requests that the Court compel Hallmark to comply with its discovery obligations, including presenting a witness for deposition to explain Hallmark's current coverage position.

### A. <u>Hallmark's Discovery Deficiencies</u>

Bayshore sent Hallmark a discovery deficiency letter on April 18, 2024.  **Exhibit A**.[1]  Hallmark responded to Bayshore's letter on April 30, 2024.  In its response, Hallmark claims "Bayshore fails to specifically identify any document not provided that was requested."  Among other things, Hallmark failed to produce its underwriting file and virtually no internal or external communications regarding Bayshore's claim were produced.  The underwriting file is relevant to this case because there is a dispute about the limits of Bayshore's business interruption coverage and whether NFP or Hallmark made a mistake during the underwriting process before the subject policy went into effect.  In addition, following the December 16, 2019 fire, Hallmark engaged in a protracted claim investigation, which Bayshore alleges was done in bad faith.  Hallmark's current document production contains virtually no internal or external communications regarding Hallmark's claim investigation.  These communications are not privileged, plainly relevant to this lawsuit, and must be produced.

Although Hallmark claims it did not withhold any non-privileged documents, it is clear that Hallmark is withholding relevant, responsive documents and communications based on objections that are improper and should be withdrawn.  Hallmark's written discovery responses to Bayshore's discovery requests are enclosed.  **Exhibit B**.

### B. <u>Bayshore's Months-Long Efforts to Understand Hallmark's Current Position Regarding Certain Aspects of Bayshore's Claim for Purposes of Appraisal</u>

Bayshore and Hallmark have long agreed to submit certain issues to appraisal.  Bayshore and Hallmark each have selected impartial appraisers, who are working together to select an Umpire.  However, the scope of appraisal has been a persistent issue.  Since November 2023,

---

[1] Bayshore has not attached to this letter each and every document and written communication referenced herein.  Instead, Bayshore has attached the most pertinent documents and written communications.  Any document or written communication referenced in this letter can be made available to the Court upon request.

**Anderson Kill P.C.**

Hon. James B. Clark, III
May 3, 2024
Page 3

Bayshore has repeatedly contacted Hallmark's counsel to understand Hallmark's current coverage position because Hallmark's position bears directly on the scope of appraisal. Despite Bayshore's efforts, Hallmark has never given a clear answer and has delayed the commencement of the appraisal.

On March 13, 2024, the parties' own appraisers emailed this office and Hallmark's counsel requesting guidance so that they can "understand better the scope and nature of the categories of claim still in dispute." **Exhibit C**. The appraisers advised counsel that "[t]his information will help guide [them] in the selection of an Umpire, inform [their] decision on the best way to assess the value of loss damage, and will expedite resolution." *Id*. On March 26, 2024, our office again followed up with Hallmark's counsel to understand Hallmark's position regarding the scope of appraisal. **Exhibit D**. Bayshore also attached estimates prepared by the parties' consultants for Hallmark's ease of reference. *Id*. That same day, Hallmark's counsel stated: "it is our understanding that this is a part of the appraisal process." Hallmark (again) failed to note its position with respect to certain aspects of the claim that still may be in dispute and may not be subject to appraisal.

On March 28, 2024, our office requested a call with Hallmark's counsel and the appraisers to discuss the scope of appraisal. On March 29, 2024, our office spoke with Hallmark's counsel and it became clear that certain aspects of Bayshore's claim are in dispute and that such issues bear directly on the scope of appraisal – <u>confirming why our office reached out to Hallmark's counsel in November 2023 (and over the last six months) to clarify these issues</u>. On April 1, 2024, our office memorialized the March 29, 2024 discussion and noted Hallmark's history of delays and obstruction. **Exhibit E**. Our office gave Hallmark's counsel a deadline of April 5, 2024 for Hallmark to clearly articulate its position regarding the scope of appraisal. On April 5, 2024, Hallmark's counsel requested a two-week extension, which was not acceptable to Bayshore. On April 8, 2024, our office advised Hallmark's counsel that we needed Hallmark to state its position immediately, so that the appraisal process can proceed.

On April 8, 2024, Hallmark's counsel advised our office that Hallmark's adjuster would be focusing on this case and that Hallmark would provide us an update on April 10, 2024. On April 10, 2024, Hallmark's counsel advised our office that he had spoken with Hallmark's consultants and stated that Hallmark never agreed to the scope of work proposed by Bayshore. Shortly thereafter, Hallmark's counsel clarified his previous email, stating that: "While the scope that you refer to is 'correct', there are a number of line items that Hallmark does not agree with regarding the pricing and the manner which Paul Van Scott put the estimate together. However, this is why I suggest a call to get the appraisal going." **Exhibit F**.

On April 11, 2024, our office requested a call with Hallmark's counsel because Hallmark's response the previous day was again unclear and did not identify which "line items" with which Hallmark disagrees. After receiving no response, this office followed up with Hallmark's counsel on April 12, 2024 and requested a call with Hallmark's counsel to discuss the scope of appraisal. This office spoke with Hallmark's counsel on April 12, 2024 and agreed to reconvene on Monday, April 15, 2024. In the meantime, Hallmark's counsel advised that he

**Anderson Kill P.C.**

Hon. James B. Clark, III
May 3, 2024
Page 4

would reach out to his client and adjusters about having a collective call to discuss the scope of appraisal.  On April 15, 2024, our office requested an update from Hallmark.  The following day, Hallmark's counsel advised our office that he was having calls with his client and adjusters about scheduling a collective call with each party's representatives to discuss the scope of appraisal.  Having received no response, our office again followed up with Hallmark's counsel on April 18, 2024 and requested an immediate call to discuss the scope of appraisal.  On April 19, 2024, Hallmark's counsel asked who would be on the call and whether the discussions would be subject to Rule 403 or otherwise confidential.  **Exhibit G**.  We advised Hallmark that off the record conversations could take place and remain confidential, but that discussions regarding the scope of appraisal are not confidential.  Hallmark's counsel reiterated its position that such discussions should be subject to Rule 403 and the call between Bayshore's and Hallmark's representatives never materialized.  Despite this, the appraisers are in the process of selecting an Umpire and we expect the appraisal to commence in short order.

Bayshore served Hallmark with a deposition notice on April 22, 2024, seeking testimony from Hallmark's corporate representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  **Exhibit H**.  On April 30, 2024, Hallmark objected to the entire notice, claiming topics 1, 13, and 14 are "strictly within the realm of the ongoing appraisal and are not a part of the litigation, despite Bayshore's amended complaint."  In advance of Hallmark's April 30, 2024 response, we asked for, and Hallmark agreed to produce, an engineer's report prepared by Hallmark's consultant, MKA.  This engineer's report is material and may answer a lot of questions about Hallmark's coverage position.  Hallmark inexplicably failed to attach the MKA engineer's report to its April 30, 2024 correspondence, as promised, and has ignored our office's follow up request to produce same.

Topic 1 of Bayshore's deposition notice seeks testimony regarding "Hallmark's position concerning the scope of restoring Bayshore's facility to its pre-loss condition, including, but not limited to, rebuilding Bayshore's property that was damaged by fire, replacing the existing columns and base plates, the construction of temporary walls, depreciation, business personal property, business interruption, and valuation, i.e., actual cash value versus replacement cost value."  Topic 13 seeks testimony regarding "Hallmark's coverage position with respect to each aspect of the Claim submitted by Bayshore, both as to coverage and quantum."  Topic 14 seeks testimony regarding "Hallmark's position regarding appraisal, including which aspects of the Claim Hallmark contends should be resolved through appraisal."

Hallmark also objected to topic 3, claiming it is not relevant to the litigation.  Lastly, Hallmark objected to the date of the deposition, claiming Bayshore did not give Hallmark enough time to adequately prepare for its deposition on the eleven relevant topics.

Given Hallmark's deliberate obstruction and delays, and refusal to answer basic questions about its own coverage position, Bayshore was forced to serve a notice of deposition seeking testimony on these topics.  Hallmark's objections to topics 1, 13, 14, and 3 are frivolous.  Bayshore has a right to know Hallmark's coverage position and what issues it believes are subject to appraisal, particularly if they concern legal issues or the scope of coverage.  *See*

**Anderson Kill P.C.**

Hon. James B. Clark, III
May 3, 2024
Page 5

*Jakubowski v. Fed. Emergency Mgmt. Agency*, No. 2:12-CV-02202 CCC, 2013 WL 1284389, at *5 (D.N.J. Mar. 27, 2013); *see also Tucci v. Hartford Fin. Servs. Grp., Inc.*, No. CIV. 08-4925 JBS/JS, 2011 WL 2555379, at *18 (D.N.J. June 27, 2011), *aff'd sub nom. Tucci v. Hartford Fin. Servs. Grp.*, 507 F. App'x 211 (3d Cir. 2012) (referring remaining disputes to appraisal *after* all known disputes over the scope of coverage were resolved). Accordingly, Bayshore requests that the Court compel Hallmark to immediately produce a corporate representative to address topics 1, 13, and 14 in Bayshore's Notice of Deposition. Bayshore is amenable to addressing the remaining topics at a later date, especially since Hallmark has obviously not produced all relevant and responsive documents in discovery.

Bayshore also requests that the Court compel Hallmark to produce all relevant, responsive documents that have been withheld for any reason, except documents over which Hallmark has asserted privilege. Given Hallmark's obstruction and delays, Bayshore requests that if the Court is inclined to extend the deadline to raise discovery disputes, then the new deadline also include discovery disputes regarding Hallmark.

We thank the Court for its consideration of this matter.

Respectfully submitted,

/s/ John P. Lacey Jr.
John P. Lacey Jr.

cc:   All counsel of record *(Via CM/ECF)*

*Enclosures*

docs-100693687.1