<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BAYSHORE RECYCLING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>HALLMARK SPECIALTY INSURANCE COMPANY and NFP PROPERTY & CASUALTY SERVICES, INC.,<br><br>Defendants. | Civil Action No. 23-03047<br><br>**OPINION & ORDER**<br><br>December 20, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant NFP Property and Casualty Services, Inc.'s ("NFP") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (ECF 61, "MTD.") Plaintiff Bayshore Recycling Corporation ("Bayshore") opposed. (ECF 63, "Opp.") NFP filed a reply brief. (ECF 66, "Reply.") The Court has decided this motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 78.1; and

**WHEREAS** this insurance coverage and broker malpractice action arose from, *inter alia*, an alleged breach of contract and failure to procure adequate insurance in connection with a December 16, 2019 fire at Bayshore's facility.[1] Bayshore's facility is a 55-acre complex in Keasby, New Jersey where Bayshore primarily recycles construction materials and debris. (ECF 59, Compl.

---

[1] These facts are drawn from the Amended Complaint ("Compl."). (ECF 59.) This Court also relies on documents integral to or relied upon by the Amended Complaint. *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (allowing consideration of exhibits referenced but not explicitly cited in the complaint).

¶ 2.) The December 2019 fire severely damaged Bayshore's facility and interrupted operations, resulting in millions of dollars in losses. (*Id.* ¶ 3.) Bayshore paid hundreds of thousands of dollars in premiums to several insurance companies for primary and excess commercial property insurance policies covering the June 1, 2019 to June 1, 2020 policy period. (*Id.* ¶ 4.) Defendant Hallmark Specialty Insurance Company ("Hallmark") sold Bayshore an excess policy in which Hallmark is responsible for a $15,000,000 limit of liability that sits atop the $10,000,000 limit under Bayshore's primary policies. (*Id.*) Fire loss is a "Covered Cause of Loss" under the relevant insurance policies. (*Id.* ¶ 5.) Bayshore gave its insurance companies timely notice of the fire damage and sought full coverage for all loss and damage caused by the fire. (*Id.* ¶ 7.) Plaintiff alleges that Hallmark breached its contractual obligations by failing to indemnify Bayshore for all loss and damage it suffered because of the fire. (*Id.* ¶ 10.) Plaintiff also brings this action against NFP as its insurance broker due to breaches of contract and fiduciary obligations, and negligence in connection with brokerage services provided to Bayshore in purchasing insurance from Hallmark. (*Id.* ¶ 14.) Plaintiff brings claims for breach of contract against NFP (Count III), negligence against NFP (Count IV), breach of fiduciary duty against NFP (Count V), and professional malpractice against NFP (Count VI). (*Id.* at 14-17); and

  **WHEREAS** "[w]hen a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, No. 12-03922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) (citing *In re Corestates Trust Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993)). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle

a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *Maertin v. Armstrong World Indus., Inc.*, 241 F. Supp. 2d 434, 445 (D.N.J. 2002); and

**WHEREAS** Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir. 2009); *Pittman v. Metuchen Police Dept.,* No. 08–2373, 2009 WL 3207854, at *1 (D.N.J. Sept. 29, 2009) (citing JAMES WM. MOORE, 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2007)). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.,* 558 F.3d at 257; *Pittman,* 2009 WL 3207854, at *1. A factual attack, by contrast, calls upon the court to weigh the evidence. *Pittman,* 2009 WL 3207854, at *1. Here, the Court will presume the truth of Plaintiff's allegations since the motion challenges only the sufficiency of the Complaint; and

**WHEREAS** under Article III, federal courts have jurisdiction to hear "cases" and "controversies." *Lutter v. JNESO*, 86 F.4th 111, 123 (3d Cir. 2023). Thus, for a plaintiff to bring an action in federal court, they must have a "personal stake," in a "case" or "controversy." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). This is known as Article III standing. To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)). A plaintiff's injury must be concrete, meaning "real, and not abstract." *Spokeo, Inc. v.*

*Robins*, 578 U. S. 330, 340 (2016). However, a concrete injury may be either tangible, such as physical or monetary harm, or intangible, such as reputational harm. *TransUnion LLC*, 594 U.S. at 425. Here, Defendant argues that Plaintiff's claims are not ripe and therefore fail to satisfy Article III's case or controversy requirement. (MTD at 4-6.) In particular, Defendant argues that the Plaintiff cannot assert simultaneous claims against both Hallmark and NFP: Plaintiff's claim would not be "ripe" in Defendant's view until it has exhausted recovery avenues against Hallmark. However, the Federal Rules explicitly allow for pleading in the alternative.[2] Plaintiff alleges a concrete injury in suffering monetary harm stemming from NFP's conduct. (*See* Compl. at 14-17.) As such, Defendant's 12(b)(1) argument fails; and

**WHEREAS** Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789. In evaluating the sufficiency of a complaint, district courts must separate the factual and legal

---

[2] *See* Fed. R. Civ. P. 8(d)(2) (permitting a party to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *see also* Fed. R. Civ. P. 8(d)(3) (stating that a party is entitled to "state as many separate claims or defenses as it has, regardless of consistency.").

4

elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Restatements of a claim's elements are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015); and

**WHEREAS** the Amended Complaint sufficiently states a claim for breach of contract, negligence, breach of fiduciary duty, and professional malpractice. Defendant argues that the Amended Complaint fails to state a claim for each cause of action. (MTD at 6-10.) Defendant particularly argues that Plaintiff's breach of contract claim fails for failing to specify the provision of the brokerage agreement that was breached. (MTD at 10.) However, that level of specificity is not required. *See Lukoil N.A. LLC v. Turnersville Petroleum Inc.,* No. 14-3810, 2015 WL 5455648, at *2 (D.N.J. Sept. 16, 2015) (denying motion to dismiss breach of contract claim, explaining that such a claim must only "contain sufficient factual matter, as accepted as true, to 'state a claim to relief that is plausible on its face.'"). The Amended Complaint sufficiently pleads its breach of contract claim. (*See* Compl. ¶¶ 80-85); and

**WHEREAS** Defendant argues that the professional malpractice claim subsumes the negligence claim, the Complaint fails to state a claim for negligence, and the negligence claim is barred by the economic loss doctrine. (MTD at 11-13.) However, negligence claims and professional malpractice claims are distinct and may proceed concurrently.[3] *See Garcia v.*

---

[3] Defendant similarly argues that Plaintiff's breach of fiduciary duty claim should be dismissed because New Jersey law does not contemplate the distinct cause of action. This position has been rejected in this District. *See Canusa Corp. v. Owens Group LTD., Inc.,* No. 16-09081, 2019 WL 6910172, at *9 (D.N.J. Dec. 19, 2019). The breach of fiduciary duty claim is sufficiently pled and survives the motion to dismiss. (*See* Compl. ¶¶ 92-97.)

*Correctional Medical Service, Inc.,* No. 13-1250, 2016 WL 7377103, at *4 (D.N.J. Dec. 20, 2016) (noting that "it is possible to bring a simple negligence claim against a licensed professional as well as a malpractice claim."). Further, the Amended Complaint sufficiently states a claim for negligence. (*See* Compl. ¶¶ 87-90.) Finally, Defendant's economic loss doctrine argument does not defeat Plaintiff's claims. The economic loss doctrine prohibits a party from recovering in tort for economic injuries that a party is only entitled to because of a contract. *Arcand v. Brother Int'l Corp.*, 673 F.Supp.2d 282, 308 (D.N.J. 2009). However, Plaintiff pleads that the duties owed by Defendant arose from duties specifically imposed by New Jersey law, separate and apart from its contractual duties. *See e.g., Rider v. Lynch*, 201 A.2d 561, 567 (N.J. 1964). As such, the breach of contract, negligence, breach of fiduciary duty, and professional malpractice claims survive.[4]

Accordingly,

**IT IS** on this 20th day of December 2024,

**ORDERED** that Defendant's motion pursuant to Rule 12(b)(1) and 12(b)(6) (ECF 61) is hereby **DENIED**.

**SO ORDERED.**

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc:   James B. Clark, U.S.M.J.
      Parties

---

[4] The Amended Complaint sufficiently states a professional malpractice claim. (*See* Compl. ¶¶ 64, 98-104). As discussed, the economic loss doctrine does not preclude the professional malpractice claim where, as here, the duties arose separately from Defendant's contractual duties. *See e.g., Rider*, 201 A.2d at 567.